IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

CASE NO.:  2011-CA-16841-O
Jury Trial Volume III

JOHN MAHONY and DIANE
MAHONY, as husband and wife,

        Plaintiff,

-vs-

JAMIE RODRIGUEZ and MARIA
RODRIGUEZ, as husband and wife,

        Defendants.
_____


DATE TAKEN:  July 29, 2014

TIME:         9:00 a.m.

PLACE:        Orange County Courthouse
              425 North Orange Avenue
              Orlando, Florida  32801

BEFORE:       Honorable Patricia Doherty


Stenographically Reported By:
          Susan Mullen

```
1                          APPEARANCES

2

3   On Behalf of the Plaintiff:
         KELSKY LAW, P.A.
4        1250 South Pine Island Road, Suite 250
         Plantation, Florida 33324
5        (954) 449-1400
         bradkelsky@kelskylaw.com
6        BY:  BRAD KELSKY, ESQUIRE
         BY:  BARBARA LLINAS, ESQUIRE
7

8

9   On Behalf of the Defendant:
         DOROUGH CALZADA & SOTO, LLP
10       419 North Magnolia Avenue
         Orlando, Florida  32801
11       (407) 982-3663
         dsoto@mylawsolution.com
12       BY:  DARREN SOTO, ESQUIRE

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                            INDEX

2    (Cont'd) TESTIMONY OF JAMIE RODRIGUEZ

3        Direct Examination by Mr. Soto              204
         Cross-Examination by Mr. Kelsky            207
4
     JURY CHARGE CONFERENCE                          215
5
     CERTIFICATE OF REPORTER                         237
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

(Continued from Volume II)

Q    **What did you tell him when you saw that?**

A    What I did say to that was we had the doors -- the
windows locked and the door closed, but the AC return was right
next to where he was pointing the fan, and I suggested to him to
close that too because that might take whatever mold was there
up to the -- into the other areas of the house, and he said, oh,
good idea, I'm going to talk to Larry.

Q    **Did you see any other openings in the house by
Mr. Smith?**

A    Yes.  The second time after he called me again, and he
showed me on the balcony, there was a couple of holes on the
middle balcony, and I asked him what happened, and he said that
Larry had asked him permission to -- I guess he wanted to see
what was underneath, and he cut an opening, and I guess he said
he found some water and just said, if he could punch a few more
holes, and I guess he had a hammer, and he punched a few more
holes in the balcony.

Q    **Did you see him use a hammer on the balcony?**

A    No, I was not there when he did that.

Q    **Did you see anything that looked like a hammer was used
on the balcony?**

A    Yes.  Some of the holes looked like it was just punched
through.

1    Q    During the time that you lived in the house, did you

2    ever walk out on those balconies?

3    A    Yes.

4    Q    Did you ever feel your foot go through any of the

5    balconies?

6    A    No.

7    Q    Did you ever feel like they could have gone through?

8    A    No.

9    Q    After that you became neighbors; is that correct?

10   A    Yes.

11   Q    So you weren't running to hide anywhere after the sell

12   were you?

13   A    No.

14   Q    Can you articulate clearly, being that you are a

15   certified contractor what you knew about the house?

16   A    What I knew about was there had been a water leak, and

17   once we had that replaced, we didn't see no water coming through

18   it.  After a few months, we just decided to close everything

19   back up, and never had any issues with it.  For me keeping it --

20   whenever we had a bad rain, broom off the balcony, never saw any

21   water damage going through it, so I have no idea that the water,

22   you know, went through it according to the pictures because I

23   would sweep it off.  I would not let it sit there on the porch.

24   Q    What would you have done if you knew that there was

25   water intrusion through the house?

1      A   I would have advised them that water would have gone

2   through it.

3      **Q   What would you have done if you knew that mold was**

4   **there?**

5      A   I mean I certainly would not have had my family there,

6   especially with my wife and her high-risk pregnancy.  We were at

7   hospitals and doctors appointments and all of that, and I was

8   trying to take care of her.

9      **Q   There was a $50,000 offer?**

10     A   Yes.

11     **Q   Do you recall the nature of that transaction?**

12     A   When we decided to put the house for sale, we had

13  bought some items after the house was finished on a separate

14  credit line and credit cards, that we had asked if we could take

15  those with us because we had bought those after, and so we

16  explained to them that they were not part of the house, that was

17  fine, but if we took off a fan that we spent a lot of money on

18  fans, chandeliers, and all of that, and we would have to put

19  another one back up.

20     **Q   So if you took anything out, you'd have to replace it?**

21     A   Yes.

22     **Q   Were you planning on leaving the house bare as was**

23  **discussed before?**

24     A   No.

25     **Q   Who instigated the $50,000 deal?**

1    A    When he came, one of the first time he came to talk to

2 me, he asked me about those items that I guess, when he saw he

3 liked them, we had a movie theater in the house, and he said he

4 would like for them to stay, and I told him we were taking those

5 items because we would hopefully use them on another house, but

6 he said he wanted to keep them in the house because they matched

7 the house, or even the light fixtures, everything that -- and

8 that's when we started talking about maybe how much -- of I

9 could sell it.

10    **Q    Did you try to sell the house real quick just to get**

11 **that $50,000?**

12    A    No, that was not -- we were not even -- we were just

13 going to take those items and not make anything on that sell.

14                   MR. SOTO:  No further questions.

15                   THE COURT:  Cross-examination?

16                   MR. KELSKY:  Yes.

17                       CROSS-EXAMINATION

18 BY MR. KELSKY:

19    **Q    You were involved in a foreclosure lawsuit; is that**

20 **correct?**

21    A    Yes.

22    **Q    Where the bank actually sued you to retain the title**

23 **for the property, so they go ahead and do whatever it is that**

24 **banks do when they foreclose on a house, is that right?**

25    A    Yes.

1    Q    And you stayed in the house for three years without

2    paying a mortgage?

3    A    Yes.

4    Q    You were represented in that lawsuit, correct?

5    A    Yes.

6    Q    Mr. Soto was your attorney in the foreclosure case,

7    correct?

8    A    After we tried to keeping it, yeah, he was representing

9    us.

10   Q    Now the problem with the flat roof above the baby's

11   room was that the waterproofing didn't work and that there was a

12   leak, correct?

13   A    Correct.

14   Q    In fact it was designed so that they had to take out

15   all of the tile, right?

16   A    No.  There was no tile in that area.

17   Q    The flat roof, they had to lift up the flat roof,

18   correct?

19   A    They removed the membrane and replaced the wood that

20   was wet.

21   Q    And so they put all new plywood in, correct?

22   A    In certain areas, yes.

23   Q    And they torched it down?

24   A    They put a torch down.

25   Q    And the balconies themselves were considered flat

1    roofs, correct?

2       A    They're a flat surface.

3       Q    I'm sorry?

4       A    They're a flat surface.

5       Q    Right.  From the standpoint of a certified residential

6    contractor, they are considered flat roofs?

7       A    Yes.

8       Q    And isn't it true that the waterproofing that was done

9    on the flat roof over the baby's room was the exact same

10   waterproofing that existed on all of the decks?

11      A    Yes.

12      Q    So you had water coming from the flat roof above the

13   baby's room, correct?

14      A    Uh-huh.

15      Q    Is that a yes?

16      A    Yes.

17      Q    And then you went ahead, and you knew that there was

18   standing water on the balconies that had the stained

19   waterproofing structure as the roof that had to be replaced two

20   years into the home?

21      A    Yes.  The reason -- the difference between the two is

22   that the one on the top was exposed to some, and that

23   deteriorated the actual material.  The one on the balconies were

24   covered with roof and tile which, was I guess it maintained the

25   materials.

1    Q    Same waterproofing materials though, correct?

2    A    Same waterproofing materials.

3    Q    Sure.  As a certified residential contractor, how would

4  you characterize the damage that you would see in this picture

5  the ceiling in the garage?

6    A    I mean --

7    Q    It's bad, right?

8    A    Yes.

9    Q    Not acceptable is it?

10   A    No.

11   Q    How about the damage to the middle balcony?

12   A    Yes.

13   Q    Pretty bad, right?

14   A    Yes.

15   Q    How about this damage to the baby's room, pretty bad,

16 right?

17   A    Yeah.

18   Q    And that's next to the deck, correct?

19   A    Not a hundred percent, but that's facing the courtyard

20 area.

21   Q    Did that have the same waterproof and structure as the

22 flat roof?

23   A    Yes.

24   Q    How about this balcony, how would you characterize

25 that?

1    A    A lot of water damage.

2    **Q    Rotted out, correct?**

3    A    Yes.

4    **Q    In need of replacing, correct?**

5    A    Yes.

6    **Q    How does this look, pretty awful, right?**

7    A    Yes.

8    **Q    You would say that this structure needs to be replaced,**

9    **correct?**

10   A    You know in looking at pictures, yes.

11   **Q    If this was a house that you built this would not be**

12   **acceptable, right?**

13   A    I had it built for me, I spent a lot of money on that

14   house, I would not have paid all of that money for a house to be

15   in this condition.

16   **Q    That wasn't my question.  My question was, you wouldn't**

17   **build a house like this, would you?**

18   A    I would not build a house.

19   **Q    And if this was your house, you would have felt like it**

20   **needed repaired, wouldn't you?**

21   A    If I were to see these damages, yes.

22   **Q    The roof leak that had occurred in this case in 2009**

23   **happened after you stopped paying your mortgage, correct?**

24   A    Correct.

25   **Q    You told the Mahony's that the staining on the garage**

ceiling was cosmetic; is that right?

A     I told them that there are low spots that I swept off the water with a broom.  I had to -- like I told him just to keep it sealed every six months, or if you want to go get it -- kept -- or if you want to get it releveled.

Q     I think I said garage, not the deck, I'm talking about the garage ceiling.

A     The garage ceiling was as a result of the main water leak that we had, so after that was fixed, there was no issues once we replaced that drywall.

Q     Right.  But you told them it just needed to be touched up, there was nothing wrong with it.

A     The drywall needed to be touched up.

Q     And all you told them was the balconies needed to be sealed and perhaps releveled, there was nothing wrong with them?

A     We had no issues, we had no water coming in as long as you kept it dry.

Q     You had no water coming through?

A     Not that I could see.

Q     Didn't the Mahony's have a right to rely upon the things that you said about the condition of the home?

A     I was not giving him any -- at the time I was just talking to him as a homeowner.  Now, these items we were walking through the whole house pointing out things about the house that he wanted to know.

Q    I'll try again.  Do you think you had a right to rely upon the representations you've made about the condition of the home?

A    I told him about everything I knew about the house.

MR. KELSKY:  Judge, I have no further questions.

THE COURT:  Redirect, Mr. Soto?

MR. SOTO:  No redirect, Your Honor.

THE COURT:  Members of the jury, if you have any questions for this witness, if you'll raise your hands. There are no additional questions.  You can step down and have a seat next to your attorney.

All right.  Members of the jury, we're at a good stopping point for the evening.  The attorneys are reporting that they are on schedule, and we're still hopeful we'll conclude this case tomorrow.  It's somewhat of an imprecise timing with trials, but we will do our best, so that's what we're hoping for.

So go ahead and pack up your notepad and pens.  I would like you here and ready to walk in the courtroom at 9:00 tomorrow, and, again, as soon as I'm finished with my morning hearings we'll get started.

Let me go over your evening instruction, and I know you heard them before, but you heard a full day of testimony and they are very important that you continue to comply with these instructions.  You cannot do any independent research

1   of any kind through any sort, this includes something as

2   simple as looking up a word in the dictionary.  You cannot

3   do that.  All of the jurors must hear the same evidence at

4   the same time in the presence of the judge and the

5   attorneys.  Doing research means you cannot look up things

6   on the Internet, you cannot look up things in books, the

7   newspaper, and you cannot visit the scene of anything that's

8   been discussed since this trial.  If you understand and will

9   follow that instruction, please raise your hands.  All hands

10  are raised.  You cannot discuss this case.  You have not

11  begun deliberations, and you will not begin those until I

12  give you the authority to retire to the jury room for that

13  purpose.  So you cannot discuss anything about the case

14  amongst yourselves or with family members, employers or

15  friends.  This means directly or indirectly, so not in

16  person, not on the phone, and not by any electronic means.

17  If you understand that instruction and will follow it,

18  please raise your hands.  All hands are raised.  With that,

19  have a nice evening, and I'll see you tomorrow morning at

20  9:00.

21          THE DEPUTY:  All rise for the jury.

22          (The jury was escorted from the courtroom.)

23          THE COURT:  You can be seated.  Okay.  We are

24  going to go through the jury instructions now, your clients

25  are welcome to stay if they want to, or they can leave if

1      they want to.  It's really up to them.

2            All right.  I have the instructions that were

3      provided to me at the beginning of the case.

4            What is the first instruction that you have, is it

5      401.1?

6            MR. KELSKY:  I actually have them in numerical

7      order from the beginning, but the first substantive

8      instruction is 401.1.

9            THE COURT:  That will be the first instruction the

10     jury receives.

11           Are we starting with 401.1?

12           MR. KELSKY:  That's introduction.

13           MR. SOTO:  No objection, Your Honor.

14           THE COURT:  And your next one?

15           MR. KELSKY:  I believe would be the 401.2.

16           MR. SOTO:  Yes, Your Honor, and I have a

17     handwritten copy as well as written copy of the summary of

18     the claims.

19           THE COURT:  Okay.  Can I see your revised copy?

20           MR. SOTO:  Yes, Your Honor.  May I approach?

21           THE COURT:  Yes.

22           MR. SOTO:  And I'm also providing a copy of the

23     409.11 which are the defenses.  I've also provided you with

24     the handwritten version read to the jury as well as the

25     original instruction for the defense is .11.

1          THE COURT:  All right.  So after 401.1 will be the

2     summary of the claim.  We'll come back to how it will

3     ultimately be worded, but for right now it will be the

4     summary of the claim, what's the next one?

5          MR. KELSKY:  401.3, evaluating the evidence.

6          THE COURT:  Do you agree, Mr. Soto?

7          MR. SOTO:  Yes, Your Honor.

8          THE COURT:  The next one?

9          MR. KELSKY:  409.7, the issue on plaintiffs'

10    claims.

11         THE COURT:  Do you agree, Mr. Soto?

12         MR. SOTO:  Yes, Your Honor.

13         THE COURT:  And 409.07, the first, second, third,

14    fourth, fifth.

15         MR. SOTO:  Yes, Your Honor.

16         MR. KELSKY:  409.10, burden of proof on the main

17    claim.

18         THE COURT:  Do you agree, Mr. Soto?

19         MR. SOTO:  Yes, Your Honor.

20         THE COURT:  The next one?

21         MR. KELSKY:  409.11, but I have an objection to

22    that.

23         THE COURT:  Okay.  So it will be a defense issue

24    Mr. Soto's proposing the retyped one, so we'll come back to

25    that.

1          MR. KELSKY:  The same objection as to 409.12,

2     burden of proof on the defendants' case.

3          THE COURT:  Okay.  And the next one.

4          MR. KELSKY:  The next one I have is 409.13, the

5     modified one which I handed Your Honor.

6          THE COURT:  Do you object to it, Mr. Soto?

7          MR. SOTO:  Your Honor, we reserve objection on

8     that since it was right after the order, but if we're not

9     going to be objecting to late jury instructions, then I

10    would be withdrawing that afterwards.

11         THE COURT:  Your objection is based on being late?

12         MR. SOTO:  I'll reserve that objection, Your

13    Honor, and we'd ask that we go back to it with the same idea

14    that if he objects to my jury instruction, this one was

15    provided after the deadline for that.

16         MR. KELSKY:  Just so we're clear, I'm not

17    objecting to the timeliness of the instruction, I'm

18    objecting to the competency of the instruction.

19         THE COURT:  That's how I understood it.

20         MR. SOTO:  Then, Your Honor, no objection.

21         THE COURT:  At this point we're doing the final

22    instruction.

23         MR. SOTO:  Yes, Your Honor, no objection.

24         THE COURT:  Okay.  So 409.13 would be --

25         MR. KELSKY:  My point, Judge, I think really the

1   only element of damage that should go to the jury would be

2   item number four, the measure of the calculation.

3              THE COURT:  And are you -- tell me the basis.

4              MR. KELSKY:  The basis is that we're not claiming

5   alternative living expenses, loss of use of the home, and

6   the cost of expert testing to the extent that there were

7   out-of-pocket expenses to determine the defects of the home,

8   they were subsumed in the summary produced in number 4.

9              THE COURT:  All right.  So you are withdrawing

10  two, three, and five?

11             MR. KELSKY:  Correct.  Number five is included in

12  number four.  There is just not a separate line item.

13             THE COURT:  Any objection, Mr. Soto?

14             MR. SOTO:  No objection, Your Honor.

15             THE COURT:  All right.  So with that modification

16  409.13, had the same introductory sentences and then number

17  one, out-of-pocket expenses to determine the defects in the

18  home.  Number two, the difference between the actual value

19  of the property and the value of the alleged facts regarding

20  the difference between the purchase price and the real or

21  actual value of the property, and the time the problems were

22  discovered.

23             MR. KELSKY:  Yes, that's correct.

24             THE COURT:  And end it there.

25             Okay.  What's the next one?

1        MR. KELSKY:  The next one I have is 601.1.

2        THE COURT:  Do you agree, Mr. Soto?

3        MR. SOTO:  Yes, Your Honor.

4        THE COURT:  Your next one.

5        MR. KELSKY:  601.2.

6        THE COURT:  A and B?

7        MR. KELSKY:  Yes.

8        THE COURT:  Do you agree?

9        MR. SOTO:  Yes, Your Honor.

10       THE COURT:  And the next one.

11       MR. KELSKY:  I'm sorry, Your Honor, unless I

12  missed it, the subject of the instruction, the verdict

13  should not be -- is that 601?

14       THE COURT:  I've got 7.

15       MR. SOTO:  Yes, Your Honor, that's the next one I

16  have as well.

17       THE COURT:  601.5 should be the next one.

18       MR. SOTO:  Yes, Your Honor.

19       THE COURT:  Is that what you're referring to?

20       MR. KELSKY:  I'm referring to the instruction

21  referring to your verdict should not be based upon prejudice

22  or sympathy.

23       THE COURT:  Okay.  If you look close to number 7,

24  at the bottom of the first page where the paragraph starts,

25  in reaching your verdict, and see if that's what you're

1    referring to.

2              MR. KELSKY:  Yes.  That's exactly what I'm

3    referring to.

4              THE COURT:  And then the concluding instruction

5    after reviewing the verdict form.

6              Okay.  And then there are three instructions that

7    are not agreed to.  The summary of the claims, 401.2,

8    409.11, defendant issues, and then 409.12, burden of proof,

9    the defendant issues.

10             MR. SOTO:  Yes, Your Honor.

11             THE COURT:  All right.  This could be handled a

12   couple of ways.  We can go ahead and address the plaintiffs'

13   position on this, or we can wait until the defense has

14   rested, if we do that you're going to have to have

15   alternative instructions drafted.

16             MR. KELSKY:  I'd rather handle it now if we can.

17             MR. SOTO:  Your Honor, it's the defense preference

18   to wait until tomorrow.

19             THE COURT:  I think because it's your preference

20   it needs to be at the conclusion of your case.

21             MR. KELSKY:  I appreciate that.  My position is

22   that there are affirmative defenses to begin with to the

23   claim, so there wouldn't be an alternative instruction that

24   I would be -- that I would be -- that would be submitted.

25             THE COURT:  That they would be just withdrawing --

1   MR. KELSKY:  Or that they would be more stricken.

2   THE COURT:  All right.  Let me just take a look at

3   them.  I am -- Mr. Soto, I will give you a chance to

4   respond, but I would like Mr. Kelsky to go ahead and make

5   his argument on the assumption of the risk.

6   MR. SOTO:  Yes, Your Honor.

7   MR. KELSKY:  Your Honor --

8   THE COURT:  I'm generally familiar with the law on

9   this, so -- and Mr. Soto, if you need additional time to

10  respond, I may have to handle that first thing in the

11  morning.

12  MR. SOTO:  Yes, Your Honor.

13  THE COURT:  Okay.  Mr. Kelsky, if you'd like to go

14  ahead.

15  MR. KELSKY:  The issue in the case is it's a

16  fraudulent misrepresentation case.  It's not a claim

17  premised upon or based upon negligence.  It's a claim based

18  upon specific representations by the Rodriguez's, and before

19  I talk about the case law, Your Honor, if you'll look at the

20  instruction there at 409.7, I'm trying to get there as well.

21  The actual standard jury instruction says at the bottom,

22  Plaintiffs may rely on a false statement even though its

23  falsity could have been discovered if plaintiff had made an

24  investigation.  So with the jury instruction in mind, and in

25  conjunction with the fact that this is not a negligence

1  claim, assumption of the risk is a defense to a negligent

2  situation.   There is some case law out of the Fourth

3  District, a case called Eliza Stephenson Meyer, M-e-y-e-r

4  versus Thompson, T-h-o-m-p-s-o-n, and that's at 861 So. 2d

5  1256, and in that case there was a fraud claim brought

6  against the seller which happens to be somewhat similar to

7  the case because it deals with a contractor who was a

8  seller.   And the argument that was attempted to be advanced

9  was that this should be a comparative fault issue here.   And

10  in other words that the buyer should be assessed fault for

11  not doing A, B, and C, and the court rejected that on the

12  basis of, this is not a negligence action, this is a

13  fraudulent misrepresentation action to acquire exception of

14  the risk standard to and fault of a negligent -- a

15  fraudulent misrepresentation would be to change the

16  liability issue and would allow the defendant to somehow be

17  excused from their false representation.

18          In other words, they would like to make -- in fact,

19  they were trying to make a negligent misrepresentation

20  claim, and I don't know if Your Honor remembers but many

21  months ago when we first had a motion to dismiss in this

22  case, one of the things that was specifically argued is

23  there's no claim for negligent misrepresentation, there's

24  only claim for fraudulent misrepresentation.   To meet the

25  claim of the assumption of the risk would be to assert the

content of negligence into a fraudulent misrepresentation

claim, and that is specifically not the nature of the claim.

So from a competency standpoint, our position is the

assumption of the risk has no applicability to a fraudulent

misrepresentation claim.  In fact, the jury instruction just

essentially proved that point, and that's our argument on

the issue.

THE COURT:  Mr. Soto.

MR. SOTO:  Thank you, Your Honor.  I'll cite the

case Billian v. Mobil Corp. which is at 710 So. 2d 984, and

they talk about the history of the Johnson case.

THE COURT:  Do you have a copy of it?

MR. SOTO:  Yes, Your Honor, forgive me.  May I

approach?

THE COURT:  Yes.  Thank you.

MR. SOTO:  And they talk about the state of mind.

In this regard the state of mind under Johnson is analogous

to a negligent misrepresentation case where one who supplies

false information exposes himself to liability if he fails

to exercise reasonable care or competence in obtaining or

communicating the information.  The practical effect of

Johnson is to encourage disclosure --

THE COURT:  Where are you reading?

MR. SOTO:  Oh, forgive me, Your Honor, page 4.

The practical effect of Johnson is to encourage

disclosure in those transactions where a seller might be in
doubt as to whether a set of facts should be revealed to
buyers -- potential buyers.

Nothing in the Supreme Court's holding in Johnson
indicates that actionable nondisclosure must be accompanied
by the same intent to defraud require another fraud case.
And that's what we have the standard proof of preponderance
of the evidence rather than clear and convincing.  And the
court goes on to say, Johnson is consistent with the modern
view that theoretical basis of liability for nondisclosure
is not an outgrowth of the law of fraud, where a
nondisclosure of material information would be characterized
as type of misrepresentation.  Over 60 years ago, Dean
Keeton articulated the principle upon which Johnson is
founded:  It would seem that the object of the law in
nondisclosure cases should be to impose on the parties to
the transaction a duty to speak whenever justice, equity,
and fair dealing demand it.... This duty to speak does not
result from an implied representation by silence, but exists
because a refusal to speak constitutes unfair conduct....
The question is one of fair conduct, just as negligence is a
question of fair conduct.

What I would argue, Your Honor, is that Johnson and
its prodigy are from the negligence standard and are not
from the fraud standard and that it is quasi-negligence and

1    therefore it wouldn't preclude defenses that would be

2    applicable to any other court.

3           I did exhaustive research to try to find out any

4    court that has ever ruled that assumption of risk could not

5    be applied in a case of fraudulent misrepresentation under

6    Johnson, and I couldn't find any, and, you know, Mr. Kelsky

7    couldn't find any either.

8           In this case we have multiple representations of

9    things going on in the balcony, in the garage ceiling, in

10    the baby's room, in the French doors, where there was a

11    discussion and a knowledge and to say that that has no

12    meaning, and that they couldn't assume any risk on that,

13    would defy what normally would be a normal defense in a

14    negligence case.

15           THE COURT:  Mr. Soto, if you look at the Meyer

16    versus Thompson case, that's where there wasn't a

17    comparative negligence.  In Florida, the assumption is the

18    risk has been assumed into comparative negligence.  So how

19    -- I'd like you to address the Meyers case, v Thompson.

20           MR. SOTO:  Well that was the case of first

21    impression from me, Your Honor, I just got it.  I can tell

22    you in Johnson they did do an inspection, and so that was

23    never addressed by the Johnson court, and I would say

24    because the courts have never addressed specifically the

25    defense that there wasn't a specific finding to include this

1   all together.

2        THE COURT:  All right.  Any new arguments that

3   haven't been made?

4        MR. KELSKY:  I would only just quote one of the

5   paragraphs from the Meyer case which the court has for the

6   record.  It says -- in talking about Billian which is the

7   case that Mr. Soto cited, it says, however, our

8   acknowledgement of that concept does not convert to

9   purchaser's claim of fraudulent concealment into a negligent

10  misrepresentation claim.  And the court concluded, thus not

11  only were there no allegations of negligence, the substance

12  of this cause of action did not fall within the term

13  negligence.  This rendered the affirmative defense

14  comparative negligence inapplicable.

15        And as the court just pointed out, the assumption

16  of risk has been brought into comparative negligence.  For

17  this reason we believe the affirmative defenses is legally

18  inapplicable to this case.

19        THE COURT:  All right.  Mr. Soto had asked until

20  tomorrow, so I'm going to give him a chance to read the

21  Meyer case, and Mr. Soto if you just be prepared in the

22  morning to argue, and if there is any additional argument

23  that you'd like to present, I will give you an opportunity

24  to read the case before I announce a final decision on that.

25        All right.  So I've heard the arguments, and I'm

1    going to allow Mr. Soto the opportunity to read the Meyer

2    case.

3              There's a second defense raised by the defendant,

4    and then superseding intervening cause.  Mr. Kelsky, would

5    you like to address that?

6              MR. KELSKY:  Sure, Your Honor.  The substance of

7    that claim as I understand it is that Mr. Smith may have

8    exposed some area and spread some mold throughout the

9    premises.  And really they might call it superseding and

10   intervening cause, but what they're really trying to do is

11   establish some type of third-party liability.  Now, you're

12   going to create third-party liability regardless of what

13   it's called.  That's not the substance of it, but you not

14   only have to plead, you also have to identify the third

15   party and, again, the only reason I'm bringing this up is

16   because it's not a negligence claim.  This is a claim about

17   misrepresentation.  There is nothing in the -- certainly

18   nothing in the testimony, but there is no law that I'm aware

19   of allowed superseding and intervening cause, never was

20   claimed, never was the defense to be applicable to the

21   various reasons that the defense just talked about

22   inapplicable.  So it's our position that a superseding

23   intervening cause was nothing more than a negligence

24   defense.  This is not a negligence case.  This is a

25   misrepresentation case, and under Meyer for the same reason

1    the defense has no legal applicability in this instance.

2         THE COURT:  Mr. Soto.

3         MR. SOTO:  Again, under Billian, Your Honor, they

4    discuss how the case under Johnson, the fraudulent

5    misrepresentation is a quasi-negligence, quasi-fraud case

6    which is why we don't apply intervening or fraud factors or

7    affirmative and clear and convincing evidence.

8         The evidence showed, as you heard today and

9    yesterday, that there was a handyman who went around who

10   could have caused these damages, and then they used that to

11   try to say that Mr. Mahony who said it and knew it when in

12   fact it was fabricated and created by the handyman.

13        THE COURT:  Do you have any case law that you

14   would like me to consider?

15        MR. SOTO:  Not other than the Billian case which

16   talks about how this is a quasi-fraud quasi negligence claim

17   and therefore it doesn't preclude all defenses to a

18   negligence claim.

19        THE COURT:  Mr. Kelsky.

20        MR. KELSKY:  I just want to clarify that the

21   burden of proof on a fraudulent misrepresentation claim and

22   the greater weight of the evidence not clear and convincing

23   evidence, and that the issue of quasi-negligent and

24   quasi-fraud is a misnomer, this a fraudulent

25   misrepresentation claim, and the analysis would still be

1    applicable under the Meyer case and not the Billian case.

2    In fact, Meyer quotes Billian and discusses it.  That's our

3    position, Judge.

4          THE COURT:  All right.  Like I said, I am familiar

5    with the Meyer case.  I will reread the Billian case and

6    give you my ruling on that as well in the morning.

7          Let me just ask, does the legal causation

8    instruction, Mr. Soto, does refer to negligence.  I mean

9    that had an -- there is an intervening cause, but it's

10    really applicable to negligence.  Do you want to address

11    that?

12          MR. SOTO:  Just to the extent that it goes

13    directly to damages here, Your Honor, and is relevant for

14    the jury to consider.

15          THE COURT:  All right.  I'll give the defense a

16    chance to read the case presented by the plaintiff, and then

17    I'll reread the Billian case and have a ruling for you.  I

18    think -- I did receive your e-mail, so that's come through.

19    So there's new enough instructions that I don't -- for

20    example, if I grant it in part and deny it in part, we could

21    make the modification.  But if you will also bring your

22    laptop.

23          Here's -- before we talk about the verdict form,

24    let me go through, announce the instructions again, but who

25    is going to be responsible tonight for making the jurors a

1    copy?

2         MR. KELSKY:  I brought a ream of paper with me and

3    a color printer, so I'll do it.

4         THE COURT:  They don't need to be in color, black

5    and white.  But they do need to -- if you look at the

6    introduction to show standard jury instructions.  So the

7    preference adopted by the Supreme Court is that the jurors

8    do not have titles on their sets, and they do not have any

9    case cites, or accepted, rejected, so it needs to be very

10   vanilla on this.  It is easier to print one instruction per

11   page.  I've seen it done both ways.  I'm fine either way.

12   It just makes it a little harder to modify if it's all in a

13   row versus separate pages.

14        My set, and I would suggest your set, but it's your

15   choice, I do like the jury instructions numbered, so I know

16   what I'm reading, and I know whether it's a standard

17   instruction or not, so I suggest for my set and the two

18   attorneys' sets that you use the title.  It doesn't matter

19   if it's case cites, accept or reject and the title and any

20   other notations because it would only be on the jury's

21   copies.  Okay.  Anybody have any objection to what you heard

22   on that?

23        Mr. Soto?

24        MR. SOTO:  No, Your Honor.

25        THE COURT:  You all right with Mr. Kelsky

1      volunteering?

2              MR. SOTO:  Yes.  Sounds good to me.

3              THE COURT:  All right.  Verdict form.  Do you have

4      a proposed verdict form?

5              MR. KELSKY:  It was attached to the packet.

6              THE COURT:  Let me see if I have it here.

7              I do.

8              Do you have a copy of it, Mr. Soto?

9              MR. SOTO:  Yes, Your Honor.

10             THE COURT:  Any objection to the proposed verdict

11     form?

12             MR. SOTO:  To the extent that it includes the

13     defenses raised.

14             THE COURT:  Do you have a proposed verdict form?

15             MR. SOTO:  I could produce one for tomorrow or

16     give some proposed ones to counsel.

17             THE COURT:  You probably -- you are welcome to do

18     that, again, I haven't ruled, but I would suggest that if

19     you're proposing an alternative form that you get that done.

20             MR. SOTO:  Yes, Your Honor.

21             THE COURT:  All right.  And then you bring it on a

22     jump drive or a disc or something.

23             MR. SOTO:  Yes, Your Honor.

24             We could e-mail them to your JA, would that be

25     sufficient?

1    THE COURT:  I would prefer you e-mail it to me

2    okay.  You could e-mail them both.  Please do not write

3    anything, do not write any cover notes or argument, and make

4    sure the other side is cc'd on that, or I will not open it.

5    MR. KELSKY:  I don't know -- the e-mail that I

6    sent to your judicial assistant Mr. Soto wasn't copied on

7    it, but I can recopy him on the e-mail.

8    THE COURT:  Okay.  I'm going to forward it to you.

9    Mr. Soto, what's your e-mail address?

10   MR. SOTO:  Darren@darrensotolaw.com.

11   THE COURT:  You'll have to spell it for me.

12   MR. SOTO:  D-a-r-r-e-n-@-d-a-r-r-e-n-

13   s-o-t-o-l-a-w.com.

14   THE COURT:  Okay.  Mr. Kelsky, you're

15   bradkelsky@kelskylaw.com, is that the one you want me to

16   use?

17   MR. KELSKY:  Yes.

18   THE COURT:  I'm just going to forward back to you

19   what you sent, that way everybody has seen what I've seen.

20   All right.  So you're going to e-mail a proposed

21   verdict form, Mr. Soto?

22   MR. SOTO:  Yes, Your Honor.

23   THE COURT:  Okay.  To opposing counsel tonight.

24   MR. SOTO:  Yes, Your Honor.

25   THE COURT:  All right.  Any other issues we need

1      to address before tomorrow?

2              We're going to announce those instructions just as

3      a final confirmation.

4              401.1, 401.2, you will also have 401.2 modified,

5      print that out as if I had already ruled in the plaintiffs'

6      favor, 401.3, 409.7, 409.10.  Next is defense proposed,

7      409.10, is defense proposed 409.11, 409.12 that's defense

8      proposed, burden of defense issue, 409.13 as modified, so

9      that will now have two subsections, but you need to modify

10     that tonight and make your ten copies.

11             MR. KELSKY:  Judge, I'm sorry.  I may have been

12     not clear.  I think that the only one that should go under

13     there is the number four, the cost of expert testing --

14     excuse me -- the first element, so it's actually should have

15     been number four.

16             THE COURT:  So you're deleting one, two, three,

17     and five?

18             MR. KELSKY:  It's already under number four.

19             THE COURT:  Any objection?

20             MR. SOTO:  No, Your Honor.

21             THE COURT:  All right.  So if you will redraft

22     that and make sure you have sufficient copies.

23             Then 601.1, 601.2(a) and (b).  That can be on one

24     page, just delete the titles and subtitles and of course the

25     accept and reject.  601.5 and then number 700.

1   MR. KELSKY:  You want each instruction on the page

2   with the number, no titles or nothing.

3   THE COURT:  It doesn't -- if you have a different

4   -- either party prefers it all on -- just so it's straight

5   from page, just so -- it works easier to have one

6   instruction on a page, and it's easier if changes need to be

7   made.

8   Do you have a strong feeling, Mr. Soto?

9   MR. SOTO:  No, Your Honor.

10   THE COURT:  Mr. Kelsky, you probably --

11   MR. KELSKY:  Your Honor, I prefer that.

12   THE COURT:  Okay.  What I would also suggest is

13   that you e-mail a set of what you're printing from the jury

14   of Mr. Soto so he knows and his set as well.  Okay?

15   All right.  Anything else that needs to be

16   addressed?

17   MR. SOTO:  No, Your Honor.

18   THE COURT:  All right.  Then if you'll just be set

19   up and be here a few minutes before 9:00.  I usually like

20   the attorneys here between a quarter of and ten of, just in

21   case there's something we need to address, we don't keep the

22   jury waiting.  And as every other morning, I just can't

23   predict who shows up.

24   MR. SOTO:  For time management, from my

25   understanding, there's only Mr. Hoyos testifying tomorrow

morning.  If he takes a total of an hour, I would be surprised unless Mr. Soto disagrees, but if we were to assume hypothetically that by 10:00 we'd be able to close in the morning and have the jury go out for lunchtime, or would it be in the afternoon.

THE COURT:  How much time do need for closings?

MR. KELSKY:  I don't need more than 30 minutes.

MR. SOTO:  Your Honor, I believe it could be done before lunch.

THE COURT:  Okay.  I'm fine.  Usually what we'll do is -- I'm fine with it as long as the courtroom staff is all right.  We have wonderful deputies that are usually right on top of it.  What we'll do is we'll have the jury fill out lunch menus, so if they break about lunchtime, their lunch will be delivered and waiting for them or pretty close to it.

Deputy, are you here tomorrow?

THE DEPUTY:  Yes.

THE COURT:  If you could just have menus ready to give them say at the midmorning break, not first thing in the morning.

THE DEPUTY:  Okay.

THE COURT:  And we can go ahead and have the alternate order too, and then if lunch comes he can take it with him.

1          So, again, unless something changes and we move it,

2   but we'll just kind of wait and see.  The deputy's really

3   good at checking with me.

4          Any other questions regarding timing?

5          MR. SOTO:  No, Your Honor.

6          THE COURT:  The only way we wouldn't do that is if

7   it looks like we're going to go way past the lunch break,

8   and it looks like it's just too long for the jury, then we

9   might break for lunch, but it sounds like you anticipate

10  that we could at least turn it over to them by 1:00 at the

11  latest.

12         MR. KELSKY:  I honestly think my closing will be

13  less than a half hour, and so I see no reason why closing

14  wouldn't be done by 11:30.

15         MR. SOTO:  Yes, Your Honor, I would be amazed if

16  we go past 12:00.

17         THE COURT:  All right.  Anything else from either

18  party?

19         MR. KELSKY:  No, Your Honor.

20         THE COURT:  Well everybody have a good evening,

21  and I'll see you tomorrow.

22         (The proceedings concluded at 5:10 p.m.)

23

24

25

CERTIFICATE OF REPORTER

STATE OF FLORIDA

COUNTY OF ORANGE

       I, SUSAN MULLEN, Court Reporter, certify that I was authorized to and did stenographically report the proceedings had at the time and place herein, and that the transcript is a true and complete record of my stenographic notes.

       I FURTHER CERTIFY that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in the action.

       Dated this the 22nd day of October, 2015.

_____

SUSAN MULLEN

| A | | | |
|---|---|---|---|
| **$50,000** 206:9,25 207:11 | **223:4 228:1** | **208:25 209:18,23** 212:14 | **217:2 220:20** 221:15,16,19 |

**A**

**$50,000** 206:9,25 207:11
**a.m** 201:14
**able** 235:3
**AC** 204:5
**accept** 230:19 233:25
**acceptable** 210:9 211:12
**accepted** 230:9
**accompanied** 224:5
**acknowledgement** 226:8
**acquire** 222:13
**action** 222:12,13 226:12 237:14,15
**actionable** 224:5
**actual** 209:23 218:18,21 221:21
**additional** 213:10 221:9 226:22
**address** 220:12 225:19 227:5 229:10 232:9 233:1 234:21
**addressed** 225:23 225:24 234:16
**adopted** 230:7
**advanced** 222:8
**advised** 206:1
**affirmative** 220:22 226:13,17 228:7
**afternoon** 235:5
**ago** 222:21 224:13
**agree** 216:6,11,18 219:2,8
**agreed** 220:7
**ahead** 207:23 209:17 213:18 220:12 221:4,14 235:23
**allegations** 226:11
**alleged** 218:19
**allow** 222:16 227:1
**allowed** 227:19
**alternate** 235:24
**alternative** 218:5 220:15,23 231:19
**amazed** 236:15
**analogous** 223:17
**analysis** 228:25
**announce** 226:24 229:24 233:2
**anticipate** 236:9
**Anybody** 230:21
**APPEARANCES** 202:1
**applicability**

**223:4 228:1**
**applicable** 225:2 227:20 229:1,10
**applied** 225:5
**apply** 228:6
**appointments** 206:7
**appreciate** 220:21
**approach** 215:20 223:14
**area** 208:16 210:20 227:8
**areas** 204:8 208:22
**argue** 224:23 226:22
**argued** 222:22
**argument** 221:5 222:8 223:6 226:22 232:3
**arguments** 226:2,25
**articulate** 205:14
**articulated** 224:14
**asked** 204:14,15 206:14 207:2 226:19
**assert** 222:25
**assessed** 222:10
**assistant** 232:6
**assume** 225:12 235:3
**assumed** 225:18
**assumption** 221:5 222:1,25 223:4 225:4,17 226:15
**attached** 231:5
**attempted** 222:8
**attorney** 208:6 213:11 237:12,13
**attorneys** 213:13 214:5 230:18 234:20
**authority** 214:12
**authorized** 237:7
**Avenue** 201:16 202:10
**aware** 227:18
**awful** 211:6

**B**

**b** 219:6 222:11 233:23
**baby's** 208:10 209:9,13 210:15 225:10
**back** 205:19 206:19 216:2,24 217:13 232:18
**bad** 205:20 210:7 210:13,15
**balconies** 205:2,5

**208:25 209:18,23** 212:14
**balcony** 204:13,14 204:19,20,23 205:20 210:11,24 225:9
**bank** 207:22
**banks** 207:24
**BARBARA** 202:6
**bare** 206:22
**based** 217:11 219:21 221:17,17
**basis** 218:3,4 222:12 224:10
**beginning** 215:3,7
**begun** 214:11
**Behalf** 202:3,9
**believe** 215:15 226:17 235:8
**best** 213:16
**Billian** 223:10 226:6 228:3,15 229:1,2,5,17
**black** 230:4
**books** 214:6
**bottom** 219:24 221:21
**bought** 206:13,15
**BRAD** 202:6
**bradkelsky@kel...** 202:5 232:15
**break** 235:14,20 236:7,9
**bring** 229:21 231:21
**bringing** 227:15
**broom** 205:20 212:3
**brought** 222:5 226:16 230:2
**build** 211:17,18
**built** 211:11,13
**burden** 216:16 217:2 220:8 228:21 233:8
**buyer** 222:10
**buyers** 224:3,3

**C**

**C** 204:1 222:11
**calculation** 218:2
**call** 227:9
**called** 204:12 222:3 227:13
**CALZADA** 202:9
**cards** 206:14
**care** 206:8 223:20
**case** 201:3 208:6 211:22 213:15 214:10,13 215:3

**217:2 220:20**
221:15,16,19
222:2,3,5,7,22
223:10,11,18
224:6 225:5,8,14
225:16,19,20
226:5,7,18,21,24
227:2,24,25
228:4,5,13,15
229:1,1,5,5,16
229:17 230:9,19
234:21
**cases** 224:16
**causation** 229:7
**cause** 226:12 227:4
227:10,19,23
229:9
**caused** 228:10
**cc'd** 232:4
**ceiling** 210:5
212:1,7,8 225:9
**certain** 208:22
**certainly** 206:5
227:17
**CERTIFICATE** 203:5
237:2
**certified** 205:15
209:5 210:3
**certify** 237:6,11
**chance** 221:3
226:20 229:16
**chandeliers** 206:18
**change** 222:15
**changes** 234:6
236:1
**characterize** 210:4
210:24
**characterized**
224:12
**CHARGE** 203:4
**checking** 236:3
**choice** 230:15
**CIRCUIT** 201:1,1
**cite** 223:9
**cited** 226:7
**cites** 230:9,19
**claim** 216:2,4,17
220:23 221:16,17
222:1,5,20,23,24
222:25 223:2,2,5
226:9,10 227:7
227:16,16 228:16
228:18,21,25
**claimed** 227:20
**claiming** 218:4
**claims** 215:18
216:10 220:7
**clarify** 228:20
**clear** 217:16 224:8

228:7,22 233:12
**clearly** 205:14
**clients** 214:24
**close** 204:7 205:18
219:23 235:3,16
**closed** 204:5
**closing** 236:12,13
**closings** 235:6
**color** 230:3,4
**come** 216:2,24
229:18
**comes** 235:24
**coming** 205:17
209:12 212:16,18
**communicating**
223:21
**comparative** 222:9
225:17,18 226:14
226:16
**competence** 223:20
**competency** 217:18
223:3
**complete** 237:9
**comply** 213:24
**concealment** 226:9
**concept** 226:8
**conclude** 213:15
**concluded** 226:10
236:22
**concluding** 220:4
**conclusion** 220:20
**condition** 211:15
212:21 213:2
**conduct** 224:20,21
224:22
**CONFERENCE** 203:4
**confirmation** 233:3
**conjunction** 221:25
**connected** 237:14
**consider** 228:14
229:14
**considered** 208:25
209:6
**consistent** 224:9
**constitutes** 224:20
**Cont'd** 203:2
**content** 223:1
**continue** 213:24
**Continued** 204:2
**contractor** 205:15
209:6 210:3
222:7
**convert** 226:8
**convincing** 224:8
228:7,22
**copied** 232:6
**copies** 230:21
233:10,22
**copy** 215:17,17,19

215:22 223:12
230:1 231:8
**Corp** 223:10
**correct** 205:9
207:20 208:4,7
208:12,13,18,21
209:1,13 210:1
210:18 211:2,4,9
211:23,24 218:11
218:23
**cosmetic** 212:1
**cost** 218:6 233:13
**counsel** 231:16
232:23 237:12,13
**County** 201:1,15
237:4
**couple** 204:13
220:12
**course** 233:24
**court** 201:1 207:15
213:6,8 214:23
215:9,14,19,21
216:1,6,8,11,13
216:18,20,23
217:3,6,11,19,21
217:24 218:3,9
218:13,15,24
219:2,4,6,8,10
219:14,17,19,23
220:4,11,19,25
221:2,8,13
222:11 223:8,12
223:15,23 224:9
225:2,4,15,23
226:2,5,10,15,19
228:2,13,19
229:4,15 230:4,7
230:25 231:3,6
231:10,14,17,21
232:1,8,11,14,18
232:23,25 233:16
233:19,21 234:3
234:10,12,18
235:6,10,19,23
236:6,17,20
237:6
**Court's** 224:4
**Courthouse** 201:15
**courtroom** 213:19
214:22 235:11
**courts** 225:24
**courtyard** 210:19
**cover** 232:3
**covered** 209:24
**create** 227:12
**created** 228:12
**credit** 206:14,14
**Cross-Examination**
203:3 207:15,17

**cut** 204:16

---
### D
---

**D** 204:1
**d-a-r-r-e-n** 232:12
232:12
**damage** 205:21
210:4,11,15
211:1 218:1
**damages** 211:21
228:10 229:13
**DARREN** 202:12
**Darren@darrens...**
232:10
**DATE** 201:13
**Dated** 237:16
**day** 213:23 237:16
**deadline** 217:15
**deal** 206:25
**dealing** 224:18
**deals** 222:7
**Dean** 224:13
**decided** 205:18
206:12
**decision** 226:24
**deck** 210:18 212:6
**decks** 209:10
**defects** 218:7,17
**defendant** 202:9
220:8,9 222:16
227:3
**defendants** 201:10
217:2
**defense** 215:25
216:23 220:13,17
222:1 225:13,25
226:13 227:3,20
227:21,24 228:1
229:15 233:6,7,7
233:8
**defenses** 215:23
220:22 225:1
226:17 228:17
231:13
**defraud** 224:6
**defy** 225:13
**delete** 233:24
**deleting** 233:16
**deliberations**
214:11
**delivered** 235:15
**demand** 224:18
**deny** 229:20
**deputies** 235:12
**Deputy** 214:21
235:17,18,22
**deputy's** 236:2
**designed** 208:14
**deteriorated**

209:23
**determine** 218:7,17
**DIANE** 201:6
**dictionary** 214:2
**difference** 209:21
218:18,20
**different** 234:3
**Direct** 203:3
**directly** 214:15
229:13
**disagrees** 235:2
**disc** 231:22
**disclosure** 223:22
224:1
**discovered** 218:22
221:23
**discuss** 214:10,13
228:4
**discussed** 206:23
214:8
**discusses** 229:2
**discussion** 225:11
**dismiss** 222:21
**District** 222:3
**doctors** 206:7
**Doherty** 201:17
**doing** 214:5 217:21
222:11
**door** 204:5
**doors** 204:4 225:10
**DOROUGH** 202:9
**doubt** 224:2
**drafted** 220:15
**drive** 231:22
**dry** 212:17
**drywall** 212:10,13
**dsoto@mylawsol...**
202:11
**duty** 224:17,18

---
### E
---

**E** 204:1,1
**e-mail** 229:18
231:24 232:1,2,5
232:7,9,20
234:13
**easier** 230:10
234:5,6
**effect** 223:21,25
**either** 225:7
230:11 234:4
236:17
**electronic** 214:16
**element** 218:1
233:14
**Eliza** 222:3
**employee** 237:12,13
**employers** 214:14
**encourage** 223:22

223:25
**equity** 224:17
**escorted** 214:22
**especially** 206:6
**ESQUIRE** 202:6,6,12
**essentially** 203:6
**establish** 227:11
**evaluating** 216:5
**evening** 213:13,22
214:19 236:20
**everybody** 232:19
236:20
**evidence** 214:3
216:5 224:8
228:7,8,22,23
**exact** 209:9
**exactly** 220:2
**Examination** 203:3
**example** 229:20
**exception** 222:13
**excuse** 233:14
**excused** 222:17
**exercise** 223:20
**exhaustive** 225:3
**existed** 209:10
**exists** 224:19
**expenses** 218:5,7
218:17
**expert** 218:6
233:13
**explained** 206:16
**exposed** 209:22
227:8
**exposes** 223:19
**extent** 218:6
229:12 231:12

---

**F**

**fabricated** 228:12
**facing** 210:19
**fact** 208:14 221:25
222:18 223:5
228:12 229:2
**factors** 228:6
**facts** 218:19 224:2
**fails** 223:19
**fair** 224:18,21,22
**fall** 226:12
**false** 221:22
222:17 223:19
**falsity** 221:23
**familiar** 221:8
229:4
**family** 206:5
214:14
**fan** 204:6 206:17
**fans** 206:18
**fault** 222:9,10,14
**favor** 233:6

**feel** 205:4,7
**feeling** 234:8
**felt** 211:19
**fifth** 216:14
**fill** 235:14
**final** 217:21
226:24 233:3
**financially** 237:14
**find** 225:3,6,7
**finding** 225:25
**fine** 206:17 230:11
235:10,11
**finished** 206:13
213:20
**first** 207:1 215:4
215:7,9 216:13
219:24 221:10
222:21 225:20
233:14 235:20
**five** 218:10,11
233:17
**fixed** 212:9
**fixtures** 207:7
**flat** 208:10,17,17
208:25 209:2,4,6
209:9,12 210:22
**Florida** 201:1,16
202:4,10 225:17
237:3
**follow** 214:9,17
**foot** 205:4
**foreclose** 207:24
**foreclosure** 207:19
208:6
**forgive** 223:13,24
**form** 220:5 229:23
231:3,4,11,14,19
232:21
**forward** 232:8,18
**found** 204:17
**founded** 224:15
**four** 218:2,12
233:13,15,18
**fourth** 216:14
222:2
**fraud** 222:5 224:6
224:11,25 228:6
**fraudulent** 221:16
222:13,15,24
223:1,4 225:5
226:9 228:4,21
228:24
**French** 225:10
**friends** 214:15
**full** 213:23
**further** 207:14
213:5 237:11

---

**G**

**G** 204:1
**garage** 210:5
211:25 212:6,7,8
225:9
**generally** 221:8
**give** 214:12 221:3
226:20,23 229:6
229:15 231:16
235:20
**giving** 212:22
**go** 205:4 207:23
212:4 213:18,22
214:24 217:13
218:1 220:12
221:4,13 229:24
233:12 235:4,23
236:7,16
**goes** 224:9 229:12
**going** 204:9 205:21
207:13 214:24
217:9 220:14
225:9 226:20
227:1,12 229:25
232:8,18,20
233:2 236:7
**good** 204:9 213:12
231:2 236:3,20
**grant** 229:20
**greater** 228:22
**guess** 204:15,16,18
207:2 209:24

---

**H**

**half** 236:13
**hammer** 204:18,20
204:22
**handed** 217:5
**handle** 220:16
221:10
**handled** 220:11
**hands** 213:9 214:9
214:9,18,18
**handwritten** 215:17
215:24
**handyman** 228:9,12
**happened** 204:14
211:23
**happens** 222:6
**harder** 230:12
**hear** 214:3
**heard** 213:23,23
226:25 228:8
230:21
**hearings** 213:21
**hide** 205:11
**high-risk** 206:6
**history** 223:11
**holding** 224:4
**holes** 204:13,18,19

204:24
**home** 209:20 212:21
213:3 218:5,7,18
**homeowner** 212:23
**honestly** 236:12
**Honor** 213:7 215:13
215:16,20 216:7
216:12,15,19
217:5,7,13,20,23
218:14 219:3,9
219:11,15,18
220:10,17 221:6
221:7,12,19
222:20 223:9,13
223:24 224:23
225:21 227:6
228:3 229:13
230:24 231:9,20
231:23 232:22,24
233:20 234:9,11
234:17 235:8
236:5,15,19
**Honorable** 201:17
**hopeful** 213:14
**hopefully** 207:5
**hoping** 213:17
**hospitals** 206:7
**hour** 235:1 236:13
**house** 204:8,10
205:1,15,25
206:12,13,16,22
207:3,5,6,7,10
207:24 208:1
211:11,14,14,17
211:18,19 212:24
212:24 213:4
**Hoyos** 234:25
**hundred** 210:19
**husband** 201:6,9
**hypothetically**
235:3

---

**I**

**idea** 204:9 205:21
217:13
**identify** 227:14
**II** 204:2
**III** 201:4
**implied** 224:19
**important** 213:24
**impose** 224:16
**imprecise** 213:15
**impression** 225:21
**inapplicable**
226:14,18 227:22
**include** 225:25
**included** 218:11
**includes** 214:1
231:12

**independent** 213:25
**INDEX** 203:1
**indicates** 224:5
**indirectly** 214:15
**information** 223:19
223:21 224:12
**inspection** 225:22
**instance** 228:1
**instigated** 206:25
**instruction** 213:22
214:9,17 215:4,8
215:9,25 217:14
217:17,18,22
219:12,20 220:4
220:23 221:20,21
221:24 223:5
229:8 230:10,17
234:1,6
**instructions**
213:25 214:24
215:2 217:9
220:6,15 229:19
229:24 230:6,15
233:2
**intent** 224:6
**interested** 237:14
**Internet** 214:6
**intervening** 227:4
227:10,19,23
228:6 229:9
**introduction**
215:12 230:6
**introductory**
218:16
**intrusion** 205:25
**investigation**
221:24
**involved** 207:19
**Island** 202:4
**issue** 216:9,23
221:15 222:9,16
223:7 228:23
233:8
**issues** 205:19
212:9,16 220:8,9
232:25
**item** 218:2,12
**items** 206:13 207:2
207:5,13 212:23

---

J

**JA** 231:24
**JAMIE** 201:9 203:2
**JOHN** 201:6
**Johnson** 223:11,17
223:22,25 224:4
224:9,14,23
225:6,22,23
228:4

**judge** 213:5 214:4
217:25 229:3
233:11
**judicial** 201:1
232:6
**July** 201:13
**jump** 231:22
**jurors** 214:3
229:25 230:7
**jury** 201:4 203:4
213:8,12 214:12
214:21,22,24
215:10,24 217:9
217:14 218:1
221:21,24 223:5
229:14 230:6,15
234:13,22 235:4
235:13 236:8
**jury's** 230:20
**justice** 224:17

---

K

**keep** 207:6 212:4
234:21
**keeping** 205:19
208:8
**Keeton** 224:14
**Kelsky** 202:3,6
203:3 207:16,18
213:5 215:6,12
215:15 216:5,9
216:16,21 217:1
217:4,16,25
218:4,11,23
219:1,5,7,11,20
220:2,16,21
221:1,4,7,13,15
225:6 226:4
227:4,6 228:19
228:20 230:2,25
231:5 232:5,14
232:17 233:11,18
234:1,10,11
235:7 236:12,19
**kept** 212:5,17
**kind** 214:1 236:2
**knew** 205:15,16,24
206:3 209:17
213:4 228:11
**know** 205:22 211:10
212:25 213:22
222:20 225:6
230:15,16 232:5
**knowledge** 225:11
**knows** 234:14

---

L

**laptop** 229:22

**Larry** 204:9,15
**late** 217:9,11
**latest** 236:11
**law** 202:3 221:8,19
222:2 224:11,15
227:18 228:13
**lawsuit** 207:19
208:4
**leak** 205:16 208:12
211:22 212:9
**leave** 214:25
**leaving** 206:22
**legal** 228:1 229:7
**legally** 226:17
**liability** 222:16
223:19 224:10
227:11,12
**lift** 208:17
**light** 207:7
**liked** 207:3
**line** 206:14 218:12
**little** 230:12
**lived** 205:1
**living** 218:5
**LLINAS** 202:6
**LLP** 202:9
**locked** 204:5
**long** 212:16 235:11
236:8
**look** 211:6 214:5,6
219:23 221:2,19
225:15 230:5
**looked** 204:22,24
**looking** 211:10
214:2
**looks** 236:7,8
**loss** 218:5
**lot** 206:17 211:1
211:13
**low** 212:2
**lunch** 235:9,14,15
235:24 236:7,9
**lunchtime** 235:4,14

---

M

**M-e-y-e-r** 222:3
**Magnolia** 202:10
**Mahony** 201:6,6
228:11
**Mahony's** 211:25
212:20
**main** 212:8 216:16
**maintained** 209:24
**making** 229:25
**management** 234:24
**MARIA** 201:9
**matched** 207:6
**material** 209:23
224:12

**materials** 209:25
210:1,2
**matter** 230:18
**mean** 206:5 210:6
229:8
**meaning** 225:12
**means** 214:5,15,16
**measure** 218:2
**meet** 222:24
**members** 213:8,12
214:14
**membrane** 208:19
**menus** 235:14,19
**Meyer** 222:3 225:15
226:5,21 227:1
227:25 229:1,2,5
**Meyers** 225:19
**middle** 204:14
210:11
**midmorning** 235:20
**mind** 221:24 223:16
223:17
**minutes** 234:19
235:7
**misnomer** 228:24
**misrepresentation**
221:16 222:13,15
222:19,23,24
223:1,5,18
224:13 225:5
226:10 227:17,25
228:5,21,25
**missed** 219:12
**Mobil** 223:10
**modern** 224:9
**modification**
218:15 229:21
**modified** 217:5
233:4,8
**modify** 230:12
233:9
**mold** 204:7 206:3
227:8
**money** 206:17
211:13,14
**months** 205:18
212:4 222:21
**morning** 213:21
214:19 221:11
226:22 229:6
234:22 235:1,4
235:21
**mortgage** 208:2
211:23
**motion** 222:21
**move** 236:1
**movie** 207:3
**Mullen** 201:22
237:6,19

multiple 225:8

**N**

N 204:1
nature 206:11
223:2
need 211:4 221:9
230:4,5 232:25
233:9 234:6,21
235:6,7
needed 211:20
212:11,13,14
needs 211:8 220:20
230:9 234:15
negligence 221:17
221:25 222:12
223:1 224:21,24
225:14,17,18
226:11,13,14,16
227:16,23,24
228:16,18 229:8
229:10
negligent 222:1,14
222:19,23 223:18
226:9
neighbors 205:9
never 205:19,20
225:23,24 227:19
227:20
new 208:21 226:2
229:19
newspaper 214:7
nice 214:19
NINTH 201:1
nondisclosure
224:5,10,12,16
normal 225:13
normally 225:13
North 201:16
202:10
notations 230:20
notepad 213:18
notes 232:3 237:10
number 218:2,8,11
218:12,16,18
219:23 233:13,15
233:18,25 234:2
numbered 230:15
numerical 215:6

**O**

O 204:1
object 217:6
224:15
objecting 217:9,17
217:18
objection 215:13
216:21 217:1,7
217:11,12,20,23

objects 217:14
obtaining 223:20
occurred 211:22
October 237:16
offer 206:9
oh 204:8 223:24
okay 214:23 215:19
216:23 217:3,24
218:25 219:23
220:6 221:13
230:21 232:2,8
232:14,23 234:12
234:14 235:10,22
once 205:17 212:10
ones 231:16
open 232:4
opening 204:16
openings 204:10
opportunity 226:23
227:1
opposing 232:23
Orange 201:1,15,16
237:4
order 215:7 217:8
235:24
original 215:25
Orlando 201:16
202:10
out-of-pocket
218:7,17
outgrowth 224:11

**P**

P 204:1
P.A 202:3
p.m 236:22
pack 213:18
packet 231:5
page 219:24 223:24
230:11 233:24
234:1,5,6
pages 230:13
paid 211:14
paper 230:2
paragraph 219:24
paragraphs 226:5
part 206:16 229:20
229:20
parties 224:16
237:12,13
party 227:15 234:4
236:18
Patricia 201:17
paying 208:2
211:23
pens 213:18
percent 210:19

permission 204:15
person 214:16
phone 214:16
picture 210:4
pictures 205:22
211:10
Pine 202:4
place 201:15 237:8
plaintiff 201:7
202:3 221:23
229:16
plaintiffs 216:9
220:12 221:22
233:5
planning 206:22
Plantation 202:4
plead 227:14
please 214:9,18
232:2
plywood 208:21
point 213:13
217:21,25 223:6
pointed 226:15
pointing 204:6
212:24
porch 205:23
position 220:13,21
223:3 227:22
229:3
potential 224:3
practical 223:21
223:25
preclude 225:1
228:17
predict 234:23
prefer 232:1
234:11
preference 220:17
220:19 230:7
prefers 234:4
pregnancy 206:6
prejudice 219:21
premised 221:17
premises 227:9
prepared 226:21
preponderance
224:7
presence 214:4
present 226:23
presented 229:16
pretty 210:13,15
211:6 235:15
price 218:20
principle 224:14
print 230:10 233:5
printer 230:3
printing 234:13
probably 231:17
234:10

problem 208:10
problems 218:21
proceedings 236:22
237:8
prodigy 224:24
produce 231:15
produced 218:8
proof 216:16 217:2
220:8 224:7
228:21
property 207:23
218:19,21
proposed 231:4,10
231:14,16 232:20
233:6,7,8
proposing 216:24
231:19
proved 223:6
provided 215:3,23
217:15
providing 215:22
punch 204:17
punched 204:18,24
purchase 218:20
purchaser's 226:9
purpose 214:13
put 206:12,18
208:21,24

**Q**

quarter 234:20
quasi 228:16
quasi-fraud 228:5
228:16,24
quasi-negligence
224:25 228:5
quasi-negligent
228:23
question 211:16,16
224:21,22
questions 207:14
213:5,9,10 236:4
quick 207:10
quote 226:4
quotes 229:2

**R**

R 204:1
rain 205:20
raise 213:9 214:9
214:18
raised 214:10,18
227:3 231:13
reaching 219:25
read 215:24 226:20
226:24 227:1
229:16
reading 223:23
230:16

ready 213:19
  235:19
real 207:10 218:20
really 215:1
  217:25 227:9,10
  229:10 236:2
ream 230:2
reason 209:21
  226:17 227:15,25
  236:13
reasonable 223:20
reasons 227:21
recall 206:11
receive 229:18
receives 215:10
recopy 232:7
record 226:6 237:9
redirect 213:6,7
redraft 233:21
refer 229:8
referring 219:19
  219:20,21 220:1
  220:3
refusal 224:20
regard 223:17
regarding 218:19
  236:4
regardless 227:12
reject 230:19
  233:25
rejected 222:11
  230:9
relative 237:11,13
relevant 229:13
releveled 212:5,15
rely 212:20 213:1
  221:22
remembers 222:20
removed 208:19
rendered 226:13
repaired 211:20
replace 206:20
replaced 205:17
  208:19 209:12
  211:8 212:10
replacing 211:4
report 237:7
Reported 201:21
Reporter 203:5
  237:2,6
reporting 213:13
representation
  222:17 224:19
representations
  213:2 221:18
  225:8
represented 208:4
representing 208:8
require 224:6

reread 229:5,17
research 213:25
  214:5 225:3
reserve 217:7,12
residential 209:5
  210:3
respond 221:4,10
responsible 229:25
rested 220:14
result 212:8
  224:19
retain 207:22
retire 214:12
return 204:5
retyped 216:24
revealed 224:2
reviewing 220:5
revised 215:19
right 204:5 207:24
  208:15 209:5
  210:7,13,16
  211:6,12 212:1
  212:11,20 213:1
  213:12 215:2
  216:1,3 217:8
  218:9,15 220:11
  221:2 226:2,19
  226:25 229:4,15
  230:25 231:3,21
  232:20,25 233:21
  234:15,18 235:12
  235:13 236:17
rise 214:21
risk 221:5 222:1
  222:14,25 223:4
  225:4,12,18
  226:16
Road 202:4
RODRIGUEZ 201:9,9
  203:2
Rodriguez's 221:18
roof 208:10,17,17
  209:9,12,19,24
  210:22 211:22
roofs 209:1,6
room 208:11 209:9
  209:13 210:15
  214:12 225:10
Rotted 211:2
row 230:13
ruled 225:4 231:18
  233:5
ruling 229:6,17
running 205:11

_____

**S**

S 204:1
s-o-t-o-l-a-w.com
  232:13

sale 206:12
saw 204:3 205:20
  207:2
says 221:21 226:6
  226:7
scene 214:7
schedule 213:14
sealed 212:4,15
seat 213:11
seated 214:23
second 204:12
  216:13 227:3
see 204:10,15,20
  204:22 205:17
  210:4 211:21
  212:19 214:19
  215:19 219:25
  231:6 236:2,13
  236:21
seen 230:11 232:19
  232:19
sell 205:11 207:9
  207:10,13
seller 222:6,8
  224:1
sent 232:6,19
sentences 218:16
separate 206:13
  218:12 230:13
set 224:2 230:14
  230:14,17 234:13
  234:14,18
sets 230:8,18
show 230:6
showed 204:13
  228:8
shows 234:23
side 232:4
silence 224:19
similar 222:6
simple 214:2
sit 205:23
situation 222:2
six 212:4
Smith 204:11 227:7
somewhat 213:15
  222:6
soon 213:20
sorry 209:3 219:11
  233:11
sort 214:1
Soto 202:9,12
  203:3 207:14
  208:6 213:6,7
  215:13,16,20,22
  216:6,7,11,12,15
  216:18,19 217:6
  217:7,12,20,23
  218:13,14 219:2

219:3,9,15,18
  220:10,17 221:3
  221:6,9,12 223:8
  223:9,13,16,24
  225:15,20 226:7
  226:19,21 227:1
  228:2,3,15 229:8
  229:12 230:23,24
  231:2,8,9,12,15
  231:20,23 232:6
  232:9,10,12,21
  232:22,24 233:20
  234:8,9,14,17,24
  235:2,8 236:5,15
Soto's 216:24
sounds 231:2 236:9
South 202:4
speak 224:17,18,20
specific 221:18
  225:25
specifically
  222:22 223:2
  225:24
spell 232:11
spent 206:17
  211:13
spots 212:2
spread 227:8
staff 235:11
stained 209:18
staining 211:25
standard 221:21
  222:14 224:7,24
  224:25 230:6,16
standing 209:18
standpoint 209:5
  223:3
started 207:8
  213:21
starting 215:11
starts 219:24
state 223:16,17
  237:3
statement 221:22
stay 207:4 214:25
stayed 208:1
stenographic 237:9
stenographically
  201:21 237:7
step 213:10
Stephenson 222:3
stopped 211:23
stopping 213:13
straight 234:4
stricken 221:1
strong 234:8
structure 209:19
  210:21 211:8
subject 219:12

**submitted** 220:24
**subsections** 233:9
**substance** 226:11
  227:6,13
**substantive** 215:7
**subsumed** 218:8
**subtitles** 233:24
**sued** 207:22
**sufficient** 231:25
  233:22
**suggest** 230:14,17
  231:18 234:12
**suggested** 204:6
**Suite** 202:4
**summary** 215:17
  216:2,4 218:8
  220:7
**superseding** 227:4
  227:9,19,22
**supplies** 223:18
**Supreme** 224:4
  230:7
**sure** 210:3 227:6
  232:4 233:22
**surface** 209:2,4
**surprised** 235:2
**Susan** 201:22 237:6
  237:19
**sweep** 205:23
**swept** 212:2
**sympathy** 219:22

---
                T
**T-h-o-m-p-s-o-n**
  222:4
**take** 204:7 206:8
  206:14 207:13
  208:14 221:2
  235:24
**TAKEN** 201:13
**takes** 235:1
**talk** 204:9 207:1
  221:19 223:11,16
  229:23
**talked** 227:21
**talking** 207:8
  212:6,23 226:6
**talks** 228:16
**tell** 204:3 218:3
  225:21
**ten** 233:10 234:20
**term** 226:12
**testifying** 234:25
**testimony** 203:2
  213:23 227:18
**testing** 218:6
  233:13
**Thank** 223:9,15
**theater** 207:3

**theoretical** 224:10
**thing** 221:10
  235:20
**things** 212:21,24
  214:5,6 222:22
  225:9
**think** 212:6 213:1
  217:25 220:19
  229:18 233:12
  236:12
**third** 216:13
  227:14
**third-party** 227:11
  227:12
**Thompson** 222:4
  225:16,19
**three** 208:1 218:10
  220:6 233:16
**tile** 208:15,16
  209:24
**time** 201:14 204:12
  205:1 207:1
  212:22 214:4
  218:21 221:9
  234:24 235:6
  237:8
**timeliness** 217:17
**timing** 213:16
  236:4
**title** 207:22
  230:18,19
**titles** 230:8
  233:24 234:2
**today** 228:8
**told** 207:4 211:25
  212:2,3,11,14
  213:4
**tomorrow** 213:15,20
  214:19 220:18
  226:20 231:15
  233:1 234:25
  235:17 236:21
**tonight** 229:25
  232:23 233:10
**top** 209:22 235:13
**torch** 208:24
**torched** 208:23
**total** 235:1
**touched** 212:11,13
  224:17
**transaction** 206:11
  224:17
**transactions** 224:1
**transcript** 237:9
**trial** 201:4 214:8
**trials** 213:16
**tried** 208:8
**true** 209:8 237:9
**try** 207:10 213:1
  225:3 228:11

**trying** 206:8
  221:20 222:19
  227:10
**turn** 236:10
**two** 209:19,21
  218:10,18 230:17
  233:9,16
**type** 224:13 227:11

---
                U
**Uh-huh** 209:14
**ultimately** 216:3
**underneath** 204:16
**understand** 214:8
  214:17 227:7
**understanding**
  234:25
**understood** 217:19
**unfair** 224:20
**use** 204:20 207:5
  218:5 230:18
  232:16
**usually** 234:19
  235:10,12

---
                V
**v** 223:10 225:19
**value** 218:18,19,21
**vanilla** 230:10
**various** 227:21
**verdict** 219:12,21
  219:25 220:5
  229:23 231:3,4
  231:10,14 232:21
**version** 215:24
**versus** 222:4
  225:16 230:13
**view** 224:10
**visit** 214:7
**Volume** 201:4 204:2
**volunteering** 231:1
**vs** 201:8

---
                W
**wait** 220:13,18
  236:2
**waiting** 234:22
  235:15
**walk** 205:2 213:19
**walking** 212:23
**want** 212:4,5
  214:25 215:1
  228:20 229:10
  232:15 234:1
**wanted** 204:15
  207:6 212:25
**wasn't** 211:16
  225:16,25 232:6

**water** 204:17
  205:16,17,21,21
  205:25 206:1
  209:12,18 211:1
  212:3,8,16,18
**waterproof** 210:21
**waterproofing**
  208:11 209:8,10
  209:19 210:1,2
**way** 230:11 232:19
  236:6,7
**ways** 220:12 230:11
**we'll** 213:14,21
  216:2,24 235:10
  235:13,13 236:2
**we're** 213:12,14,17
  217:8,16,21
  218:4 233:2
  236:7
**weight** 228:22
**welcome** 214:25
  231:17
**went** 205:22 209:17
  228:9
**weren't** 205:11
**wet** 208:20
**white** 230:5
**wife** 201:6,9 206:6
**windows** 204:5
**withdrawing** 217:10
  218:9 220:25
**witness** 213:9
**wonderful** 235:12
**wood** 208:19
**word** 214:2
**worded** 216:3
**words** 222:10,18
**work** 208:11
**works** 234:5
**wouldn't** 211:16,20
  220:23 225:1
  236:6,14
**write** 232:2,3
**written** 215:17
**wrong** 212:12,15

---
                X

---
                Y
**yeah** 208:8 210:17
**years** 208:1 209:20
  224:13
**yesterday** 228:9

---
                Z

---
                0

---
                1

**1:00** 236:10
**10:00** 235:3
**11** 215:25
**11:30** 236:14
**12:00** 236:16
**1250** 202:4
**1256** 222:5

---
**2**
---
**2009** 211:22
**2011-CA-16841-O**
  201:3
**2014** 201:13
**2015** 237:16
**204** 203:3
**207** 203:3
**215** 203:4
**22nd** 237:16
**237** 203:5
**250** 202:4
**29** 201:13
**2d** 222:4 223:10

---
**3**
---
**30** 235:7
**32801** 201:16
  202:10
**33324** 202:4

---
**4**
---
**4** 218:8 223:24
**401.1** 215:5,8,11
  216:1 233:4
**401.2** 215:15 220:7
  233:4,4
**401.3** 216:5 233:6
**407** 202:11
**409.07** 216:13
**409.10** 216:16
  233:6,7
**409.11** 215:23
  216:21 220:8
  233:7
**409.12** 217:1 220:8
  233:7
**409.13** 217:4,24
  218:16 233:8
**409.7** 216:9 221:20
  233:6
**419** 202:10
**425** 201:16
**449-1400** 202:5

---
**5**
---
**5:10** 236:22

---
**6**
---
**60** 224:13

**601** 219:13
**601.1** 219:1 233:23
**601.2** 219:5
**601.2(a)** 233:23
**601.5** 219:17
  233:25

---
**7**
---
**7** 219:14,23
**700** 233:25
**710** 223:10

---
**8**
---
**861** 222:4

---
**9**
---
**9:00** 201:14 213:20
  214:20 234:19
**954** 202:5
**982-3663** 202:11
**984** 223:10