IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
        IN AND FOR ORANGE COUNTY, FLORIDA


                      CASE NO.:  2011-CA-16841-O
                              Jury Trial Volume IV


JOHN MAHONY and DIANE
MAHONY, as husband and wife,

        Plaintiff,

-vs-

JAMIE RODRIGUEZ and MARIA
RODRIGUEZ, as husband and wife,

        Defendants.
_____



              DATE TAKEN:  July 30, 2014

              TIME:        9:00 a.m.

              PLACE:       Orange County Courthouse
                           425 North Orange Avenue
                           Orlando, Florida  32801

              BEFORE:      Honorable Patricia Doherty




                  Stenographically Reported By:
                        Susan Mullen

APPEARANCES


On Behalf of the Plaintiff:
        KELSKY LAW, P.A.
        1250 South Pine Island Road, Suite 250
        Plantation, Florida 33324
        (954) 449-1400
        bradkelsky@kelskylaw.com
        BY:  BRAD KELSKY, ESQUIRE
        BY:  BARBARA LLINAS, ESQUIRE


On Behalf of the Defendant:
        DOROUGH CALZADA & SOTO, LLP
        419 North Magnolia Avenue
        Orlando, Florida  32801
        (407) 982-3663
        dsoto@mylawsolution.com
        BY:  DARREN SOTO, ESQUIRE

INDEX

TESTIMONY OF JOSE HOYOS
    Direct Examination by Mr. Soto          13
    Cross-Examination by Mr. Kelsky        18
    Redirect Examination by Mr. Soto       20

JURY CHARGE CONFERENCE               22

CLOSING ARGUMENTS
    By Mr. Kelsky                  30
    By Mr. Soto                   49
    By Mr. Kelsky                  57

JURY CHARGE                       59

VERDICT                         65

CERTIFICATE OF REPORTER          68

P R O C E E D I N G S

1

2        THE COURT:  All right.  Let's go on the record in

3    2011-CA-16841.  Good morning, everyone.

4        MR. KELSKY:  Good morning.

5        MR. SOTO:  Good morning.

6        THE COURT:  As I indicated when I took the bench,

7    I've been told all of the jurors are present.

8        Is there any additional argument on the issues we

9    heard last night?

10       Mr. Soto, I have given you an opportunity to review

11   the case presented by the plaintiff, do you have any

12   additional arguments?

13       MR. SOTO:  Yes, Your Honor.

14       And it goes to superseding intervening cause, Your

15   Honor.

16       THE COURT:  Okay.  Any additional argument

17   regarding the other defenses?

18       MR. SOTO:  No, Your Honor, other than the fact

19   that their case is distinguished with Johnson and Meyer and

20   no inspection was had in this case.  Inspections were had in

21   both of those cases, so they may be distinguishable on that

22   ground.

23       I'd like to make my arguments to be probative and

24   superseding.

25       THE COURT:  Okay.  You may.

1    MR. SOTO:  Your Honor, even if the jury were to

2  find that Mr. Rodriguez did not fully disclose what he knew

3  about the balcony or about the leak in the office.  The

4  legal cause could still be the handyman.  For instance,

5  there may have been water because of he did or didn't

6  disclose that was on the balcony, but that could have been

7  20 years.  We never know if that would have gone all the way

8  through.

9    The testimony by both Mr. Rodriguez and Mr. Edrem

10  was that the handyman broke through that balcony.  We don't

11  know how long it was open for, and so that is an overrun

12  force, and could be deemed by the jury as the legal cause of

13  the damages to the balconies.

14    In addition, the office/the baby's room, where he

15  cut open part of the wall and put a fan in.  Even their

16  expert said that a fan could expose mold and could not

17  determine what part of that was mold that had gotten there

18  just recently or not.

19    The jury could find that Mr. Rodriguez didn't tell

20  fully what he knew about that leak originally, but because

21  of the superseding intervening cause of the handyman opening

22  it up and blowing air into there.  The jury could find that

23  that's an actual legal cause despite the fact that they find

24  that Mr. Rodriguez had not told them everything he knew in

25  compliance with Johnson.

1        THE COURT:  All right.  Thank you.  Mr. Kelsky.

2        MR. KELSKY:  The superseding and intervening cause

3   of damage by Mr. Soto is really nothing more than

4   comparative negligence type claim.  Again, this is not a

5   claim of negligence representation.  There is no claim for

6   negligence of misrepresentations or affirmative fraudulent

7   misrepresentation.

8        Additionally, that is a gross mischaracterization

9   of the evidence that was actually presented in this case,

10   and we specifically requested that Mr. Edrem determine what

11   did Larry Smith do to cause any damage to the home.  His

12   answer was flat out none, there was no damage.  And Mr.

13   Rodriguez said that he didn't know exactly what Larry Smith

14   did.

15        There's no competent substantial evidence to

16   support their claim anyway, but independent of that it's

17   still a negligence argument, and either way it's not

18   applicable to a fraudulent misrepresentation claim.  And I

19   think the case we provided Your Honor yesterday to include

20   comparative fault and fraudulent misrepresentation in the

21   Meyer case is equally as applicable to the superseding

22   intervening cause defense which is a negligence based

23   defense.

24        THE COURT:  All right.  Well how this is in front

25   of me, it came up as part of the charge conference that was

done.  Okay.  And the issue that I'm being asked to decide at this point is whether a charge will be given specifically that defendants are raising defense that's superseding intervening cause, so that's what I'm deciding, and also the assumption of the risk.

So regarding the jury instruction, the way its been presented by the defense, I think the plaintiffs' burden is to establish the elements of this cause of action which include that the allegation cause of damages, and that's part of the claim.

The defendants are certainly entitled to defend the claim on any -- on the plaintiffs' failure to meet any element of their cause of action, including the causation element.  The issue is whether there is a special jury instruction regarding causation as a defense.

From what I've heard at this point in the trial, I'm not inclined to grant a special jury instruction that their -- that the defendant has a defense of superseding intervening cause.  That does not prevent the defense though from arguing that the allegation has not caused the plaintiffs' alleged damage, but instead was caused by other matters based on the evidence that's presented.  So again, in the context of which I'm deciding this, I don't think it's appropriate to give a separate jury instruction that this is a special defense.  I think this defense is

1    incorporated in the denial of the claim.

2            MR. SOTO:  Yes, Your Honor.

3            THE COURT:  So, with that, and I'm making this

4    without prejudice.  The defendant hasn't rested at this

5    point nor has -- I don't know if the plaintiff is intending

6    to present any rebuttal evidence.  There's been none

7    discussed, but it's without prejudice for either party to

8    revisit the issue before the final jury instructions are

9    decided, the final verdict form is decided, and certainly

10   before it's given to the jury.

11           MR. SOTO:  Yes, Your Honor.

12           THE COURT:  And on the assumption of the risk, I

13   -- it would be the same ruling under the Meyer case.  I

14   don't think it's appropriate to have an assumption of the

15   risk as a defense, but it doesn't prevent the defendant from

16   arguing the plaintiff hasn't met its burden by way of the

17   elements of the cause of action.  Does that give you enough

18   guidance?

19           MR. KELSKY:  Yes.

20           MR. SOTO:  Yes, Your Honor.  And I think we could

21   probably just dispose of the verdict because of your ruling.

22   Mr. Kelsky's verdict form would be appropriate.  I will just

23   argue those matters as they affect the elements, and then

24   the jury will just have to make their determination as to

25   the material amount based upon that.

1    MR. KELSKY:  There is another issue that's

2  relevant to what's coming up regarding the testimony of

3  Mr. Hoyos.  So when we fixed the jury instructions, the

4  agreement was the measure of damages that are being met as a

5  bargain for the out-of-pocket rule, that's the measure of

6  damages.

7    Mr. Hoyos, when he gave his deposition testimony,

8  his testimony was that he was giving an opinion only as to

9  the value of the home as of July 8, 2014.  And his testimony

10  -- it wasn't a very long deposition.  It was a short

11  deposition, actually, the testimony doesn't establish the

12  value of the claim or the damages that existed at the time

13  of the sale.  In other words, the only thing he knew was the

14  present value, it did not fix the value relative to damages.

15  In fact, he had no information about the damages.  I'm

16  raising the issue now, Your Honor, because given the jury

17  instructions that were agreed to, his testimony is now

18  irrelevant and legally incompetent.

19    THE COURT:  So what are you suggesting?

20    MR. KELSKY:  I'm suggesting that his testimony

21  should be disallowed.  May I just read the deposition line

22  that's at issue?  So the question was, so in other words,

23  you're giving me today is what you believe the estimated

24  value of the house would be as of July 8, 2014?  That's

25  correct.  That sums up the testimony.

1    MR. SOTO:  Your Honor, first, he's not limited to

2    what he said in his deposition.  I can ask him additional

3    questions.  What Mr. Kelsky is asking us is to strike a

4    witness at trial which is an extraordinary request at this

5    point.  In addition, he can testify to those things, and I

6    can ask him right now.  The fact that Mr. Kelsky didn't ask

7    Mr. Hoyos different aspects, doesn't mean I'm barred right

8    now from bringing them up.  He could have asked and

9    confirmed that they weren't -- had no instances of any other

10   damages and could not delve into it.

11        MR. KELSKY:  May I respond?

12        THE COURT:  Quickly.

13        MR. KELSKY:  First of all, I asked him if he had

14   any other opinion, and that was the opinion, and, secondly,

15   there's no way Mr. Soto could put on an expert witness and

16   ask him an opinion at trial without having them be

17   disclosed, so I don't think that argument makes sense, but

18   the reality is this is what sums up his testimony.

19        THE COURT:  I'm not going to strike him.  And

20   again as I stated before and I'm going to restate it, we did

21   the jury instructions, we did the charge conference.  The

22   defendant has not rested, the plaintiff has not had an

23   opportunity for rebuttal, so the decision for me after last

24   night's charge conference and this morning are all about

25   prejudice for either parties to review them at the

1   conclusion of the evidence.  So for that purpose I'm going

2   to deny the motion to strike.

3           MR. KELSKY:  I can raise the issue when they rest.

4   I'll raise the issue after if I need to.

5           THE COURT:  All right.  Any other issues?

6           MR. SOTO:  Your Honor, may I have a copy of this

7   new verdict form?

8           THE COURT:  The one that he was going to finish

9   last night.

10           MR. KELSKY:  Yes.  I've got them all.

11           THE COURT:  Mr. Soto, would like to see it.

12           Do either of the attorneys need a quick break

13   before we bring the jury in?

14           MR. KELSKY:  When would you like the jury

15   instructions?

16           THE COURT:  Hang on to them for right now.

17           Does anybody need a quick break?

18           MR. KELSKY:  I'm fine.

19           THE COURT:  Mr. Soto, you and your clients are

20   fine?

21           MR. SOTO:  Yes, Your Honor.

22           THE COURT:  Okay.  Would you bring in the jury?

23           THE DEPUTY:  Yes.

24           (The jury was escorted into the courtroom.)

25           THE COURT:  Good morning.  Please be seated.

1    Take a moment to get yourselves situated.  I hope

2  everyone had a restful evening and welcome to day three of

3  the trial.

4    Let me check in with you and confirm that all of

5  the orders have been followed.  If you followed my

6  instruction and did not do any research of any kind through

7  any method, please raise your hand.  And all hands are

8  raised.  If you followed my instructions and have not

9  discussed the case with anyone either directly or

10  indirectly, meaning in person or electronically or

11  otherwise, please raise your hands.  And all hands are

12  raised.  And lastly if you have become aware of anyone who

13  has violated any of these instructions, or if you have

14  overheard anyone try and talk about the case or actually

15  talk about the case in your presence, please raise your

16  hand.  There are no hands raised.

17    All right.  We are continuing with the defendants'

18  case.  Mr. Soto, if you would call your first witness.

19    MR. SOTO:  Yes, Your Honor, we call Mr. Jose

20  Hoyos.

21    THE DEPUTY:  Raise your right hand to be sworn in

22  by the clerk.

23    THE CLERK:  Do you swear or affirm, the testimony

24  you shall give in this matter will be the truth, the whole

25  truth, and nothing but the truth, so help you God?

1              THE WITNESS:  I do.

2              THE COURT:  Sir, have a seat, make yourself

3   comfortable.  When you testify, please speak loudly and

4   clearly into the microphone.

5            Mr. Soto, when you're ready.

6           MR. SOTO:  Thank you, Your Honor.

7                 JOSE HOYOS,

8      Having first been duly sworn, was examined and

9   testified as follows:

10              DIRECT EXAMINATION

11  BY MR. SOTO:

12    **Q**  **Please state your name for the record.**

13    A  Jose Hoyos.

14    **Q**  **What is your occupation, Mr. Hoyos?**

15    A  Real estate agent.

16    **Q**  **Are you licensed in the State of Florida?**

17    A  Yes, I am.

18    **Q**  **How many real estate transactions have you participated**

19  **in?**

20    A  Since 2001, about 20.

21    **Q**  **How many residential?**

22    A  That would be 90 percent of that.

23    **Q**  **Have you ever sold a house in the area regarding the**

24  **subject property?**

25    A  In the Avalon Park Village since, no.

1    Q     In East Orlando?

2    A     I have.

3    Q     Did you review -- what did you review in order to make

4    your opinions established today?

5    A     The Property Radar based on the Orange County Property

6    website.

7    Q     Did you look at any other?

8    A     Also in the MLS.

9    Q     Can you please explain what the MLS is to the jury?

10   A     It's a website that's put together by the local Orlando

11   Board of Realtors where local agents will input data based on

12   listings and sales.

13   Q     Have you come up with an opinion regarding a value for

14   today?

15   A     Yeah.  $575,000.

16   Q     Is that opinion formed and final?

17   A     Yes, it is.

18   Q     Why did you determine it was -- the house was $575,000?

19   A     Because of the uniqueness of the house, the

20   Mediterranean look, in that particular area it's the only house

21   like it that exists, it's 5,600 square feet, it looks like a

22   castle and somebody who wants to buy the house because they

23   really love it, they want it, they like the neighborhood, and

24   they're willing to pay $575,000 which is about $100,000 more

25   than the 2014 assessment by the property appraisers.

Q     Now why did you add $100,000 to the property assessment?

A     It's the value of the emotional approach that some people say, I'm willing to pay $100,000 to have six rooms, four bathrooms, and being able to have that unique house in such a great neighborhood.

Q     Did you find any comparables in the area?

A     In Village Six, no.  I found one for $575, but it was not in Village Six it was on the golf course in Avalon Park, but most appraisers and lenders say, you can't price a house based on a different community.  It has to be the same area, but if somebody says, I'm willing to pay cash, what the appraised value is for, the assessed value on Orange County Property Appraiser, if the house is worth it, in fact that it's so lovely in that community and unique, then there's a value for it.

Q     What role does uniqueness play in determining a value?

A     Well, you know, we have bought and sold homes people go for either because the kind of roof it has, it has a pool, it's close to the shopping centers, it's close to walk areas, it's close to the road, and they're looking at location location, but at the same time if it's a family and the spouse says, honey, I want a six bedroom and this is my dream home, and this is what I always wanted, and they're willing to pay for it, then it establishes the market value, and the house is beautiful from the outside.

Q    If a few of the items needed to be replaced from the
house, such as French doors, such as fixing balconies, drywall
and water intrusion, how big of a factor would you say that
would play in changing the ultimate value of $575,000?

A    Myself, acting as a buyer's agent, where the buyer's
telling me, oh, I got to tell him what's wrong with the house,
then, you know, you order an inspection.  And the inspection
says there's some repairs that need to be done, then I will tell
the agent that's representing the seller that, look, the
inspection found, say $20,000 of repairs that need to be done.
My client buyers is not going to pay, you know, $575, it has to
be $20,000 less, and then I will submit the offer to the listing
agent, and I will submit it in the offer.

Q    Let's say it was $82,000, how would you approach that?

A    Let's just say if it was $82,000 worth of repairs, and
I am acting as a buyer's agent, then I have to be loyal and show
it to my client/buyer, and I have to submit it, and then my
client/buyer says, look, I'm not going to pay for those repairs.
I have to submit the offer to the listing agent deducting the
$80,000.  It's up to the seller and the listing agent to say yes
or no.

Q    Would there be a subsequent negotiation regarding those
-- that damage in your opinion?

A    No.  It's either a yes or no.

Q    Would -- have you ever participated in a sale where the

seller may pay for part of it and the buyer may pay for part of

those repairs?

A    Yeah.  It's based on what they reach.  It also depends

on how desperate a seller is.  They could say, okay, I'm willing

to go halfway, but it's ultimately up to the buyers.

Q    Would uniqueness play a role in that negotiation?

A    If it is an emotional sale, where the buyer just wants

that house, yes, the buyer may go, I'm willing to allow let's

say half of the cost, and I'll deal with the rest because I just

love this house.

Q    Let's talk about the value at the time of the sale.

What would be determined, and you could give a range for an

exact amount, if the $82,000 in damages was true at the time of

the sale, what do you think the ultimate value would be?

A    If it was sold for $560,000, if there are damages, it

could be about $450,000.

Q    Could it have been more?

A    Can you repeat the question?

Q    Could the ultimate value have been more?

A    If it was negotiated between the parties, yes.

Q    What about turning to today, the actual value today

that you testified was $575, there were those $82,000 in damages

back then, what effect would that have on the current value?

A    If there were damages, it will make the value go down

based on the inspection on the house, but, you know, if the

1   house could not be sold with damages, it would ultimately affect

2   the value, yes.

3       Q    What if those damages were repaired what effect would

4   that have on the current actual value?

5       A    It will stay the same.  The value will stay the same

6   because the repairs were fixed.

7                MR. SOTO:  No further questions.

8                THE COURT:  Cross-examination.

9                     CROSS-EXAMINATION

10  BY MR. KELSKY:

11      Q    I want to make sure I understood your testimony, if the

12  house had $83,000 in damages in fact at the time of the sale, it

13  is your opinion that the real value of the property would have

14  been $450,000; is that correct?

15      A    That's correct.

16      Q    And that takes into account at the time of the sale

17  there was about $83,000 worth of damage; is that right?

18      A    Based on the inspection report, yes.

19      Q    For getting an inspection report, if there were $83,000

20  in damages, the real value of the home would have been $450,000,

21  correct, that was your testimony, wasn't it?

22      A    Yes.

23      Q    You were asked in this case to provide an opinion as to

24  the value of the home today in July of 2014; is that correct?

25      A    That's correct.

Q    Do you know how much money the Mahonys paid to repair the home?

A    No.

Q    Do you know what type of damage the Mahonys had?

A    I believe it was mold related.

Q    When you say, mold related, was that information that you got from an amended complaint?

A    That's correct.

Q    You didn't review any depositions, did you?

A    No.

Q    You didn't see any photograph depicting damage, did you?

A    No.

Q    You didn't see any repair items or repair cost information, did you?

A    That's right.  I didn't see it.

Q    You don't know whether there was damage to the deck, do you?

A    I don't know.

Q    You don't know whether there was damage to the garage, do you?

A    I don't know.

Q    You don't know whether there was damage to a flex/office or a second-floor baby's room, do you?

A    I do not know.

1    **Q    You don't know whether there was damage to the roof, do**

2    **you?**

3    A    I do not know.

4    **Q    You don't know if there was evidence of any of the**

5    **people repairing anything in the home, do you?**

6    A    I don't know.

7             MR. KELSKY:  I have no other questions, Your

8    Honor.

9             THE COURT:  Redirect.

10            MR. SOTO:  Yes, Your Honor.

11                  REDIRECT EXAMINATION

12   BY MR. SOTO:

13   **Q    Mr. Hoyos, you are here determining your value,**

14   **assuming that there was $82,000 worth of damages at this point,**

15   **correct?**

16   A    Correct.

17   **Q    And is the value of a property with the market fair as**

18   **to what people are willing to pay for it?**

19   A    Between a buyer and seller and an honest transaction.

20   **Q    And so if the Mahonys were willing to pay part of that**

21   **damage because of the uniqueness of the house, that would**

22   **ultimately be the value of this house; is that correct?**

23   A    That is my whole point.

24            MR. SOTO:  No further questions, Your Honor.

25            THE COURT:  Members of the jury, if anyone has a

1    question of this witness you may raise your hand.  All

2    right, there are no questions.  Is this witness free to step

3    down?

4            MR. SOTO:  Yes, Your Honor.

5            THE COURT:  Is he released from all subpoena's?

6            MR. SOTO:  Yes, Your Honor.

7            THE COURT:  You're free to step down.

8            Mr. Soto, what's the defendants' next order of

9    business?

10           MR. SOTO:  Your Honor, the defense rests.

11           THE COURT:  Rebuttal?

12           MR. KELSKY:  No, Your Honor.

13           THE COURT:  All right.  Members of the jury, at

14   this time both the parties have rested and concluded their

15   case.  There are some issues I need to address outside of

16   your presence with the attorneys.  I'm going to ask that you

17   step back into the jury room, and we'll do this as quickly

18   as we can, but it may take us a little bit.

19           Leave your notepads upside down on your chair.

20           (The jury was escorted from the courtroom.)

21           THE COURT:  Be seated.

22           Mr. Kelsky, you said you had the jury

23   instructions.

24           MR. KELSKY:  Yes.  May I approach?

25           THE COURT:  You may.

1      All right.  First of all, any motions from the

2  plaintiff?

3      MR. KELSKY:  Since there are no affirmative

4  defense, then, no, I have no motions.

5      THE COURT:  Mr. Soto, any motions?

6      MR. SOTO:  Your Honor, we just renew our directed

7  verdict motion.

8      THE COURT:  Any new or different arguments?

9      MR. SOTO:  No, Your Honor.

10     THE COURT:  Any new or affirmative responses?

11     MR. KELSKY:  No, Your Honor.

12     THE COURT:  The defendants' renewed motions for a

13  directed verdict would be denied.

14     And you handed me the revised jury instructions.

15     MR. KELSKY:  I have one comment, just so you know,

16  I couldn't find 409.12 instruction, so I redid it as best as

17  I could from my memory.  I'm sorry.  401.2.

18     MR. SOTO:  Your Honor, I don't have a copy of it.

19     MR. KELSKY:  I just gave you the jury

20  instructions.

21     THE COURT:  Okay.  Just take a minute and just get

22  yourself situated.

23     All right.  Do you have your set, Mr. Soto?

24     MR. SOTO:  Yes.

25

1

2          THE COURT:  Let's just go through them

3     sequentially.

4          Does each side have a set of the jury instructions?

5          MR. KELSKY:  Yes.

6          THE COURT:  Mr. Soto?

7          MR. SOTO:  Your Honor, I have 401.1 through 409.10

8     -- actually I have the rest, Your Honor.

9          THE COURT:  All right.  The first packet handed to

10    me is 401.1, any objection from either party?

11          MR. SOTO:  No, Your Honor.

12          THE COURT:  401.2, any objection from either

13    party?

14          MR. SOTO:  No objection.

15          MR. KELSKY:  No objection, Your Honor.

16          THE COURT:  401.3, the greater weight of the

17    evidence, agreeable to both sides?

18          MR. SOTO:  No objection.

19          MR. KELSKY:  No objection, Your Honor.

20          THE COURT:  409.7, issues on plaintiffs' claim,

21    fraudulent misrepresentation.

22          MR. SOTO:  No objection.

23          MR. KELSKY:  No objection, Your Honor.

24          THE COURT:  409.10, burden of proof on main claim.

25          MR. SOTO:  No objection.

1          MR. KELSKY:  No objection, Your Honor.

2          THE COURT:  409.13, damages modified.

3          MR. SOTO:  Just so Your Honor knows I took out

4    409.11 and 409.12 because those are the affirmative

5    defenses, that's why it goes next to 409.13.

6          THE COURT:  Mr. Soto, at the conclusion of this

7    I'm going to ask both parties if there's any additional

8    instructions that either of you are requesting.

9          So just going through the packet, the next one I

10   have is 409.13, damages modified.

11         MR. SOTO:  No objection.

12         MR. KELSKY:  No objection, Your Honor.

13         THE COURT:  601.1, weighing the evidence.

14         MR. SOTO:  No. Objection, Your Honor.

15         MR. KELSKY:  No objection, Your Honor.

16         THE COURT:  601.2 (a) and (b).

17         MR. SOTO:  No objection.

18         MR. KELSKY:  No objection, Your Honor.

19         THE COURT:  601.5.

20         MR. SOTO:  No objection.

21         MR. KELSKY:  No objection, Your Honor.

22         THE COURT:  And 700.

23         MR. SOTO:  No objection.

24         MR. KELSKY:  No objection, Your Honor.

25         THE COURT:  Mr. Kelsky, any additional

1    instructions that the plaintiff is requesting?

2              MR. KELSKY:  No, Your Honor.

3              THE COURT:  Mr. Soto, any additional instructions

4    that the defense is requesting?

5              MR. SOTO:  No, Your Honor.

6              THE COURT:  Now the verdict form, do you have

7    copies of that?

8              MR. KELSKY:  I do.

9              THE COURT:  Mr. Kelsky is handing me a proposed

10   verdict form, do you have a copy, Mr. Soto?

11             MR. SOTO:  Yes, Your Honor.

12             THE COURT:  Have you had an opportunity to review

13   them?

14             MR. SOTO:  I have, Your Honor.

15             THE COURT:  Mr. Kelsky, any modification or

16   changes?

17             MR. KELSKY:  No, Your Honor.

18             THE COURT:  Mr. Soto, what's your position?

19             MR. SOTO:  No objection, Your Honor.

20             THE COURT:  All right.  Any additional issues or

21   matters that the plaintiff would like to address?

22             MR. KELSKY:  No, Your Honor.

23             THE COURT:  Any additional matters or issues that

24   the defense would like to address?

25             MR. SOTO:  No, Your Honor.

1          THE COURT:  All right.  Then I'm going to suggest

2     that the parties take a short break.

3              (A recess was taken.)

4              (The proceedings resumed as follows:)

5          THE COURT:  Members of the jury, you have now heard

6     and received all of the evidence in this case.  I am now

7     going to tell you about the rules of law that you must use

8     in reaching your verdict.

9              You will recall at the beginning of the case, I

10    told you that if at the end of the case I decided that if

11    different laws apply, I would tell you.  These instructions

12    that I'm about to give you are slightly different from what

13    I gave you at the beginning, and it is these rules of law

14    you must follow.

15             When I finish telling you about the rules of law,

16    the attorneys will present their final argument, and you

17    will then retire to decide your verdict.

18             Deputy, will you hand each of the jurors a set of

19    instructions?

20             If you'd like to follow along, I'm starting now on

21    the second page.

22             The claim in this case is as follows:  The

23    plaintiffs' claim that the defendant fraudulently

24    misrepresented the condition of the home they sold to

25    plaintiffs resulting in damages sustained by plaintiffs.

The plaintiffs must prove their claim by the greater weight of the evidence.  I will now define some of the terms you will use in deciding the case.

Greater weight of the evidence means a more persuasive and convincing force and effects of the entire evidence in the case.

The issue for you to decide on issues claimed for fraud and misrepresentations are:  First, whether the defendant made a false statement concerning material facts. Second, whether defendants knew the statements were false. Third, whether the defendants intended that another would rely on the false statements.  Four, whether plaintiffs relied on the false statement, and if so, fifth, whether the false statements was a legal cause of damage to plaintiffs. Plaintiffs may rely on false statements, even though its falsity could have been discovered if plaintiffs had made an investigation.  However, plaintiffs may not rely on false statements if they knew it was false, or its falsity was obvious to them.

If the greater weight of the evidence does not support the plaintiffs claim, your verdict should be for the defendants on this claim.

If you find for the defendants, you will not consider the matter of damages, but if you find for the plaintiffs, you should award plaintiffs an amount of money

1    that the greater weight of the evidence shows will fairly

2    and adequately compensate plaintiffs for the following:

3    One, the difference between the actual value of the property

4    and its value had the alleged facts regarding is true or the

5    difference between the purchase price -- let me restate it I

6    misread it.  The difference between the actual value of the

7    property and its value had the alleged facts regarding it is

8    true, or the difference between the purchase price and the

9    actual value of the property at the time the fraud was

10   discovered.

11          In deciding this case, it is your duty as jurors to

12   decide the issues and only those issues that I submit for

13   your determination.

14          You must come to an agreement about your verdict.

15   Your agreed upon answers to my questions are called your

16   jury verdict.

17          The evidence in this case consists of the sworn

18   testimony of the witnesses, all exhibits received in

19   evidence and all facts that were admitted or agreed to by

20   the parties.

21          In reaching your verdict, you must think about and

22   weigh the testimony and any documents, photographs, or other

23   material that has been received in evidence.

24          You now can consider any facts that were admitted

25   or agreed to by the lawyers.  Your job is to determine what

1    the facts are.  You may use reason and common sense to reach

2    conclusions.  You may draw reasonable inferences from the

3    evidence, but you should not guess about things that were

4    not covered here, and you must always apply the law as I've

5    explained them to you.

6         Let me speak briefly about witnesses.  In

7    evaluating the believability of any witness and the weight

8    you will give the testimony of any witness, you may properly

9    consider the demeanor of the witness while testifying, the

10   frankness or lack of frankness of the witness, the

11   intelligence of the witness, any interest the witness may

12   have in the outcome of the case, the names and opportunity

13   the witness had to know the facts about which the witness

14   testified, the ability of the witness to remember about

15   which the witness testified and the reasonableness of the

16   testimony of the witnesses, consider in the light of all of

17   the evidence in the case, and in the light of your own

18   experience and common sense.

19        You've heard opinion testimony and certain

20   technical subjects from persons referred to as expert

21   witnesses.  You may accept such opinion testimony, reject

22   it, or give it the weight you think it deserves, considering

23   the knowledge, skills, experience, training, or education of

24   the witness, the reasons given by the witness or the opinion

25   expressed and all of the other evidence in this case.

1          That is the law that you must follow in deciding

2     this case.  The attorneys for the parties will now present

3     their final arguments, and when they're through, I will have

4     a final instruction regarding your deliberations.

5          Any objections to the instructions that were read

6     to the jury.  Plaintiff?

7               MR. KELSKY:  No, Your honor.

8               THE COURT:  Defendant?

9               MR. SOTO:  No, Your Honor.

10              THE COURT:  Any additional instructions requested

11    from the plaintiff?

12              MR. KELSKY:  No, Your Honor.

13              THE COURT:  From the defendant?

14              MR. SOTO:  No, Your Honor.

15              THE COURT:  All right.  Then proceed with closing

16    arguments.

17              Mr. Kelsky, do you need a time limit?

18              MR. KELSKY:  I don't believe so, but I would like

19    to reserve ten minutes for rebuttal.

20              THE COURT:  Ten minutes out of the 45?

21              MR. KELSKY:  Yeah.  But I don't think I'll be that

22    long.

23              THE COURT:  All right.

24              MR. KELSKY:  May it please the court?

25              THE COURT:  Yes.

1          MR. KELSKY:   Counsel.   Ladies and gentlemen of the

2    jury, in jury selection and in opening statements I told you

3    that this was a simple case.   I told you it was simple as

4    CRC, concealed rotted construction, and I told you it was as

5    simple as CRC, certified residential contractor.   And that

6    is the very construction license that Mr. Rodriguez holds as

7    issued to him from the State of Florida.

8          The court has instructed you in this case on

9    judging the greater weight of the evidence.   The greater

10   weight of the evidence means the more persuasive, convincing

11   force and the effect of the entire evidence in the case.

12          Remember in jury selection, I gave you an example

13   of two equals of 50 pennies, and that if the plaintiff would

14   just need one more penny to make 51 pennies to be able to

15   carry their burden of proof.   And it's based upon all of the

16   evidence and testimony that the plaintiff did by the greater

17   weight of the evidence prove their claims against the

18   defendants, Mr. and Mrs. Rodriguez.

19          One of the other instructions that the judge just

20   read to you was, you may use reason and common sense to

21   reach conclusions.   We're going to talk about that in a few

22   seconds.

23          Before we get into the substantive issues in the

24   case, this is the quote out of the contract submitted into

25   evidence.   Not the real property disclosure statement which

1   was a separate document, the actual terms of the contract.

2   The seller knows of no facts materially affecting the value

3   of the real property, which are not readily observable and

4   which have not been disclosed to buyer.  So right off the

5   bat, you heard about eight months before this transaction

6   ever closed the Rodriguez's signed and dated in a contract

7   stating that they knew of nothing material that would affect

8   the value of the property, and in fact, they repeated that

9   sentiment when they filled out seller's of real property

10  disclosure form which warned them and said, in Florida a

11  seller is obligated by law to disclose to a buyer all known

12  facts materially affecting the value of the property sold

13  when they're not readily observable.  Two different warnings

14  about what their obligations were in a residential contract.

15          Now what were the false statements of material fact

16  that were made to the Mahonys.  There are five elements that

17  we have to prove:  The first element is the defendants' made

18  a false statement concerning material facts.  Well I think

19  you've heard enough testimony to show that the Rodriguez's

20  concealed numerous items to the Mahonys.  The first one was

21  the balconies simply had standing water that just needed to

22  be broomed.  I'll talk about the substantive testimony from

23  the expert instruction a little bit later.  But that was a

24  false statement of material fact and the evidence backed

25  that position.  The garage simply needed some paint, it was

a cosmetic repair.  The baby's room, a leak had been
repaired.  As the testimony showed, maybe the leak had been
repaired, but the insulation wasn't repaired, the studs
weren't repaired, the metal strapping wasn't repaired.
You've seen pictures of all of this showing rotted building
materials, black, gross, etcetera, I mean you have all of
the photos in evidence which you can take back with you to
look at.  They told them the French doors had minimal damage
to the bottom of them, and they told them that the exterior
of the home needed to be repainted.  We know these
statements are false.  We know this is all based upon what
the contractor said and what the evidence shows.

        The second element we have to prove is the
defendants knew these statements were false.  How do we know
that?  Jamie Rodriguez is a certified residential
contractor.  He had professional knowledge about the Florida
building codes.  Prior to, during the construction, after
the construction, and up and through the time that he moved
out of that house.  And as you heard from both Mr. Rodriguez
and Kevin Karten, they just don't hand out certified
residential contractor licenses.  You have to go to classes.
You have to take the test.  You have to submit an
application.  And that class is two days.  Two portions of
the test, one is financial responsibility, and the other one
is about the Florida building codes.

So Mr. Rodriguez, for a period of years, before
this property was ever sold to the Mahonys, had intimate
knowledge of the Florida Building code, and once more when
he builds his own homes, those homes have to comply with the
Florida building codes.  He told you specifically that he
understood that balconies needed to slope away from the
house.  He even gave you measurements.  I believe he said it
was 1/8 inch per foot away from the structure.  So by
definition of a properly sloped balcony, would never have
standing water on it per the Florida building code.  There's
no dispute about this.  It there's standing water, if
there's water that needs to be broomed off the balcony, it's
not flooding over the edge of the balcony, it does not meet
the building code.  And while Mr. Rodriguez used the term,
in a perfect world that happens, members of the jury, he did
to you what he did to the Mahonys.  He's trying to conceal
from you the very fact that the balconies themselves were a
violation of the Florida building codes.  The reality is
that we don't live in a perfect world.  We rely on people's
representations.  Words matter.  Representations matters.
And to tell you what condition should be like in a perfect
world is no different than telling you it's a cosmetic
issue, it's trying to conceal the full extent of the damages
suffered by these balconies.  His words matter.  Concealing
issues matters.

1    You also heard the testimony of Rick Edrem who told

2    you that there were signs and symptoms damage to the home

3    that would be readily apparent to a construction

4    professional.  This is part of expressed sentiment as well.

5    In fact, when Mr. Edrem got down from the witness stand, he

6    showed you on the Elite Mold Services, Inc. report the

7    evidence of a water stain coming from the balcony.

8    Now, you'll have the actual report with you back in

9    evidence, and you can see where it is, and if you look at

10   where he circled, there is one streaking coming down from

11   these balconies.

12   He told you that is evidence to a construction

13   professional like Mr. Rodriguez that there is something

14   wrong going on with this balcony.  And remember, he told the

15   Mahonys to paint the exterior of the home.  Well what would

16   painting the exterior of the home do?  It would be to

17   conceal all those stainings coming down from the balconies,

18   so that's giving them the representation that they just

19   needed to paint the exterior doing nothing more than trying

20   to cover up the very condition he was trying to conceal from

21   them.

22   Use your reason and common sense.  What would paint

23   do?  Paint would simply cover up the problem.

24   Mr. Karten told you that it was so extensive that

25   it would have been impossible for a certified residential

1   contractor like Mr. Rodriguez to not know that there was

2   significant damage to this home.  He told you that there

3   was, his words, no doubt, 100 percent that a construction

4   professional like Mr. Rodriguez knew that the problems in

5   his home were going on for a period of years, not days, not

6   weeks, not months, and don't be fooled by Larry Smith's

7   information that's going to come up in the defenses' case.

8         Mr. Edrem sat there and told you that when he got

9   there, Larry Smith had a hole in the balcony, primarily

10  because he put his foot through it, the hole of the balcony,

11  and there was a small area in the top of the bedroom that

12  they removed some drywall.  Well, in reality, that's sparked

13  the need to find out why there was so many problems in the

14  home.  He actually saw the damage and that led to the

15  investigation.  But what Mr. Edrem also told you was that

16  there was nothing that Larry Smith did that caused or

17  contributed to cause any type of problem to the home.  Don't

18  be fooled by the argument.  All he's trying to do is blame

19  something else on the damages that were concealed by the

20  Rodriguez's.

21        Larry Smith is what we call a red herring, it's

22  something that doesn't exist.

23        Let's talk about the garage for a little bit

24  because Mr. Rodriguez testified that the garage required a

25  quick repair.  He told you that, however, what Mr. Karten

1   and Mr. Edrem told you that putting up drywall in the

2   ceiling would do nothing more than conceal the damage.

3        Look at the photograph.  That's the edge of the

4   drywall that was cut away.  Look at the damage.  What

5   happens when you put drywall over this?  You conceal what's

6   going on underneath it.  The interesting thing about the

7   quick repair that was made, if you remember that

8   Mr. Rodriguez's testimony, that was that the leak in the

9   garage and the leak in the roof occurred at the same time.

10  So what was the quick repair?  The quick repair was throwing

11  up drywall.  What was the quick repair in the baby's room?

12  Throwing up drywall.  This is what it looked like at the

13  same time the quick repair was made, and isn't it exactly

14  what the reason and common sense would tell you, look right

15  behind the wall, the drywall was put up in the baby's room.

16        And you know, one of the other arguments that was

17  made was that the problem was fixed and they lived at the

18  home for a period of years.  That was what they said.  It

19  happened in 2009 after they stopped paying the mortgage,

20  there was a problem in the baby's room, and they repaired

21  it.  Well, members of the jury, if that's the case and they

22  did the repair that they said that they did, then why would

23  there be staining on the wall back in 2011 when it was going

24  to be sold?  Why would that be the case?  The answer is

25  there was either a leak that was not repaired or there was a

new leak at the time it was disclosed.  And remember what
Rick Edrem told you, Rick Edrem told you that he looked up
into the ceiling, out through the sky, out through the hole
he could see the sky.  So my suggestion to you, members of
the jury, is that putting up drywall is simply a cosmetic
repair.

And let's talk for a second about the people at the
company that allegedly made the repairs to the roof.  The
defense offered you not a single witness to corroborate that
a repair was made, they didn't show you any document or
evidence to establish the repair was made.  They gave you no
documents that you could look at to show that a repair was
made.  They didn't offer anything substantive to tell you
that repair had in fact been made.

We also talked about the French doors, and the
French doors, there we had some soft wood underneath.  Well,
again, they told them it was cosmetic.  But, again, you
heard from Rick Edrem and he said, no, there's evidence of
water intruding into the home causing it to be rotted
requiring the whole thing to be replaced.

Again, things that were known by Mr. Rodriguez by
virtue of him being a construction professional licensed in
the State of Florida.

So in summary of this issue, the testimony and
evidence from Mr. Rodriguez and Mr. Karten clearly

1   established that the representations made are by cosmetic

2   defects existing in the garage on the balconies in the

3   baby's room, were all nothing more than an attempt to

4   conceal the nature of the damage.  And how do we know that?

5   That's just simply looking at the issue of the fact that

6   they intended the Mahonys to rely upon the false statements.

7           Remember, they stopped paying their mortgage in

8   2009, and by 2011, they had received multiple offers on the

9   home, but the only home offer that was accepted was the one

10  by the Mahonys because it was a cash payment.  Because they

11  needed the cooperation of the bank in order to approve the

12  sale.

13          They needed to sell the house in order to avoid a

14  foreclosure judgment.  Mr. Soto did a good job at keeping

15  them out of the foreclosure judgment for three years.  The

16  bank was not going to let this thing go on forever, and

17  eventually that house would have been foreclosed upon.  They

18  would have had a judgement issued against them.

19          One way or another a foreclosure judgment was

20  coming down the line, and remember, members of the jury,

21  they also received a $50,000 cash benefit at the time of

22  closing.  So in reality, they were going to strip the home,

23  as they told the Mahonys in exchange for giving us $50,000

24  cash.  Mr. Soto in opening told you that they didn't get

25  anything from the transaction with the Mahonys.  That's not

true.  The bank got repaid and they got $50,000 cash.  And let's be honest about this, Mr. Rodriguez, a certified residential contractor knew about the defects affecting this home.

If he had stayed in his home, he would have been forced to pay $83,000 to bring it up to standards to make it livable.

So not only did -- the intent here was to sell the home to get the bank off their back, but also to avoid having a money pit that would be required to repair the home.  There was intent here, they needed out of the house, they needed to get out of the house, they needed to avoid having to pay for the repairs that the home had.

Now let's talk about the fourth element.  The Mahonys relied upon false statements.  Who better to rely on then Jamie Rodriguez, a certified residential contractor about the condition of the home.  They knew it inside and out, that was built for him and Mrs. Rodriguez and they lived there for a period of years.

You heard from Rick Edrem, who not only was a general contractor, a licensed Florida mold assessor, a licensed Florida mold remediator, but also a home inspector, and what he told you was that contractors are better at home inspections than home inspectors who don't have any construction background.

1    The defense was literally telling you that the

2 Mahonys should have assumed that the Rodriguez's were lying

3 to them at the time they made the misrepresentation about

4 the condition of the home.  They want to extend that

5 argument to say, they should have gotten a home inspection.

6 Really, they should have gotten a home inspection from

7 somebody who had less training credentials than a certified

8 residential contractor.  Use your reason and common sense.

9 That is an absurd position.  We relied upon statements.  We

10 should not assume that a seller that made these

11 representations was lying to the buyer.  That's what their

12 argument is.  It's another way of concealing their

13 responsibility.  They would like to say, it's not my

14 problem, it's their problem because they didn't get an

15 inspector from somebody who was less qualified as a

16 certified residential contractor who owns the house.  That

17 is an absurd argument.

18    And in fact the jury instruction -- this is the

19 jury instructions, plaintiff may rely on a false statement

20 even though its falsity could have been discovered if

21 plaintiffs had made an investigation.  There is no legal

22 requirement that they get an inspection.  It is a smoke

23 screen.  They're trying to block their liability and their

24 responsibility for making false statements.  And this

25 instruction is the law that you are required to follow in

1    rendering your verdicts.  Plaintiffs may rely on a false

2    statement.  There were numerous false statements that were

3    made over and over, and there were numerous statements that

4    were relied upon by the Mahonys.

5         But if you delve into this issue, the circumstance

6    is a little bit more.  Ask yourself the question, well why

7    didn't they get an inspection?  Because Mr. Rodriguez, a

8    certified residential contractor told them that there was

9    nothing wrong with the house.  Even Rick Edrem who is a GC,

10   a general contractor and a home inspector testified that if

11   you ask the seller if there's been a repair, the buyer

12   generally accepts that.  So again, the concept is, you get

13   to rely on false statements.  However, you don't get to

14   avoid responsibility for making those false statements, and

15   that is precisely what you're being asked to do by the

16   defense in this case.

17        And notice, at no point and time, did the court

18   instruct you that it is an element of law that the Mahonys

19   need to get an inspection for this home.  This jury

20   instruction negates that, and there was no instruction

21   telling you that they have to do so.

22        So as you can see, ladies and gentlemen of the

23   jury, the Mahonys relied upon a false statement, and you

24   even heard both of the Mahonys telling you that they

25   accepted Mr. Rodriguez on his word, that there was nothing

1    wrong with the home.  He repeatedly, Mr. Mahony testified

2    that Mr. Rodriguez repeatedly told him, and did a good job

3    at convincing him, they knew the home inside and out, and he

4    was a certified residential contractor, and if the house had

5    any issue, he would know about them, and Mrs. Mahony told

6    you that she was really sure by the same set of

7    circumstances and the same facts.

8          Please avoid the argument by using your reason and

9    common sense that they should have gotten a home inspection

10    by somebody who's less qualified than Mr. Rodriguez.  There

11    was no reason for the Mahonys not to rely upon or believe

12    the statements that were being made to them.

13          The next issue in your consideration is the issue

14    of damages.  And I want to talk about this for a second

15    because -- let's start with the first floor.  Mr. Mahony sat

16    up there on the jury stand the first day of trial and marked

17    out the areas of the house.  Every single one of the shaded

18    areas had damage to them.  What the defense would like you

19    to believe is to compartmentalize each individual areas,

20    they keep talking about the laundry room, they keep talking

21    about a bathroom.  What they have refused to acknowledge is

22    that the damage from the exterior of the home intruded into

23    the interior of the home.  Mr. Karten told you that from a

24    construction standpoint that that's exactly what happens

25    when water wicks away.  Mr. Edrem told you the same thing.

1    So remember the floor plan when you go back into

2  the jury room you have a copy of the floor plan that's in

3  evidence, keep in mind all of this was damaged, all of this,

4  and how is it possible from a standpoint from a certified

5  residential contractor did not notice this damage.  It's

6  impossible.

7    Let's take a look at the ground floor.  All of this

8  damage in the garage area is right below Baby Owen's room,

9  right coming from Baby Owen's deck.  Keep in mind that

10  Mr. Rodriguez told Mr. Mahony that it was a small deck leak,

11  but denied that on the stand.  But look at this, it's all

12  consistent with the deck, the substructure that I showed you

13  a little while ago in the photograph of the garage ceiling.

14  That's what this is, this is the damage, the water damage,

15  the extent of damage coming from the leak in the balcony.

16  Look how far it went into it, if the balcony is over here,

17  and the garage is over here look at how extensive that

18  damage is.  Look at the damage from underneath that deck,

19  it's what we call the catwalk.  That's the one that Larry

20  Smith's foot fell through.  Does that look like damage that

21  occurred in a day or a week or a month, it was so bad that

22  his foot fell through there.  What would have happened if

23  one of the children were on that deck?  Look at how bad it

24  is.

25    Now, at no point during this trial, did you hear

1   any evidence of testimony presented by the defense about the

2   nature and extent of the construction damage.  They never

3   put on a single piece of evidence to say, it didn't occur.

4   The water didn't intrude into the home.  The water didn't

5   intrude into other places.  The only testimony and evidence

6   was from our case, the plaintiffs' case that this was the

7   case.  But you recall that it was Mr. Rodriguez's that said,

8   yeah, that damage is extensive, that, he, as a residential

9   contractor didn't refute, did not say that the damages that

10  we are contending did not occur.  The only evidence that you

11  have to rely on as it relates to damages, is the evidence

12  that's presented by the plaintiffs.

13          You're going to get to take back with you to the

14  jury room approximately 70 different photos that we have

15  submitted into evidence in this case, 70 of them, or roughly

16  70 of them, damage, mold, constructions materials rotted,

17  degraded in need of replacement, dangerous, the photographs,

18  unlike people, don't lie.  And every photograph is worth a

19  thousand words.  Members of the jury, there's about 70,000

20  words here that describe the extent of damage suffered by

21  the Mahonys in this home.

22          And let's just for clarity, let's just take a quick

23  look at some of the home damage again.  We just talked about

24  this picture, Mr. Smith's foot went through that hole.  That

25  is a deck, there's a balcony, damage is not just a small

1    area, the damage is throughout.  It is black.  There's

2    actually wood falling off of it, chipping off of it.  It's

3    degraded from top to bottom.  Baby Owen's room, black,

4    rusty, degrading, falling apart.  Now let me just touch for

5    a second on this topic.  Because you heard the examination

6    -- the testimony offered by the defense that Mrs. Rodriguez

7    had a high-risk pregnancy.  Well, a new born baby was living

8    in a room that had this and had mold all over the place.  So

9    if we want to talk about people who are exposed, that was

10    what Baby Owen was being subjected to.  And let's all keep

11    in mind that it took the Mahonys months, months, to get this

12    thing repaired.  So that new born baby was living in this

13    horrific environment, and they had to sit there and endure

14    months of repairs, construction work, debris, amongst all of

15    those other things.  So be forewarned that we don't want

16    your sympathy and the jury instructions in reaching your

17    verdict don't let bias, sympathy, prejudice, public opinion,

18    etcetera, cause you to be influenced in your decision.

19        Again, they're offering you a smoke screen.  A

20    high-risk pregnancy is nothing more than a way of saying,

21    feel bad for us, we don't want to be held responsible for

22    the actions we concealed, but you are not allowed by the

23    jury instructions to consider that when you make your

24    verdict.

25        Let's talk about the verdict form for a second.

You're going to be asked two questions.  Did the defendant
misrepresent the condition of the home?  I submit to you
based upon all five elements of which there's overwhelming
evidence, there's nothing that the defendant's going to
refute, the answer is yes.

What is the amount of damages sustained by
plaintiffs as a result of misrepresentation made about the
home?  Well, we know a couple of things.  What we know is
that this is what it's going to cost to repair.  It cost the
Mahonys $82,000, $82,886.60, you heard the testimony from
Barbara Driscoll, there's two ways of doing this.  We know
that the home was purchased for $560,000.  I can't even get
this on a straight line.  Okay.  But if we subtract
$82,888.60 what do we get?  We get $477,111.40.  That's what
the value of the home would have been had the information
been disclosed.  So from an out-of-pocket standpoint, is
that the two measure of damages that you have their damages
are either $82,888.60 or as Ms. Driscoll explains, $400,000
because nobody in their right mind would pay for a home at
full value when there's $83,000 that has to be repaid.  You
get an incentive.  You're always going to pay less for
something that has damages and has to be repaired.  So the
measure of damages that Ms. Driscoll testified to is either
going to be $82,888.60 or $100,000, so something happened
that was rather surprising, and that is you heard the

defense testimony of Mr. Hoyos.  Mr. Hoyos testified the

fact there was those $83,000 in damage, the purchase price

of the real value is $460 was actually $450,000.  He

actually said the value of the property was less than Ms.

Dricsoll did, and there was $82,888.60 in damages.  So what

the defense is saying is that they suffered more damages

than the plaintiff is saying they suffered.

So when you go back to the jury form, the verdict

form, you have an opportunity to either award $82,888.60 or

$100,000 and if you listen to what the defense said,

$110,000.  The Mahonys just want to be compensated for what

their damages are and what their losses are.  They don't

want a single penny more than they're entitled to recover.

If you award them this amount of money, they would

have no problem.  They don't want anything else beyond that

in which they are legally entitled to recover.

Ladies and gentlemen of the jury, please look at

all of the evidence, consider all of the testimony, consider

the summary of damages confirming the $82,888, look at all

69 photos, look at the report from Certified Mold Solution,

look at the report.  I know your time is valuable.  I know

you've spent a lot of time here listening to a lot of

evidence, and a lot of testimony.  Your contributions to our

governmental system and the way things work, I greatly

appreciate it.  When you go back to deliberate we ask

verdict as set forth in our presentation.  Thank you so much

for your time.

THE COURT:  Mr. Soto.

MR. SOTO:  Thank you, Your Honor.

Ladies and gentlemen of the jury, thank you for

service.  I really appreciate you being here and so do the

Mahonys and so do the Rodriguez's and everybody else.

To know or not to know, that's really the

fundamental question you have to decide in this case,

whether or not Mr. Rodriguez told the Mahonys, if he told

the Mahonys end of story, end of decision.  You can sign in

favor of the defense.

The other issue about the jury instruction that you

have to decide is that there's no word, should, there's

nothing in that instruction that said Mr. Rodriguez should

have known there were other issues in the home.  And that is

by definition very important because I will assert based

upon his testimony of the entire case of the plaintiffs,

that's their case, that Mr. Rodriguez should have known

about all of these issues.  But that's not what we're here

to decide today.  And that he doesn't get the fact that

Mr. Rodriguez told them all they knew, that's all that is

required under the law, no more no less.

Let's talk about the house.  You saw a bunch of

really nasty pictures.  Mr. Hoyos even said that is the only

1    house in Avalon park like that.  As you can see it has

2    courtyards, balconies, and towers, and things that aren't in

3    every day houses.

4         Let's talk about the defects one by one as alleged

5    by the plaintiffs.  First you have the office, otherwise

6    known as the baby's room.  That was disclosed in writing.

7    Undisputed.  I know Kelsky had talked about the contract and

8    and how that wasn't disclosed, well, it's also an as is

9    contract.  What the law is if it was disclosed whether it

10   was in writing, or orally, that's just as good.  It just

11   doesn't have to be in writing.  So you have the office,

12   there was a leak and that it was fixed.  You heard

13   Mr. Rodriguez's testimony about.  You heard that there was a

14   roof repair.  They waited a couple of months to make sure it

15   was dry and they had Otero Home Improvement fix that office,

16   and he disclosed it.  He said there was a leak and it was

17   fixed, and that's what he knew.

18        Next, the balconies, we heard a lot of testimony

19   from Mr. Mahony yesterday that kind of revealed more and

20   more as it went on, far more than what you heard on the

21   first day about that water.  And we talked about the

22   balconies.  There was a discussion that there was standing

23   water.  There was a discussion that Mr. Rodriguez would

24   sweep the water off, and that he knew there was standing

25   water.  And that was disclosed orally, but it was disclosed.

The French doors, they talked about those, and Mr.
Rodriguez said that there was some damage on the bottom, and
that he believed it was water damage.  Mr. Mahony also
acknowledged that there was damage disclosed about the
bottom of the French doors, so those as well as the garage,
and that was where they ultimately had to fix the drywall on
top.  That was also part of the walkthrough.  And you heard
Mr. Rodriguez mention that they had fixed it, and we also
heard from Mr. Hoyos, he looked up and saw it and knew that
was part of the original leak, and Mr. Rodriguez said that
there was a leak, and that he believed it was fixed.

Let's talk about the master bedroom and bathroom.
We, the whole time, Mr. Rodriguez and Mrs. Rodriguez, they
didn't know there was a problem.  The laundry room as well,
this is something they didn't know, and so they didn't
disclose.  That is our assertion.  That is our belief.
That's Mr. Rodriguez and Mrs. Rodriguez said the whole time.

I assert that the evidence has shown that Mr.
Rodriguez told the Mahonys what he knew, and that is all
that was required under the law.

So the motivation, the Rodriguez's, it's
undisputed, they weren't going to get a dime from the short
sale, whether it was $460 or whether it was $660, they were
still not going to get anything because the mortgage was
$900,000.

1    Now in the contract that they originally agreed on,

2    there were some items that both parties came to an agreement

3    that those items worth $50,000.  So the Rodriguez's would

4    have walked out with the items that they paid for.  So they

5    would have either walked out with those items that were

6    worth $50,000 or they would have taken Mr. and Mrs. Mahony's

7    offer of $50,000.  They also told them that that wasn't the

8    reason why they were selling the house.  That was something

9    that happened after the fact.  And so despite all the

10   discussion about how that was the main motivation to run

11   away with $50,000 and leave.  They would have gotten the

12   items that were already in the contract, or because the

13   Mahonys decided at some point they wanted to pay $50,000 to

14   keep those items.

15    Let's talk about state of mind.  You have first

16   heard the facts that this was the Rodriguez's dream house.

17   They saved up for ten years.  They put $400,000 down.  They

18   wanted to keep it.  If it wasn't for the recession, we may

19   not even have been there.  They wanted to stay there their

20   whole lives.  And they never believed it was this money pit

21   that was described by Mr. Mahony.  They loved the house.  It

22   went into foreclosure, and they tried to modify it.  Why

23   would they modify a house they thought was a wreck?  And on

24   both sides we have children involved.  And it is unfortunate

25   on both sides.  Why would they allow their children to stay

there if they thought it was going to be overrun with mold
damage, that they thought was overrun with water intrusion
up until the day of the sale.  Is that something that people
would do if they believed that the house had tremendous
defects?  No.  They wouldn't risk their kids' health.  And
they go even further, when you look at the fact that Mrs.
Rodriguez was in a high-risk pregnancy the whole time, and
she was bedridden and staying in the master bedroom and
using the master bathroom.  If a person thinks that there's
mold in the walls, that there's water in the wall stay in a
high-risk pregnancy, and put that baby at risk.  The baby
that was far more important to her than that house and they
stayed until the very end.  Why?  Because they didn't
believe it was the money pit as was described.

        And then after that, after the sale when Mr. and
Mrs. Mahony called, Mr. Rodriguez came back.  Would a person
who concealed that come back to help?  Is that the great
getaway, and even more, they moved next door.  Who does
that?  Who's next door to the people that just concealed
facts from them.  You would go away.  You wouldn't want to
be right next door where you can hear over and over telling
them, oh, you concealed this, you concealed that.  Those are
the actions of the people that felt they told them
everything they knew.  They told them what they knew and
that was it.

1       Now, there was also the handyman, Mr. Larry Smith.

2  And what happened.  He had the testimony of Mr. Rodriguez

3  was supported by the testimony of Mr. Edrem, that's when he

4  came in, there was a fan blowing on an open wall, and why

5  wouldn't you do that?  Mr. Edrem testified and Mr. Rodriguez

6  testified because it could spread mold throughout the house.

7  Mr. Edrem also testified that mold can form in 48 hours, and

8  that he didn't know how much had formed sooner or later, and

9  that goes to causation.  If they can't prove their case,

10  then you're allowed to consider that in whether they were

11  damaged or the amount of those damages, the value.  It was

12  discussed by Mr. Rodriguez that there was a big hole that

13  was knocked out, and that Mr. Smith had even suggested that

14  he was using a hammer and when you talk to Mr. Edrem, he

15  confirmed that there was a hole in the balcony.  He didn't

16  know how long it was there.  He couldn't tell whether there

17  was water intrusion or damage at all.  You can consider it

18  in the facts that is part of this case.

19       Let me suggest -- let me go into further damages.

20  So you have a summary of damages sheet.  There's a couple of

21  big repairs that are related to both mold and to the

22  balconies.

23       Based upon the fact that there was a handyman going

24  around and doing things that they couldn't clean up -- they

25  couldn't show what caused these damages.

1        Let's talk about after the sale happened and what
2   they bear out.  I would assert to you that what really
3   occurred based on the testimony, after the sale they looked
4   around and there were other issues.  Issues that my client
5   didn't know about, that they only found out after they
6   started going through walls and seeing things.
7        They paid $560,000 dollars for this house in cash.
8   And they never had an inspection.  And so buyers remorse
9   formed.  And they wanted to blame someone other than
10  themselves.  The buyers are two sophisticated individuals
11  who owned a company, Mr. Mahony's a COO and they could
12  afford to pay the $560,000 in cash.  They're smart people.
13  They're smart people.  And what do they think?  Well, Mr
14  Rodriguez is a certified building contractor.  He knew
15  that's the way we can use this.  That's the way we can get
16  our house fixed.  We could blame him.  We could say that he
17  knew and hire a lawyer and fancy experts, and with their
18  resources to speculate, but it all goes under this one
19  topic.  That he should have known.  That's the whole case,
20  an extravagant display to show that Mr. Rodriguez should
21  have known, but you heard his testimony, we went through
22  each and every thing, and he told you what he knew.  You
23  heard the testimony about how they acted before and
24  afterwards.  He didn't run away like people who are guilty
25  of concealing do.

1      What I assert based upon the testimony of the

2   experts and based upon the testimony of the Mahonys and the

3   Rodriguez's is that there were issues that no one knew about

4   and that they occurred and people saw them afterwards and

5   they needed someone to blame and so they looked at Mr.

6   Rodriguez as a scapegoat.  But I told you in the beginning

7   the same thing.  The most important fact that needs to be

8   decided is whether Mr. Rodriguez told them what he knew, and

9   that's all that was required under the law, not what he

10  should have known, not whether he could see through walls,

11  or that he's the greatest contractor that ever lived and

12  knows everything.  It's what he knew.  If you find that he

13  didn't know, if you find that he told them everything that

14  he knew, then look at your verdict form, and that first

15  question is going to be whether Mr. Rodriguez misrepresented

16  -- committed fraudulent misrepresentation.  And that if he

17  told them everything that he knew, then you just check no,

18  and you hand the verdict form to the judge, and that's what

19  we're asking you to do in this case.

20      And thank you for your service her today.

21      THE COURT:  Ten minutes.  Rebuttal.

22      MR. KELKSY:  First of all, let's talk about buyers

23  remorse.  Using reason and common sense, do you think that

24  someone would be remorseful that if someone told you that a

25  house that had $83,000 worth of damages made everybody using

1    reason and common sense should come to that same conclusion.

2    Yeah.  Why would somebody want a house that had $83,000 in

3    damage.  Why would somebody want to overpay $83,000 for a

4    damaged house.  You know, an interesting point was made by

5    Mr. Soto that, why would they want to live in a house with

6    mold.  A better question, why did they get out of the house,

7    to get away from the mold.  This was a process that would be

8    known by a certified residential contractor, not should have

9    known, it was known.  And there has been no testimony

10   offered by the defense to establish one way or the other.

11   This is not the type of damage that a certified residential

12   contractor should have known about.  No testimony by the

13   defense was offered to support the contention that a

14   certified residential contractor like Mr. Rodriguez is

15   didn't know there was a problem.

16            MR. SOTO:  Objection.  Mischaracterizes the

17   testimony.

18            THE COURT:  Sustained.

19            MR. KELSKY:  Should the Mahonys be punished for

20   buying a nice house.  Haven't they already been punished

21   enough by the $83,000 that they had to pay.  You heard over

22   and over again, this is a beautiful house.  It was a

23   luxurious house, one-of-a-kind house, they were in

24   foreclosure.  These are unfortunate things that they were in

25   foreclosure.  That's not the Mahony's fault.  They didn't

put them into foreclosure.  They bought a house.  They bought a house where representations were made regarding its quality.  There were misrepresentations.  Thy relied upon that misrepresentation.  They suffered $83,000 in damages, and as a result of those misrepresentations, what you heard were are discretions designed to conceal the facts.  There was rotted construction in this home.

Everything you heard, Larry Smith did this, I have to repeat myself that Rick Edrem got there on that witness stand and told you, Larry Smith did nothing, and the work that he did do outside of the deck and everything was at my direction.  He never said that there was airborne mold. Does this look like airborne mold?  Does this look like airborne mold?  Does that look like airborne mold?  Does that look like airborne mold?  You heard the testimony that this condition had been there for years.  Larry Smith was there for a few days.  Do you think Larry Smith caused all of this damage?  Does that look like damage that occurred in a day?  Common sense and reason, that's what you're allowed to use, common sense and reason, would common sense and reason lead you to believe that a person who made a small hole in the drywall on one area of the house caused all of that damage?

Members of the jury, the defense based its predicate on asking you to buy into the same set of facts

1    that were concealed from the Mahonys.  The overwhelming

2    evidence, the overwhelming competent and substantial

3    evidence shows that the Rodriguez's knew of the problem

4    affecting their home.  They made statements to the Mahonys

5    that they relied upon.

6         I thank you for your time over the past two and a

7    half days going into three days.  I know it's a lot to ask

8    of people to give up their time to serve as jurors.  We ask

9    for your verdict.  We ask you to award damages to the

10   Mahonys.  Thank you for your time.

11        THE COURT:  Members of the jury, you have now heard

12   and received all of the evidence in this case.  I am now

13   going to tell you about the rules of law that you must use

14   in reaching your verdict.

15        You will recall at the beginning of the case, I

16   told you that if at the end of the case I decided that if

17   different laws apply, I would tell you.  These instructions

18   that I'm about to give you are slightly different from what

19   I gave you at the beginning, and it is these rules of law

20   you must follow.

21        When I finish telling you about the rules of law,

22   the attorneys will present their final argument, and you

23   will then retire to decide your verdict.

24        Deputy, will you hand each of the jurors a set of

25   instructions?

1    If you'd like to follow along, I'm starting now on
2    the second page.
3        The claim in this case is as follows:  The
4    plaintiffs' claim that the defendant fraudulently
5    misrepresented the condition of the home they sold to
6    plaintiffs resulting in damages sustained by plaintiffs.
7    The plaintiffs must prove their claim by the greater weight
8    of the evidence.  I will now define some of the terms you
9    will use in deciding the case.
10       Greater weight of the evidence means a more
11   persuasive and convincing force and effects of the entire
12   evidence in the case.
13       The issue for you to decide on issues claimed for
14   fraud and misrepresentations are:  First, whether the
15   defendant made a false statement concerning material facts.
16   Second, whether defendants knew the statements were false.
17   Third, whether the defendants intended that another would
18   rely on the false statements.  Four, whether plaintiffs
19   relied on the false statement, and if so, fifth, whether the
20   false statements was a legal cause of damage to plaintiffs.
21   Plaintiffs may rely on false statements, even though its
22   falsity could have been discovered if plaintiffs had made an
23   investigation.  However, plaintiffs may not rely on false
24   statements if they knew it was false, or its falsity was
25   obvious to them.

If the greater weight of the evidence does not support the plaintiffs claim, your verdict should be for the defendants on this claim.

If you find for the defendants, you will not consider the matter of damages, but if you find for the plaintiffs, you should award plaintiffs an amount of money that the greater weight of the evidence shows will fairly and adequately compensate plaintiffs for the following: One, the difference between the actual value of the property and its value had the alleged facts regarding is true or the difference between the purchase price -- let me restate it I misread it.  The difference between the actual value of the property and it's value had the alleged facts regarding it is true, or the difference between the purchase price and the actual value of the property at the time the fraud was discovered.

In deciding this case, it is your duty as jurors to decide the issues and only those issues that I submit for your determination.

You must come to an agreement about your verdict. Your agreed upon answers to my questions are called your jury verdict.

The evidence in this case consists of the sworn testimony of the witnesses, all exhibits received in evidence and all facts that were admitted or agreed to by

the parties.

In reaching your verdict, you must think about and weigh the testimony and any documents, photographs, or other material that has been received in evidence.

You now can consider any facts that were admitted or agreed to by the lawyers.  Your job is to determine what the facts are.  You may use reason and common sense to reach conclusions.  You may draw reasonable inferences from the evidence, but you should not guess about things that were not covered here, and you must always apply the law as I've explained them to you.

Let me speak briefly about witnesses.  In evaluating the believability of any witness and the weight you will give the testimony of any witness, you may properly consider the demeanor of the witness while testifying, the frankness or lack of frankness of the witness, the intelligence of the witness, any interest the witness may have in the outcome of the case, the names and opportunity the witness had to know the facts about which the witness testified, the ability of the witness to remember about which the witness testified and the reasonableness of the testimony of the witnesses, consider in the light of all of the evidence in the case, and in the light of your own experience and common sense.

You've heard opinion testimony and certain

1   technical subjects from persons referred to as expert

2   witnesses.  You may accept such opinion testimony, reject

3   it, or give it the weight you think it deserves, considering

4   the knowledge, skills, experience, training, or education of

5   the witness, the reasons given by the witness or the opinion

6   expressed and all of the other evidence in this case.

7          That is the law that you must follow in deciding

8   this case.  The attorneys for the parties will now present

9   their final arguments, and when they're through, I will have

10  a final instruction regarding your deliberations.

11         Any objections to the instructions that were read

12  to the jury.  Plaintiff?

13         MR. KELSKY:  No, Your honor.

14         THE COURT:  Defendant?

15         MR. SOTO:  No, Your Honor.

16         THE COURT:  Any additional instructions requested

17  from the plaintiff?

18         MR. KELSKY:  No, Your Honor.

19         THE COURT:  Defendant?

20         MR. SOTO:  No, Your Honor.

21         THE COURT:  At this time you're going to retire to

22  deliberate.  I am going to advise at this point though that

23  prior to the selection of the jury, there is a juror that is

24  sitting here as an alternate.  One of you was selected to

25  serve as an alternate.  And that seat was decided before the

jury was selected, juror number 454, you were selected to

serve as the alternate in this case.  You will not be

participating in the deliberations.  Okay.  I want to thank

you and make sure you understand the importance of an

alternate juror.  Alternates are routinely selected, and

they are particularly important because it happens at times

and more than you may know that a juror on the main panel

becomes ill, has a personal issue that prevents them from

coming to court one of the days at trial, perhaps something

retains them or keeps them late, that is part of the trial.

Because all jurors must hear all of the evidence at the same

time, if that happens, and you didn't have an alternate,

we'd have to retry the entire case.  By having an alternate,

it allows us to continue the case if something happens to

one of the jury members.  So I'm going to ask that you

remain in the courtroom, I'm going to give you further

instructions, and at this time the remaining juror can

retire to begin your deliberations.

It will take us just a few minutes to get the

exhibits together and the verdict form.

I want to thank you for the time that you have

given us.  I watched the jurors closely, and I know you were

paying close attention.  You were here on time and ready to

go.  It's really because of citizens like you, that make our

justice system work.  I want to thank you for the important

1  position and role you played during this trial.  We're going

2  to give you a certificate, and do you have any personal

3  belongings in they jury room?

4     ALTERNATE JUROR:  No.

5     THE COURT:  You have everything with you.  If

6  you'll put your notes in the packets, and those will stay

7  here and your notepads and your notes, just put those in

8  your brown packet.

9     (A recess was taken.)

10     (The proceedings resumed as follows:)

11     THE COURT:  Members of the jury, have you reached

12  a verdict?

13     THE JURY:  Yes.

14     THE COURT:  If the foreperson would please fold

15  the verdict in half and hand it to the court deputy.

16     Madam Clerk, would you please publish the verdict?

17     THE CLERK:  In the Circuit Court of the Ninth

18  Judicial Circuit in and for Orange County, Florida, John

19  Mahony and Diane Mahony, Plaintiff, versus Jamie Rodriguez

20  and Maria Rodriguez, case number 2011-CA-16841, we, the

21  jury, return the following verdict.  Did the defendants

22  misrepresent the condition of the home, yes.  What is the

23  amount of damages sustained by plaintiff as a result of the

24  misrepresentation made about the home?  Dollar amount,

25  $78,128.87, so way we all, the 30th day of July 2014, Alyssa

1    Redberry, foreman or woman.

2            THE COURT:  Are there issues that either party

3    would like to address before the jury is released?

4            MR. KELSKY:  No, Your Honor.

5            MR. SOTO:  No, Your Honor.

6            THE COURT:  Ladies and gentlemen, on behalf of the

7    parties, the lawyers, and the people in the State of

8    Florida, I want to thank you for your time and consideration

9    of this case.  And I also want to advise you of some very

10   special privileges enjoyed by jurors.  No juror can be

11   required to talk about the discussions that occurred in the

12   jury room except by a court order.

13           For many centuries our society has relied upon

14   juries for consideration of difficult cases.  We have

15   recognized for hundreds of years that a jury's

16   deliberations, discussions, and votes should remain their

17   private affair as long as they wish it.  Therefore, the law

18   gives you a unique privilege to not speak about the jury's

19   work.

20           The lawyers and their representatives are not

21   permitted to initiate communications about the trial.

22   However, you may speak to the lawyers or anyone else about

23   the trial.  You also have the right to refuse to speak with

24   anyone.  A request may come from those who are simply

25   curious or from those who might seek to find fault with you.

1   It will be up to you to decide to preserve your privacy as a

2   juror.

3          That's your last official instruction.  I would

4   like to personally thank you all of you on behalf of all of

5   the parties, court personnel, and the other citizens of the

6   State of Florida specifically your service in the Ninth

7   Circuit in Orange County Florida for the service you

8   performed as a citizen in allowing our system of justice to

9   move forward and truly it's only because of citizens like

10  you who were willing to fulfill their jury service.

11         So thank you, with this, your are officially

12  released from your jury service.  I'm going to meet you back

13  in the jury room, and we'll hand you your certificates

14  there.

15         Court is in recess.

16         (Proceedings concluded at 1:33 p.m.)

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

STATE OF FLORIDA

COUNTY OF ORANGE

        I, SUSAN MULLEN, Court Reporter, certify that I was authorized to and did stenographically report the proceedings had at the time and place herein, and that the transcript is a true and complete record of my stenographic notes.

        I FURTHER CERTIFY that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in the action.

        Dated this the 22nd day of October, 2015.

_____

SUSAN MULLEN

## A

**$100,000** 14:24
  15:1,4 47:24
  48:10
**$110,000** 48:11
**$20,000** 16:10,12
**$400,000** 47:18
  52:17
**$450,000** 17:16
  18:14,20 48:3
**$460** 48:3 51:23
**$477,111.40** 47:14
**$50,000** 39:21,23
  40:1 52:3,6,7,11
  52:13
**$560,000** 17:15
  47:12 55:7,12
**$575** 15:8 16:11
  17:22
**$575,000** 14:15,18
  14:24 16:4
**$660** 51:23
**$78,128.87** 65:25
**$80,000** 16:20
**$82,000** 16:14,15
  17:13,22 20:14
  47:10
**$82,886.60** 47:10
**$82,888** 48:19
**$82,888.60** 47:14
  47:18,24 48:5,9
**$83,000** 18:12,17
  18:19 40:6 47:20
  48:2 56:25 57:2
  57:3,21 58:4
**$900,000** 51:25
**a.m** 1:14
**ability** 29:14
  62:20
**able** 15:5 31:14
**absurd** 41:9,17
**accept** 29:21 63:2
**accepted** 39:9
  42:25
**accepts** 42:12
**account** 18:16
**acknowledge** 43:21
**acknowledged** 51:4
**acted** 55:23
**acting** 16:5,16
**action** 7:8,13 8:17
  68:13,14
**actions** 46:22
  53:23
**actual** 5:23 17:21
  18:4 28:3,6,9
  32:1 35:8 61:9
  61:12,15

**add** 15:1
**addition** 5:14 10:5
**additional** 4:8,12
  4:16 10:2 24:7
  24:25 25:3,20,23
  30:10 63:16
**Additionally** 6:8
**address** 21:15
  25:21,24 66:3
**adequately** 28:2
  61:8
**admitted** 28:19,24
  61:25 62:5
**advise** 63:22 66:9
**affair** 66:17
**affect** 8:23 18:1
  32:7
**affirm** 12:23
**affirmative** 6:6
  22:3,10 24:4
**afford** 55:12
**agent** 13:15 16:5,9
  16:13,16,19,20
**agents** 14:11
**ago** 44:13
**agreeable** 23:17
**agreed** 9:17 28:15
  28:19,25 52:1
  61:21,25 62:6
**agreement** 9:4
  28:14 52:2 61:20
**air** 5:22
**airborne** 58:12,13
  58:14,14,15
**allegation** 7:9,20
**alleged** 7:21 28:4
  28:7 50:4 61:10
  61:13
**allegedly** 38:8
**allow** 17:8 52:25
**allowed** 46:22
  54:10 58:19
**allowing** 67:8
**allows** 64:14
**alternate** 63:24,25
  64:2,5,12,13
  65:4
**Alternates** 64:5
**Alyssa** 65:25
**amended** 19:7
**amount** 8:25 17:13
  27:25 47:6 48:14
  54:11 61:6 65:23
  65:24
**answer** 6:12 37:24
  47:5
**answers** 28:15
  61:21
**anybody** 11:17

**anyway** 6:16
**apart** 46:4
**apparent** 35:3
**APPEARANCES** 2:1
**applicable** 6:18,21
**application** 33:23
**apply** 26:11 29:4
  59:17 62:10
**appraised** 15:12
**Appraiser** 15:13
**appraisers** 14:25
  15:10
**appreciate** 48:25
  49:6
**approach** 15:3
  16:14 21:24
**appropriate** 7:24
  8:14,22
**approve** 39:11
**approximately**
  45:14
**area** 13:23 14:20
  15:7,11 36:11
  44:8 46:1 58:22
**areas** 15:19 43:17
  43:18,19
**argue** 8:23
**arguing** 7:20 8:16
**argument** 4:8,16
  6:17 10:17 26:16
  36:18 41:5,12,17
  43:8 59:22
**arguments** 3:5 4:12
  4:23 22:8 30:3
  30:16 37:16 63:9
**asked** 7:1 10:8,13
  18:23 42:15 47:1
**asking** 10:3 56:19
  58:25
**aspects** 10:7
**assert** 49:17 51:18
  55:2 56:1
**assertion** 51:16
**assessed** 15:13
**assessment** 14:25
  15:2
**assessor** 40:21
**assume** 41:10
**assumed** 41:2
**assuming** 20:14
**assumption** 7:5
  8:12,14
**attempt** 39:3
**attention** 64:23
**attorney** 68:11,12
**attorneys** 11:12
  21:16 26:16 30:2
  59:22 63:8
**authorized** 68:6

**Avalon** 13:25 15:9
  50:1
**Avenue** 1:16 2:10
**avoid** 39:13 40:9
  40:12 42:14 43:8
**award** 27:25 48:9
  48:14 59:9 61:6
**aware** 12:12

## B

**b** 24:16
**baby** 44:8,9 46:3,7
  46:10,12 53:11
  53:11
**baby's** 5:14 19:24
  33:1 37:11,15,20
  39:3 50:6
**back** 17:23 21:17
  33:7 35:8 37:23
  40:9 44:1 45:13
  48:8,25 53:16,17
  67:12
**backed** 32:24
**background** 40:25
**bad** 44:21,23 46:21
**balconies** 5:13
  16:2 32:21 34:6
  34:17,24 35:11
  35:17 39:2 50:2
  50:18,22 54:22
**balcony** 5:3,6,10
  34:9,12,13 35:7
  35:14 36:9,10
  44:15,16 45:25
  54:15
**bank** 39:11,16 40:1
  40:9
**Barbara** 2:6 47:11
**bargain** 9:5
**barred** 10:7
**based** 6:22 7:22
  8:25 14:5,11
  15:10 17:3,25
  18:18 31:15
  33:11 47:3 49:17
  54:23 55:3 56:1
  56:2 58:24
**bat** 32:5
**bathroom** 43:21
  51:12 53:9
**bathrooms** 15:5
**bear** 55:2
**beautiful** 15:24
  57:22
**bedridden** 53:8
**bedroom** 15:22
  36:11 51:12 53:8
**beginning** 26:9,13
  56:6 59:15,19

**behalf** 2:3,9 66:6
  67:4
**belief** 51:16
**believability** 29:7
  62:13
**believe** 9:23 19:5
  30:18 34:7 43:11
  43:19 53:14
  58:21
**believed** 51:3,11
  52:20 53:4
**belongings** 65:3
**bench** 4:6
**benefit** 39:21
**best** 22:16
**better** 40:15,23
  57:6
**beyond** 48:15
**bias** 46:17
**big** 16:3 54:12,21
**bit** 21:18 32:23
  36:23 42:6
**black** 33:6 46:1,3
**blame** 36:18 55:9
  55:16 56:5
**block** 41:23
**blowing** 5:22 54:4
**Board** 14:11
**born** 46:7,12
**bottom** 33:9 46:3
  51:2,5
**bought** 15:17 58:1
  58:2
**BRAD** 2:6
**bradkelsky@kel...**
  2:5
**break** 11:12,17
  26:2
**briefly** 29:6 62:12
**bring** 11:13,22
  40:6
**bringing** 10:8
**broke** 5:10
**broomed** 32:22
  34:12
**brown** 65:8
**building** 33:5,17
  33:25 34:3,5,10
  34:14,18 55:14
**builds** 34:4
**built** 40:18
**bunch** 49:24
**burden** 7:7 8:16
  23:24 31:15
**business** 21:9
**buy** 14:22 58:25
**buyer** 17:1,7,8
  20:19 32:4,11
  41:11 42:11

**buyer's** 16:5,5,16
**buyers** 16:11 17:5
  55:8,10 56:22
**buying** 57:20

### C

**C** 4:1
**call** 12:18,19
  36:21 44:19
**called** 28:15 53:16
  61:21
**CALZADA** 2:9
**carry** 31:15
**case** 1:3 4:11,19
  4:20 6:9,19,21
  8:13 12:9,14,15
  12:18 18:23
  21:15 26:6,9,10
  26:22 27:3,6
  28:11,17 29:12
  29:17,25 30:2
  31:3,8,11,24
  36:7 37:21,24
  42:16 45:6,6,7
  45:15 49:9,18,19
  54:9,18 55:19
  56:19 59:12,15
  59:16 60:3,9,12
  61:17,23 62:18
  62:23 63:6,8
  64:2,13,14 65:20
  66:9
**cases** 4:21 66:14
**cash** 15:12 39:10
  39:21,24 40:1
  55:7,12
**castle** 14:22
**catwalk** 44:19
**causation** 7:13,15
  54:9
**cause** 4:14 5:4,12
  5:21,23 6:2,11
  6:22 7:4,8,9,13
  7:19 8:17 27:14
  36:17 46:18
  60:20
**caused** 7:20,21
  36:16 54:25
  58:17,22
**causing** 38:19
**ceiling** 37:2 38:3
  44:13
**centers** 15:19
**centuries** 66:13
**certain** 29:19
  62:25
**certainly** 7:11 8:9
**certificate** 3:10
  65:2 68:1

**certificates** 67:13
**certified** 31:5
  33:15,20 35:25
  40:2,16 41:7,16
  42:8 43:4 44:4
  48:20 55:14 57:8
  57:11,14
**certify** 68:5,10
**chair** 21:19
**changes** 25:16
**changing** 16:4
**charge** 3:4,8 6:25
  7:2 10:21,24
**check** 12:4 56:17
**children** 44:23
  52:24,25
**chipping** 46:2
**circled** 35:10
**Circuit** 1:1,1
  65:17,18 67:7
**circumstance** 42:5
**circumstances** 43:7
**citizen** 67:8
**citizens** 64:24
  67:5,9
**claim** 6:4,5,5,16
  6:18 7:10,12 8:1
  9:12 23:20,24
  26:22,23 27:1,21
  27:22 60:3,4,7
  61:2,3
**claimed** 27:7 60:13
**claims** 31:17
**clarity** 45:22
**class** 33:23
**classes** 33:21
**clean** 54:24
**clearly** 13:4 38:25
**clerk** 12:22,23
  65:16,17
**client** 16:11 55:4
**client/buyer** 16:17
  16:18
**clients** 11:19
**close** 15:19,19,20
  64:23
**closed** 32:6
**closely** 64:22
**closing** 3:5 30:15
  39:22
**code** 34:3,10,14
**codes** 33:17,25
  34:5,18
**come** 14:13 28:14
  36:7 53:17 57:1
  61:20 66:24
**comfortable** 13:3
**coming** 9:2 35:7,10
  35:17 39:20 44:9

**44:15 64:9
**comment** 22:15
**committed** 56:16
**common** 29:1,18
  31:20 35:22
  37:14 41:8 43:9
  56:23 57:1 58:19
  58:20,20 62:7,24
**communications**
  66:21
**community** 15:11,15
**comparables** 15:7
**comparative** 6:4,20
**compartmentalize**
  43:19
**compensate** 28:2
  61:8
**compensated** 48:11
**competent** 6:15
  59:2
**complaint** 19:7
**complete** 68:8
**compliance** 5:25
**comply** 34:4
**conceal** 34:16,23
  35:17,20 37:2,5
  39:4 58:6
**concealed** 31:4
  32:20 36:19
  46:22 53:17,19
  53:22,22 59:1
**concealing** 34:24
  41:12 55:25
**concept** 42:12
**concerning** 27:9
  32:18 60:15
**concluded** 21:14
  67:16
**conclusion** 11:1
  24:6 57:1
**conclusions** 29:2
  31:21 62:8
**condition** 26:24
  34:21 35:20
  40:17 41:4 47:2
  58:16 60:5 65:22
**conference** 3:4
  6:25 10:21,24
**confirm** 12:4
**confirmed** 10:9
  54:15
**confirming** 48:19
**connected** 68:13
**consider** 27:24
  28:24 29:9,16
  46:23 48:18,18
  54:10,17 61:5
  62:5,15,22

**consideration**
43:13 66:8,14
**considering** 29:22
63:3
**consistent** 44:12
**consists** 28:17
61:23
**construction** 31:4
31:6 33:17,18
35:3,12 36:3
38:22 40:25
43:24 45:2 46:14
58:7
**constructions**
45:16
**contending** 45:10
**contention** 57:13
**context** 7:23
**continue** 64:14
**continuing** 12:17
**contract** 31:24
32:1,6,14 50:7,9
52:1,12
**contractor** 31:5
33:12,16,21 36:1
40:3,16,21 41:8
41:16 42:8,10
43:4 44:5 45:9
55:14 56:11 57:8
57:12,14
**contractors** 40:23
**contributed** 36:17
**contributions**
48:23
**convincing** 27:5
31:10 43:3 60:11
**COO** 55:11
**cooperation** 39:11
**copies** 25:7
**copy** 11:6 22:18
25:10 44:2
**correct** 9:25 18:14
18:15,21,24,25
19:8 20:15,16,22
**corroborate** 38:9
**cosmetic** 33:1
34:22 38:5,17
39:1
**cost** 17:9 19:14
47:9,9
**counsel** 31:1 68:11
68:12
**County** 1:1,15 14:5
15:13 65:18 67:7
68:3
**couple** 47:8 50:14
54:20
**course** 15:9
**court** 1:1 4:2,6,16

4:25 6:1,24 8:3
8:12 9:19 10:12
10:19 11:5,8,11
11:16,19,22,25
13:2 18:8 20:9
20:25 21:5,7,11
21:13,21,25 22:5
22:8,10,12,21
23:2,6,9,12,16
23:20,24 24:2,6
24:13,16,19,22
24:25 25:3,6,9
25:12,15,18,20
25:23 26:1,5
30:8,10,13,15,20
30:23,24,25 31:8
42:17 49:13 56:21
57:18 59:11
63:14,16,19,21
64:9 65:5,11,14
65:15,17 66:2,6
66:12 67:5,15
68:5
**Courthouse** 1:15
**courtroom** 11:24
21:20 64:16
**courtyards** 50:2
**cover** 35:20,23
**covered** 29:4 62:10
**CRC** 31:4,5
**credentials** 41:7
**Cross-Examination**
3:3 18:8,9
**curious** 66:25
**current** 17:23 18:4
**cut** 5:15 37:4

---
**D**

**D** 4:1
**damage** 6:3,11,12
7:21 16:23 18:17
19:4,11,17,20,23
20:1,21 27:14
33:8 35:2 36:2
36:14 37:2,4
39:4 43:18,22
44:5,8,14,14,15
44:18,18,20 45:2
45:8,16,20,23,25
46:1 48:2 51:2,3
51:4 53:2 54:17
57:3,11 58:18,18
58:23 60:20
**damaged** 44:3 54:11
57:4
**damages** 5:13 7:9
9:4,6,12,14,15
10:10 17:13,15
17:22,24 18:1,3

18:12,20 20:14
24:2,10 26:25
27:24 34:23
36:19 43:14 45:9
45:11 47:6,17,17
47:22,23 48:5,6
48:12,19 54:11
54:19,20,25
56:25 58:4 59:9
60:6 61:5 65:23
**dangerous** 45:17
**DARREN** 2:12
**data** 14:11
**DATE** 1:13
**dated** 32:6 68:15
**day** 12:2 43:16
44:21 50:3,21
53:3 58:19 65:25
68:15
**days** 33:23 36:5
58:17 59:7,7
64:9
**deal** 17:9
**debris** 46:14
**decide** 7:1 26:17
27:7 28:12 49:9
49:14,21 59:23
60:13 61:18 67:1
**decided** 8:9,9
26:10 52:13 56:8
59:16 63:25
**deciding** 7:4,23
27:3 28:11 30:1
60:9 61:17 63:7
**decision** 10:23
46:18 49:11
**deck** 19:17 44:9,10
44:12,18,23
45:25 58:11
**deducting** 16:19
**deemed** 5:12
**defects** 39:2 40:3
50:4 53:5
**defend** 7:11
**defendant** 2:9 7:18
8:4,15 10:22
26:23 27:9 30:8
30:13 47:1 60:4
60:15 63:14,19
**defendant's** 47:4
**defendants** 1:10
7:3,11 12:17
21:8 22:12 27:10
27:11,22,23
31:18 32:17
33:14 60:16,17
61:3,4 65:21
**defense** 6:22,23
7:3,7,15,18,19

7:25,25 8:15
21:10 22:4 25:4
25:24 38:9 41:1
42:16 43:18 45:1
46:6 48:1,6,10
49:12 57:10,13
58:24
**defenses** 4:17 24:5
36:7
**define** 27:2 60:8
**definition** 34:9
49:17
**degraded** 45:17
46:3
**degrading** 46:4
**deliberate** 48:25
63:22
**deliberations** 30:4
63:10 64:3,18
66:16
**delve** 10:10 42:5
**demeanor** 29:9
62:15
**denial** 8:1
**denied** 22:13 44:11
**deny** 11:2
**depends** 17:3
**depicting** 19:11
**deposition** 9:7,10
9:11,21 10:2
**depositions** 19:9
**deputy** 11:23 12:21
26:18 59:24
65:15
**describe** 45:20
**described** 52:21
53:14
**deserves** 29:22
63:3
**designed** 58:6
**desperate** 17:4
**despite** 5:23 52:9
**determination** 8:24
28:13 61:19
**determine** 5:17
6:10 14:18 28:25
62:6
**determined** 17:12
**determining** 15:16
20:13
**Diane** 1:6 65:19
**difference** 28:3,5
28:6,8 61:9,11
61:12,14
**different** 10:7
15:11 22:8 26:11
26:12 32:13
34:22 45:14
59:17,18

**difficult** 66:14
**dime** 51:22
**Direct** 3:2 13:10
**directed** 22:6,13
**direction** 58:12
**directly** 12:9
**disallowed** 9:21
**disclose** 5:2,6
  32:11 51:16
**disclosed** 10:17
  32:4 38:1 47:16
  50:6,8,9,16,25
  50:25 51:4
**disclosure** 31:25
  32:10
**discovered** 27:16
  28:10 41:20
  60:22 61:16
**discretions** 58:6
**discussed** 8:7 12:9
  54:12
**discussion** 50:22
  50:23 52:10
**discussions** 66:11
  66:16
**display** 55:20
**dispose** 8:21
**dispute** 34:11
**distinguishable**
  4:21
**distinguished** 4:19
**document** 32:1
  38:10
**documents** 28:22
  38:12 62:3
**Doherty** 1:17
**doing** 35:19 47:11
  54:24
**Dollar** 65:24
**dollars** 55:7
**door** 53:18,19,21
**doors** 16:2 33:8
  38:15,16 51:1,5
**DOROUGH** 2:9
**doubt** 36:3
**draw** 29:2 62:8
**dream** 15:22 52:16
**Dricsoll** 48:5
**Driscoll** 47:11,18
  47:23
**dry** 50:15
**drywall** 16:2 36:12
  37:1,4,5,11,12
  37:15 38:5 51:6
  58:22
**dsoto@mylawsol...**
  2:11
**duly** 13:8
**duty** 28:11 61:17**

**E**

**E** 4:1,1
**East** 14:1
**edge** 34:13 37:3
**Edrem** 5:9 6:10
  35:1,5 36:8,15
  37:1 38:2,2,18
  40:20 42:9 43:25
  54:3,5,7,14 58:9
**education** 29:23
  63:4
**effect** 17:23 18:3
  31:11
**effects** 27:5 60:11
**eight** 32:5
**either** 6:17 8:7
  10:25 11:12 12:9
  15:18 16:24
  23:10,12 24:8
  37:25 47:18,23
  48:9 52:5 66:2
**electronically**
  12:10
**element** 7:13,14
  32:17 33:13
  40:14 42:18
**elements** 7:8 8:17
  8:23 32:16 47:3
**Elite** 35:6
**emotional** 15:3
  17:7
**employee** 68:11,12
**endure** 46:13
**enjoyed** 66:10
**entire** 27:5 31:11
  49:18 60:11
  64:13
**entitled** 7:11
  48:13,16
**environment** 46:13
**equally** 6:21
**equals** 31:13
**escorted** 11:24
  21:20
**ESQUIRE** 2:6,6,12
**establish** 7:8 9:11
  38:11 57:10
**established** 14:4
  39:1
**establishes** 15:24
**estate** 13:15,18
**estimated** 9:23
**etcetera** 33:6
  46:18
**evaluating** 29:7
  62:13
**evening** 12:2
**eventually** 39:17**

**everybody** 49:7
  56:25
**evidence** 6:9,15
  7:22 8:6 11:1
  20:4 23:17 24:13
  26:6 27:2,4,6,20
  28:1,17,19,23
  29:3,17,25 31:9
  31:10,11,16,17
  31:25 32:24 33:7
  33:12 35:7,9,12
  38:11,18,25 44:3
  45:1,3,5,10,11
  45:15 47:4 48:18
  48:23 51:18 59:2
  59:3,12 60:8,10
  60:12 61:1,7,23
  61:25 62:4,9,23
  63:6 64:11
**exact** 17:13
**exactly** 6:13 37:13
  43:24
**examination** 3:2,3
  13:10 20:11 46:5
**examined** 13:8
**example** 31:12
**exchange** 39:23
**exhibits** 28:18
  61:24 64:20
**exist** 36:22
**existed** 9:12
**existing** 39:2
**exists** 14:21
**experience** 29:18
  29:23 62:24 63:4
**expert** 5:16 10:15
  29:20 32:23 63:1
**experts** 55:17 56:2
**explain** 14:9
**explained** 29:5
  62:11
**explains** 47:18
**expose** 5:16
**exposed** 46:9
**expressed** 29:25
  35:4 63:6
**extend** 41:4
**extensive** 35:24
  44:17 45:8
**extent** 34:23 44:15
  45:2,20
**exterior** 33:9
  35:15,16,19
  43:22
**extraordinary** 10:4
**extravagant** 55:20**

**F**

**fact** 4:18 5:23**

**9:15 10:6 15:14
  18:12 32:8,15,24
  34:17 35:5 38:14
  39:5 41:18 48:2
  49:21 52:9 53:6
  54:23 56:7
**factor** 16:3
**facts** 27:9 28:4,7
  28:19,24 29:1,13
  32:2,12,18 43:7
  52:16 53:20
  54:18 58:6,25
  60:15 61:10,13
  61:25 62:5,7,19
**failure** 7:12
**fair** 20:17
**fairly** 28:1 61:7
**falling** 46:2,4
**false** 27:9,10,12
  27:13,14,15,17
  27:18 32:15,18
  32:24 33:11,14
  39:6 40:15 41:19
  41:24 42:1,2,13
  42:14,23 60:15
  60:16,18,19,20
  60:21,23,24
**falsity** 27:16,18
  41:20 60:22,24
**family** 15:21
**fan** 5:15,16 54:4
**fancy** 55:17
**far** 44:16 50:20
  53:12
**fault** 6:20 57:25
  66:25
**favor** 49:12
**feel** 46:21
**feet** 14:21
**fell** 44:20,22
**felt** 53:23
**fifth** 27:13 60:19
**filled** 32:9
**final** 8:8,9 14:16
  26:16 30:3,4
  59:22 63:9,10
**financial** 33:24
**financially** 68:13
**find** 5:2,19,22,23
  15:7 22:16 27:23
  27:24 36:13
  56:12,13 61:4,5
  66:25
**fine** 11:18,20
**finish** 11:8 26:15
  59:21
**first** 10:1,13
  12:18 13:8 22:1
  23:9 27:8 32:17**

32:20 43:15,16
50:5,21 52:15
56:14,22 60:14
**five** 32:16 47:3
**fix** 9:14 50:15
51:6
**fixed** 9:3 18:6
37:17 50:12,17
51:8,11 55:16
**fixing** 16:2
**flat** 6:12
**flex/office** 19:24
**flooding** 34:13
**floor** 43:15 44:1,2
44:7
**Florida** 1:1,16 2:4
2:10 13:16 31:7
32:10 33:16,25
34:3,5,10,18
38:23 40:21,22
65:18 66:8 67:6
67:7 68:2
**fold** 65:14
**follow** 26:14,20
30:1 41:25 59:20
60:1 63:7
**followed** 12:5,5,8
**following** 28:2
61:8 65:21
**follows** 13:9 26:4
26:22 60:3 65:10
**fooled** 36:6,18
**foot** 34:8 36:10
44:20,22 45:24
**force** 5:12 27:5
31:11 60:11
**forced** 40:6
**foreclosed** 39:17
**foreclosure** 39:14
39:15,19 52:22
57:24,25 58:1
**foreman** 66:1
**foreperson** 65:14
**forever** 39:16
**forewarned** 46:15
**form** 8:9,22 11:7
25:6,10 32:10
46:25 48:8,9
54:7 56:14,18
64:20
**formed** 14:16 54:8
55:9
**forth** 49:1
**forward** 67:9
**found** 15:8 16:10
55:5
**four** 15:4 27:12
60:18
**fourth** 40:14

**frankness** 29:10,10
62:16,16
**fraud** 27:8 28:9
60:14 61:15
**fraudulent** 6:6,18
6:20 23:21 56:16
**fraudulently** 26:23
60:4
**free** 21:2,7
**French** 16:2 33:8
38:15,16 51:1,5
**front** 6:24
**fulfill** 67:10
**full** 34:23 47:20
**fully** 5:2,20
**fundamental** 49:9
**further** 18:7 20:24
53:6 54:19 64:16
68:10

---

### G

**G** 4:1
**garage** 19:20 32:25
36:23,24 37:9
39:2 44:8,13,17
51:5
**GC** 42:9
**general** 40:21
42:10
**generally** 42:12
**gentlemen** 31:1
42:22 48:17 49:5
66:6
**getaway** 53:18
**getting** 18:19
**give** 7:24 8:17
12:24 17:12
26:12 29:8,22
59:8,18 62:14
63:3 64:16 65:2
**given** 4:10 7:2
8:10 9:16 29:24
63:5 64:22
**gives** 66:18
**giving** 9:8,23
35:18 39:23
**go** 4:2 15:17 17:5
17:8,24 23:2
33:21 39:16 44:1
48:8,25 53:6,20
54:19 64:24
**God** 12:25
**goes** 4:14 24:5
54:9 55:18
**going** 10:19,20
11:1,8 16:11,18
21:16 24:7,9
26:1,7 31:21
35:14 36:5,7

37:6,23 39:16,22
45:13 47:1,4,9
47:21,24 51:22
51:24 53:1 54:23
55:6 56:15 59:7
59:13 63:21,22
64:15,16 65:1
67:12
**golf** 15:9
**good** 4:3,4,5 11:25
39:14 43:2 50:10
**gotten** 5:17 41:5,6
43:9 52:11
**governmental** 48:24
**grant** 7:17
**great** 15:6 53:17
**greater** 23:16 27:1
27:4,20 28:1
31:9,9,16 60:7
60:10 61:1,7
**greatest** 56:11
**greatly** 48:24
**gross** 6:8 33:6
**ground** 4:22 44:7
**guess** 29:3 62:9
**guidance** 8:18
**guilty** 55:24

---

### H

**half** 17:9 59:7
65:15
**halfway** 17:5
**hammer** 54:14
**hand** 12:7,16,21
21:1 26:18 33:20
56:18 59:24
65:15 67:13
**handed** 22:14 23:9
**handing** 25:9
**hands** 12:7,11,11
12:16
**handyman** 5:4,10,21
54:1,23
**Hang** 11:16
**happened** 37:19
44:22 47:24 52:9
54:2 55:1
**happens** 34:15 37:5
43:24 64:6,12,14
**health** 53:5
**hear** 44:25 53:21
64:11
**heard** 4:9 7:16
26:5 29:19 32:5
32:19 33:19 35:1
38:18 40:20
42:24 46:5 47:10
47:25 50:12,13
50:18,20 51:7,9

52:16 55:21,23
57:21 58:5,8,15
59:11 62:25
**held** 46:21
**help** 12:25 53:17
**herring** 36:21
**high-risk** 46:7,20
53:7,11
**hire** 55:17
**holds** 31:6
**hole** 36:9,10 38:3
45:24 54:12,15
58:22
**home** 6:11 9:9
15:22 18:20,24
19:2 20:5 26:24
33:10 35:2,15,16
36:2,5,14,17
37:18 38:19 39:9
39:9,22 40:4,5,9
40:11,13,17,22
40:23,24 41:4,5
41:6 42:10,19
43:1,3,9,22,23
45:4,21,23 47:2
47:8,12,15,19
49:16 50:15 58:7
59:4 60:5 65:22
65:24
**homes** 15:17 34:4,4
**honest** 20:19 40:2
**honey** 15:21
**honor** 4:13,15,18
5:1 6:19 8:2,11
8:20 9:16 10:1
11:6,21 12:19
13:6 20:8,10,24
21:4,6,10,12
22:6,9,11,18
23:7,8,11,13,19
23:23 24:1,3,12
24:14,15,18,21
24:24 25:2,5,11
25:14,17,19,22
25:25 30:7,9,12
30:14 49:4 63:13
63:15,18,20 66:4
66:5
**Honorable** 1:17
**hope** 12:1
**horrific** 46:13
**hours** 54:7
**house** 9:24 13:23
14:18,19,20,22
15:5,10,14,24
16:2,6 17:8,10
17:25 18:1,12
20:21,22 33:19
34:7 39:13,17

40:11,12 41:16
42:9 43:4,17
49:24 50:1 52:8
52:16,21,23 53:4
53:12 54:6 55:7
55:16 56:25 57:2
57:4,5,6,20,22
57:23,23 58:1,2
58:22
**houses** 50:3
**Hoyos** 3:2 9:3,7
10:7 12:20 13:7
13:13,14 20:13
48:1,1 49:25
51:9
**hundreds** 66:15
**husband** 1:6,9

**I**
**ill** 64:8
**importance** 64:4
**important** 49:17
53:12 56:7 64:6
64:25
**impossible** 35:25
44:6
**Improvement** 50:15
**incentive** 47:21
**inch** 34:8
**inclined** 7:17
**include** 6:19 7:9
**including** 7:13
**incompetent** 9:18
**incorporated** 8:1
**independent** 6:16
**INDEX** 3:1
**indicated** 4:6
**indirectly** 12:10
**individual** 43:19
**individuals** 55:10
**inferences** 29:2
62:8
**influenced** 46:18
**information** 9:15
19:6,15 36:7
47:15
**initiate** 66:21
**input** 14:11
**inside** 40:17 43:3
**inspection** 4:20
16:7,7,10 17:25
18:18,19 41:5,6
41:22 42:7,19
43:9 55:8
**inspections** 4:20
40:24
**inspector** 40:22
41:15 42:10
**inspectors** 40:24

**instance** 5:4
**instances** 10:9
**instruct** 42:18
**instructed** 31:8
**instruction** 7:6,15
7:17,24 12:6
22:16 30:4 32:23
41:18,25 42:20
42:20 49:13,15
63:10 67:3
**instructions** 8:8
9:3,17 10:21
11:15 12:8,13
21:23 22:14,20
23:4 24:8 25:1,3
26:11,19 30:5,10
31:19 41:19
46:16,23 59:17
59:25 63:11,16
64:17
**insulation** 33:3
**intelligence** 29:11
62:17
**intended** 27:11
39:6 60:17
**intending** 8:5
**intent** 40:8,11
**interest** 29:11
62:17
**interested** 68:13
**interesting** 37:6
57:4
**interior** 43:23
**intervening** 4:14
5:21 6:2,22 7:4
7:19
**intimate** 34:2
**intrude** 45:4,5
**intruded** 43:22
**intruding** 38:19
**intrusion** 16:3
53:2 54:17
**investigation**
27:17 36:15
41:21 60:23
**involved** 52:24
**irrelevant** 9:18
**Island** 2:4
**issue** 7:1,14 8:8
9:1,16,22 11:3,4
27:7 34:23 38:24
39:5 42:5 43:5
43:13,13 49:13
60:13 64:8
**issued** 31:7 39:18
**issues** 4:8 11:5
21:15 23:20
25:20,23 27:7
28:12,12 31:23

34:25 49:16,20
55:4,4 56:3
60:13 61:18,18
66:2
**items** 16:1 19:14
32:20 52:2,3,4,5
52:12,14
**IV** 1:4

**J**
**Jamie** 1:9 33:15
40:16 65:19
**job** 28:25 39:14
43:2 62:6
**John** 1:6 65:18
**Johnson** 4:19 5:25
**Jose** 3:2 12:19
13:7,13
**judge** 31:19 56:18
**judgement** 39:18
**judging** 31:9
**judgment** 39:14,15
39:19
**Judicial** 1:1 65:18
**July** 1:13 9:9,24
18:24 65:25
**juries** 66:14
**juror** 63:23 64:1,5
64:7,17 65:4
66:10 67:2
**jurors** 4:7 26:18
28:11 59:8,24
61:17 64:11,22
66:10
**jury** 1:4 3:4,8 5:1
5:12,19,22 7:6
7:14,17,24 8:8
8:10,24 9:3,16
10:21 11:13,14
11:22,24 14:9
20:25 21:13,17
21:20,22 22:14
22:19 23:4 26:5
28:16 30:6 31:2
31:2,12 34:15
37:21 38:5 39:20
41:18,19 42:19
42:23 43:16 44:2
45:14,19 46:16
46:23 48:8,17
49:5,13 58:24
59:11 61:22
63:12,23 64:1,15
65:3,11,13,21
66:3,12 67:10,12
67:13
**jury's** 66:15,18
**justice** 64:25 67:8

**K**
**Karten** 33:20 35:24
36:25 38:25
43:23
**keep** 43:20,20 44:3
44:9 46:10 52:14
52:18
**keeping** 39:14
**keeps** 64:10
**KELKSY** 56:22
**Kelsky** 2:3,6 3:3,6
3:7 4:4 6:1,2
8:19 9:1,20 10:3
10:6,11,13 11:3
11:10,14,18
18:10 20:7 21:12
21:22,24 22:3,11
22:15,19 23:5,15
23:19,23 24:1,12
24:15,18,21,24
24:25 25:2,8,9
25:15,17,22 30:7
30:12,17,18,21
30:24 31:1 50:7
57:19 63:13,18
66:4
**Kelsky's** 8:22
**Kevin** 33:20
**kids** 53:5
**kind** 12:6 15:18
50:19
**knew** 5:2,20,24
9:13 27:10,18
32:7 33:14 36:4
40:3,17 43:3
49:22 50:17,24
51:9,19 53:24,24
55:14,17,22 56:3
56:8,12,14,17
59:3 60:16,24
**knocked** 54:13
**know** 5:7,11 6:13
8:5 15:17 16:7
16:11 17:25 19:1
19:4,17,19,20,22
19:23,25 20:1,3
20:4,6 22:15
29:13 33:10,11
33:14 36:1 37:16
39:4 43:5 47:8,8
47:11 48:21,21
49:8,8 50:7
51:14,15 54:8,16
55:5 56:13 57:4
57:15 59:7 62:19
64:7,22
**knowledge** 29:23
33:16 34:3 63:4

**known** 32:11 38:21
  49:16,19 50:6
  55:19,21 56:10
  57:8,9,9,12
**knows** 24:3 32:2
  56:12

**L**

**lack** 29:10 62:16
**ladies** 31:1 42:22
  48:17 49:5 66:6
**Larry** 6:11,13 36:6
  36:9,16,21 44:19
  54:1 58:8,10,16
  58:17
**lastly** 12:12
**late** 64:10
**laundry** 43:20
  51:14
**law** 2:3 26:7,13,15
  29:4 30:1 32:11
  41:25 42:18
  49:23 50:9 51:20
  56:9 59:13,19,21
  62:10 63:7 66:17
**laws** 26:11 59:17
**lawyer** 55:17
**lawyers** 28:25 62:6
  66:7,20,22
**lead** 58:21
**leak** 5:3,20 33:1,2
  37:8,9,25 38:1
  44:10,15 50:12
  50:16 51:10,11
**leave** 21:19 52:11
**led** 36:14
**legal** 5:4,12,23
  27:14 41:21
  60:20
**legally** 9:18 48:16
**lenders** 15:10
**let's** 4:2 16:14,15
  17:8,11 23:2
  36:23 38:7 40:2
  40:14 43:15 44:7
  45:22,22 46:10
  46:25 49:24 50:4
  51:12 52:15 55:1
  56:22
**liability** 41:23
**license** 31:6
**licensed** 13:16
  38:22 40:21,22
**licenses** 33:21
**lie** 45:18
**light** 29:16,17
  62:22,23
**limit** 30:17
**limited** 10:1

**line** 9:21 39:20
  47:13
**listen** 48:10
**listening** 48:22
**listing** 16:12,19
  16:20
**listings** 14:12
**literally** 41:1
**little** 21:18 32:23
  36:23 42:6 44:13
**livable** 40:7
**live** 34:19 57:5
**lived** 37:17 40:19
  56:11
**lives** 52:20
**living** 46:7,12
**LLINAS** 2:6
**LLP** 2:9
**local** 14:10,11
**location** 15:20,20
**long** 5:11 9:10
  30:22 54:16
  66:17
**look** 14:7,20 16:9
  16:18 33:8 35:9
  37:3,4,14 38:12
  44:7,11,16,17,18
  44:20,23 45:23
  48:17,19,20,21
  53:6 56:14 58:13
  58:13,14,15,18
**looked** 37:12 38:2
  51:9 55:3 56:5
**looking** 15:20 39:5
**looks** 14:21
**losses** 48:12
**lot** 48:22,22,23
  50:18 59:7
**loudly** 13:3
**love** 14:23 17:10
**loved** 52:21
**lovely** 15:14
**loyal** 16:16
**luxurious** 57:23
**lying** 41:2,11

**M**

**Madam** 65:16
**Magnolia** 2:10
**Mahony** 1:6,6 43:1
  43:5,15 44:10
  50:19 51:3 52:21
  53:16 65:19,19
**Mahony's** 52:6
  55:11 57:25
**Mahonys** 19:1,4
  20:20 32:16,20
  34:2,16 35:15
  39:6,10,23,25

**40:15 41:2 42:4
  42:18,23,24
  43:11 45:21
  46:11 47:10
  48:11 49:7,10,11
  51:19 52:13 56:2
  57:19 59:1,4,10
**main** 23:24 52:10
  64:7
**making** 8:3 41:24
  42:14
**Maria** 1:9 65:20
**marked** 43:16
**market** 15:24 20:17
**master** 51:12 53:8
  53:9
**material** 8:25 27:9
  28:23 32:7,15,18
  32:24 60:15 62:4
**materially** 32:2,12
**materials** 33:6
  45:16
**matter** 12:24 27:24
  34:20,24 61:5
**matters** 7:22 8:23
  25:21,23 34:20
  34:25
**mean** 10:7 33:6
**meaning** 12:10
**means** 27:4 31:10
  60:10
**measure** 9:4,5
  47:17,23
**measurements** 34:7
**Mediterranean**
  14:20
**meet** 7:12 34:13
  67:12
**members** 20:25
  21:13 26:5 34:15
  37:21 38:4 39:20
  45:19 58:24
  59:11 64:15
  65:11
**memory** 22:17
**mention** 51:8
**met** 8:16 9:4
**metal** 33:4
**method** 12:7
**Meyer** 4:19 6:21
  8:13
**microphone** 13:4
**mind** 44:3,9 46:11
  47:19 52:15
**minimal** 33:8
**minute** 22:21
**minutes** 30:19,20
  56:21 64:19
**mischaracteriz...**

**6:8
**Mischaracterizes**
  57:16
**misread** 28:6 61:12
**misrepresent** 47:2
  65:22
**misrepresentation**
  6:7,18,20 23:21
  41:3 47:7 56:16
  58:4 65:24
**misrepresentat...**
  6:6 27:8 58:3,5
  60:14
**misrepresented**
  26:24 56:15 60:5
**MLS** 14:8,9
**modification** 25:15
**modified** 24:2,10
**modify** 52:22,23
**mold** 5:16,17 19:5
  19:6 35:6 40:21
  40:22 45:16 46:8
  48:20 53:1,10
  54:6,7,21 57:6,7
  58:12,13,14,14
  58:15
**moment** 12:1
**money** 19:1 27:25
  40:10 48:14
  52:20 53:14 61:6
**month** 44:21
**months** 32:5 36:6
  46:11,11,14
  50:14
**morning** 4:3,4,5
  10:24 11:25
**mortgage** 37:19
  39:7 51:24
**motion** 11:2 22:7
**motions** 22:1,4,5
  22:12
**motivation** 51:21
  52:10
**move** 67:9
**moved** 33:18 53:18
**Mullen** 1:22 68:5
  68:18
**multiple** 39:8

**N**

**N** 4:1
**name** 13:12
**names** 29:12 62:18
**nasty** 49:25
**nature** 39:4 45:2
**need** 11:4,12,17
  16:8,10 21:15
  30:17 31:14
  36:13 42:19

45:17
**needed** 16:1 32:21
  32:25 33:10 34:6
  35:19 39:11,13
  40:11,12,12 56:5
**needs** 34:12 56:7
**negates** 42:20
**negligence** 6:4,5,6
  6:17,22
**negotiated** 17:20
**negotiation** 16:22
  17:6
**neighborhood** 14:23
  15:6
**never** 5:7 34:9
  45:2 52:20 55:8
  58:12
**new** 11:7 22:8,10
  38:1 46:7,12
**nice** 57:20
**night** 4:9 11:9
**night's** 10:24
**Ninth** 1:1 65:17
  67:6
**North** 1:16 2:10
**notepads** 21:19
  65:7
**notes** 65:6,7 68:9
**notice** 42:17 44:15
**number** 64:1 65:20
**numerous** 32:20
  42:2,3

──────────

**O**

**O** 4:1
**objection** 23:10,12
  23:14,15,18,19
  23:22,23,25 24:1
  24:11,12,14,15
  24:17,18,20,21
  24:23,24 25:1
  57:16
**objections** 30:5
  63:11
**obligated** 32:11
**obligations** 32:14
**observable** 32:3,13
**obvious** 27:19
  60:25
**occupation** 13:14
**occur** 45:3,10
**occurred** 37:9
  44:21 55:3 56:4
  58:18 66:11
**October** 68:15
**offer** 16:12,13,19
  38:13 39:9 52:7
**offered** 38:9 46:6
  57:10,13

**offering** 46:19
**offers** 39:8
**office** 5:3 50:5,11
  50:15
**office/the** 5:14
**official** 67:3
**officially** 67:11
**oh** 16:6 53:22
**okay** 4:16,25 7:1
  11:22 17:4 22:21
  47:13 64:3
**once** 34:3
**one-of-a-kind**
  57:23
**open** 5:11,15 54:4
**opening** 5:21 31:2
  39:24
**opinion** 9:8 10:14
  10:14,16 14:13
  14:16 16:23
  18:13,23 29:19
  29:21,24 46:17
  62:25 63:2,5
**opinions** 14:4
**opportunity** 4:10
  10:23 25:12
  29:12 48:9 62:18
**orally** 50:10,25
**Orange** 1:1,15,16
  14:5 15:13 65:18
  67:7 68:3
**order** 14:3 16:7
  21:8 39:11,13
  66:12
**orders** 12:5
**original** 51:10
**originally** 5:20
  52:1
**Orlando** 1:16 2:10
  14:1,10
**Otero** 50:15
**out-of-pocket** 9:5
  47:16
**outcome** 29:12
  62:18
**outside** 15:25
  21:15 58:11
**overheard** 12:14
**overpay** 57:3
**overrun** 5:11 53:1
  53:2
**overwhelming** 47:3
  59:1,2
**Owen** 46:10
**Owen's** 44:8,9 46:3
**owned** 55:11
**owns** 41:16

──────────

**P**

**P** 4:1
**P.A** 2:3
**p.m** 67:16
**packet** 23:9 24:9
  65:8
**packets** 65:6
**page** 26:21 60:2
**paid** 19:1 52:4
  55:7
**paint** 32:25 35:15
  35:19,22,23
**painting** 35:16
**panel** 64:7
**park** 13:25 15:9
  50:1
**part** 5:15,17 6:25
  7:10 17:1,1
  20:20 35:4 51:7
  51:10 54:18
  64:10
**participated** 13:18
  16:25
**participating** 64:3
**particular** 14:20
**particularly** 64:6
**parties** 10:25
  17:20 21:14 24:7
  26:2 28:20 30:2
  52:2 62:1 63:8
  66:7 67:5 68:11
  68:12
**party** 8:7 23:10,13
  66:2
**Patricia** 1:17
**pay** 14:24 15:4,12
  15:23 16:11,18
  17:1,1 20:18,20
  40:6,13 47:19,21
  52:13 55:12
  57:21
**paying** 37:19 39:7
  64:23
**payment** 39:10
**pennies** 31:13,14
**penny** 31:14 48:13
**people** 15:4,17
  20:5,18 38:7
  45:18 46:9 53:3
  53:19,23 55:12
  55:13,24 56:4
  59:8 66:7
**people's** 34:19
**percent** 13:22 36:3
**perfect** 34:15,19
  34:21
**performed** 67:8
**period** 34:1 36:5
  37:18 40:19
**permitted** 66:21

**person** 12:10 53:9
  53:16 58:21
**personal** 64:8 65:2
**personally** 67:4
**personnel** 67:5
**persons** 29:20 63:1
**persuasive** 27:5
  31:10 60:11
**photograph** 19:11
  37:3 44:13 45:18
**photographs** 28:22
  45:17 62:3
**photos** 33:7 45:14
  48:20
**picture** 45:24
**pictures** 33:5
  49:25
**piece** 45:3
**Pine** 2:4
**pit** 40:10 52:20
  53:14
**place** 1:15 46:8
  68:7
**places** 45:5
**plaintiff** 1:7 2:3
  4:11 8:5,16
  10:22 22:2 25:1
  25:21 30:6,11
  31:13,16 41:19
  48:7 63:12,17
  65:19,23
**plaintiffs** 7:7,12
  7:21 23:20 26:23
  26:25,25 27:1,12
  27:14,15,16,17
  27:21,25,25 28:2
  41:21 42:1 45:6
  45:12 47:7 49:18
  50:5 60:4,6,6,7
  60:18,20,21,22
  60:23 61:2,6,6,8
**plan** 44:1,2
**Plantation** 2:4
**play** 15:16 16:4
  17:6
**played** 65:1
**please** 11:25 12:7
  12:11,15 13:3,12
  14:9 30:24 43:8
  48:17 65:14,16
**point** 7:2,16 8:5
  10:5 20:14,23
  42:17 44:25
  52:13 57:4 63:22
**pool** 15:18
**portions** 33:23
**position** 25:18
  32:25 41:9 65:1
**possible** 44:4

precisely 42:15
predicate 58:25
pregnancy 46:7,20
53:7,11
prejudice 8:4,7
10:25 46:17
presence 12:15
21:16
present 4:7 8:6
9:14 26:16 30:2
59:22 63:8
presentation 49:1
presented 4:11 6:9
7:7,22 45:1,12
preserve 67:1
prevent 7:19 8:15
prevents 64:8
price 15:10 28:5,8
48:2 61:11,14
primarily 36:9
prior 33:17 63:23
privacy 67:1
private 66:17
privilege 66:18
privileges 66:10
probably 8:21
probative 4:23
problem 35:23
36:17 37:17,20
41:14,14 48:15
51:14 57:15 59:3
problems 36:4,13
proceed 30:15
proceedings 26:4
65:10 67:16 68:7
process 57:7
professional 33:16
35:4,13 36:4
38:22
proof 23:24 31:15
properly 29:8 34:9
62:14
property 13:24
14:5,5,25 15:1
15:13 18:13
20:17 28:3,7,9
31:25 32:3,8,9
32:12 34:2 48:4
61:9,13,15
proposed 25:9
prove 27:1 31:17
32:17 33:13 54:9
60:7
provide 18:23
provided 6:19
public 46:17
publish 65:16
punished 57:19,20
purchase 28:5,8

48:2 61:11,14
purchased 47:12
purpose 11:1
put 5:15 10:15
14:10 36:10 37:5
37:15 45:3 52:17
53:11 58:1 65:6
65:7
putting 37:1 38:5

### Q

qualified 41:15
43:10
quality 58:3
question 9:22
17:18 21:1 42:6
49:9 56:15 57:6
questions 10:3
18:7 20:7,24
21:2 28:15 47:1
61:21
quick 11:12,17
36:25 37:7,10,10
37:11,13 45:22
quickly 10:12
21:17
quote 31:24

### R

R 4:1
Radar 14:5
raise 11:3,4 12:7
12:11,15,21 21:1
raised 12:8,12,16
raising 7:3 9:16
range 17:12
reach 17:3 29:1
31:21 62:7
reached 65:11
reaching 26:8
28:21 46:16
59:14 62:2
read 9:21 30:5
31:20 63:11
readily 32:3,13
35:3
ready 13:5 64:23
real 13:15,18
18:13,20 31:25
32:3,9 48:3
reality 10:18
34:18 36:12
39:22
really 6:3 14:23
41:6 43:6 49:6,8
49:25 55:2 64:24
Realtors 14:11
reason 29:1 31:20
35:22 37:14 41:8

43:8,11 52:8
56:23 57:1 58:19
58:20,21 62:7
reasonable 29:2
62:8
reasonableness
29:15 62:21
reasons 29:24 63:5
rebuttal 8:6 10:23
21:11 30:19
56:21
recall 26:9 45:7
59:15
received 26:6
28:18,23 39:8,21
59:12 61:24 62:4
recess 26:3 65:9
67:15
recession 52:18
recognized 66:15
record 4:2 13:12
68:8
recover 48:13,16
red 36:21
Redberry 66:1
redid 22:16
Redirect 3:3 20:9
20:11
referred 29:20
63:1
refuse 66:23
refused 43:21
refute 45:9 47:5
regarding 4:17 7:6
7:15 9:2 13:23
14:13 16:22 28:4
28:7 30:4 58:2
61:10,13 63:10
reject 29:21 63:2
related 19:5,6
54:21
relates 45:11
relative 9:14
68:10,12
released 21:5 66:3
67:12
relevant 9:2
relied 27:13 40:15
41:9 42:4,23
58:3 59:5 60:19
66:13
rely 27:12,15,17
34:19 39:6 40:15
41:19 42:1,13
43:11 45:11
60:18,21,23
remain 64:16 66:16
remaining 64:17
remediator 40:22

remember 29:14
31:12 35:14 37:7
38:1 39:7,20
44:1 62:20
remorse 55:8 56:23
remorseful 56:24
removed 36:12
rendering 42:1
renew 22:6
renewed 22:12
repaid 40:1 47:20
repainted 33:10
repair 19:1,14,14
33:1 36:25 37:7
37:10,10,11,13
37:22 38:6,10,11
38:12,14 40:10
42:11 47:9 50:14
repaired 18:3 33:2
33:3,3,4,4 37:20
37:25 46:12
47:22
repairing 20:5
repairs 16:8,10,15
16:18 17:2 18:6
38:8 40:13 46:14
54:21
repeat 17:18 58:9
repeated 32:8
repeatedly 43:1,2
replaced 16:1
38:20
replacement 45:17
report 18:18,19
35:6,8 48:20,21
68:6
Reported 1:21
Reporter 3:10 68:1
68:5
representation 6:5
35:18
representations
34:20,20 39:1
41:11 58:2
representatives
66:20
representing 16:9
request 10:4 66:24
requested 6:10
30:10 63:16
requesting 24:8
25:1,4
required 36:24
40:10 41:25
49:23 51:20 56:9
66:11
requirement 41:22
requiring 38:20
research 12:6

reserve 30:19
residential 13:21
 31:5 32:14 33:15
 33:21 35:25 40:3
 40:16 41:8,16
 42:8 43:4 44:5
 45:8 57:8,11,14
resources 55:18
respond 10:11
responses 22:10
responsibility
 33:24 41:13,24
 42:14
responsible 46:21
rest 11:3 17:9
 23:8
restate 10:20 28:5
 61:11
rested 8:4 10:22
 21:14
restful 12:2
rests 21:10
result 47:7 58:5
 65:23
resulting 26:25
 60:6
resumed 26:4 65:10
retains 64:10
retire 26:17 59:23
 63:21 64:18
retry 64:13
return 65:21
revealed 50:19
review 4:10 10:25
 14:3,3 19:9
 25:12
revised 22:14
revisit 8:8
Rick 35:1 38:2,2
 38:18 40:20 42:9
 58:9
right 4:2 6:1,24
 10:6,7 11:5,16
 12:17,21 18:17
 19:16 21:2,13
 22:1,23 23:9
 25:20 26:1 30:15
 30:23 32:4 37:14
 44:8,9 47:19
 53:21 66:23
risk 7:5 8:12,15
 53:5,11
road 2:4 15:20
Rodriguez 1:9,9
 5:2,9,19,24 6:13
 31:6,18 33:15,19
 34:1,14 35:13
 36:1,4,24 38:21
 38:25 40:2,16,18

42:7,25 43:2,10
 44:10 46:6 49:10
 49:15,19,22
 50:23 51:2,8,10
 51:13,13,17,17
 51:19 53:7,16
 54:2,5,12 55:14
 55:20 56:6,8,15
 57:14 65:19,20
Rodriguez's 32:6
 32:19 36:20 37:8
 41:2 45:7 49:7
 50:13 51:21 52:3
 52:16 56:3 59:3
role 15:16 17:6
 65:1
roof 15:18 20:1
 37:9 38:8 50:14
room 5:14 19:24
 21:17 33:1 37:11
 37:15,20 39:3
 43:20 44:2,8
 45:14 46:3,8
 50:6 51:14 65:3
 66:12 67:13
rooms 15:4
rotted 31:4 33:5
 38:19 45:16 58:7
roughly 45:15
routinely 64:5
rule 9:5
rules 26:7,13,15
 59:13,19,21
ruling 8:13,21
run 52:10 55:24
rusty 46:4

──────────────
        S
──────────────

S 4:1
sale 9:13 16:25
 17:7,11,14 18:12
 18:16 39:12
 51:23 53:3,15
 55:1,3
sales 14:12
sat 36:8 43:15
saved 52:17
saw 36:14 49:24
 51:9 56:4
saying 46:20 48:6
 48:7
says 15:12,21 16:8
 16:18
scapegoat 56:6
screen 41:23 46:19
seat 13:2 63:25
seated 11:25 21:21
second 26:21 27:10
 33:13 38:7 43:14

46:5,25 60:2,16
second-floor 19:24
secondly 10:14
seconds 31:22
see 11:11 19:11,14
 19:16 35:9 38:4
 42:22 50:1 56:10
seeing 55:6
seek 66:25
seen 33:5
selected 63:24
 64:1,1,5
selection 31:2,12
 63:23
sell 39:13 40:8
seller 16:9,20
 17:1,4 20:19
 32:2,11 41:10
 42:11
seller's 32:9
selling 52:8
sense 10:17 29:1
 29:18 31:20
 35:22 37:14 41:8
 43:9 56:23 57:1
 58:19,20,20 62:7
 62:24
sentiment 32:9
 35:4
separate 7:24 32:1
sequentially 23:3
serve 59:8 63:25
 64:2
service 49:6 56:20
 67:6,7,10,12
Services 35:6
set 22:23 23:4
 26:18 43:6 49:1
 58:25 59:24
shaded 43:17
sheet 54:20
shopping 15:19
short 9:10 26:2
 51:22
show 16:16 32:19
 38:10,12 54:25
 55:20
showed 33:2 35:6
 44:12
showing 33:5
shown 51:18
shows 28:1 33:12
 59:3 61:7
side 23:4
sides 23:17 52:24
 52:25
sign 49:11
signed 32:6
significant 36:2

signs 35:2
simple 31:3,3,5
simply 32:21,25
 35:23 38:5 39:5
 66:24
single 38:9 43:17
 45:3 48:13
Sir 13:2
sit 46:13
sitting 63:24
situated 12:1
 22:22
six 15:4,8,9,22
skills 29:23 63:4
sky 38:3,4
slightly 26:12
 59:18
slope 34:6
sloped 34:9
small 36:11 44:10
 45:25 58:21
smart 55:12,13
Smith 6:11,13 36:9
 36:16,21 54:1,13
 58:8,10,16,17
Smith's 36:6 44:20
 45:24
smoke 41:22 46:19
society 66:13
soft 38:16
sold 13:23 15:17
 17:15 18:1 26:24
 32:12 34:2 37:24
 60:5
Solution 48:20
somebody 14:22
 15:12 41:7,15
 43:10 57:2,3
sooner 54:8
sophisticated
 55:10
sorry 22:17
Soto 2:9,12 3:2,3
 3:6 4:5,10,13,18
 5:1 6:3 8:2,11
 8:20 10:1,15
 11:6,11,19,21
 12:18,19 13:5,6
 13:11 18:7 20:10
 20:12,24 21:4,6
 21:8,10 22:5,6,9
 22:18,23,24 23:6
 23:7,11,14,18,22
 23:25 24:3,6,11
 24:14,17,20,23
 25:3,5,10,11,14
 25:18,19,25 30:9
 30:14 39:14,24
 49:3,4 57:5,16

63:15,20 66:5
**South** 2:4
**sparked** 36:12
**speak** 13:3 29:6
  62:12 66:18,22
  66:23
**special** 7:14,17,25
  66:10
**specifically** 6:10
  7:2 34:5 67:6
**speculate** 55:18
**spent** 48:22
**spouse** 15:21
**spread** 54:6
**square** 14:21
**stain** 35:7
**staining** 37:23
**stainings** 35:17
**stand** 35:5 43:16
  44:11 58:10
**standards** 40:6
**standing** 32:21
  34:10,11 50:22
  50:24
**standpoint** 43:24
  44:4 47:16
**start** 43:15
**started** 55:6
**starting** 26:20
  60:1
**state** 13:12,16
  31:7 38:23 52:15
  66:7 67:6 68:2
**stated** 10:20
**statement** 27:9,13
  31:25 32:18,24
  41:19 42:2,23
  60:15,19
**statements** 27:10
  27:12,14,15,18
  31:2 32:15 33:11
  33:14 39:6 40:15
  41:9,24 42:2,3
  42:13,14 43:12
  59:4 60:16,18,20
  60:21,24
**stating** 32:7
**stay** 18:5,5 52:19
  52:25 53:10 65:6
**stayed** 40:5 53:13
**staying** 53:8
**stenographic** 68:8
**stenographically**
  1:21 68:6
**step** 21:2,7,17
**stopped** 37:19 39:7
**story** 49:11
**straight** 47:13
**strapping** 33:4

**streaking** 35:10
**strike** 10:3,19
  11:2
**strip** 39:22
**structure** 34:8
**studs** 33:3
**subject** 13:24
**subjected** 46:10
**subjects** 29:20
  63:1
**submit** 16:12,13,17
  16:19 28:12
  33:22 47:2 61:18
**submitted** 31:24
  45:15
**subpoena's** 21:5
**subsequent** 16:22
**substantial** 6:15
  59:2
**substantive** 31:23
  32:22 38:13
**substructure** 44:12
**subtract** 47:13
**suffered** 34:24
  45:20 48:6,7
  58:4
**suggest** 26:1 54:19
**suggested** 54:13
**suggesting** 9:19,20
**suggestion** 38:4
**Suite** 2:4
**summary** 38:24
  48:19 54:20
**sums** 9:25 10:18
**superseding** 4:14
  4:24 5:21 6:2,21
  7:3,18
**support** 6:16 27:21
  57:13 61:2
**supported** 54:3
**sure** 18:11 43:6
  50:14 64:4
**surprising** 47:25
**Susan** 1:22 68:5,18
**sustained** 26:25
  47:6 57:18 60:6
  65:23
**swear** 12:23
**sweep** 50:24
**sworn** 12:21 13:8
  28:17 61:23
**sympathy** 46:16,17
**symptoms** 35:2
**system** 48:24 64:25
  67:8

─────────

**T**

**take** 12:1 21:18
  22:21 26:2 33:7

33:22 44:7 45:13
  45:22 64:19
**taken** 1:13 26:3
  52:6 65:9
**takes** 18:16
**talk** 12:14,15
  17:11 31:21
  32:22 36:23 38:7
  40:14 43:14 46:9
  46:25 49:24 50:4
  51:12 52:15
  54:14 55:1 56:22
  66:11
**talked** 38:15 45:23
  50:7,21 51:1
**talking** 43:20,20
**technical** 29:20
  63:1
**tell** 5:19 16:6,8
  26:7,11 34:21
  37:14 38:13
  54:16 59:13,17
**telling** 16:6 26:15
  34:22 41:1 42:21
  42:24 53:21
  59:21
**ten** 30:19,20 52:17
  56:21
**term** 34:14
**terms** 27:2 32:1
  60:8
**test** 33:22,24
**testified** 13:9
  17:22 29:14,15
  36:24 42:10 43:1
  47:23 48:1 54:5
  54:6,7 62:20,21
**testify** 10:5 13:3
**testifying** 29:9
  62:15
**testimony** 3:2 5:9
  9:2,7,8,9,11,17
  9:20,25 10:18
  12:23 18:11,21
  28:18,22 29:8,16
  29:19,21 31:16
  32:19,22 33:2
  35:1 37:8 38:24
  45:1,5 46:6
  47:10 48:1,18,23
  49:18 50:13,18
  54:2,3 55:3,21
  55:23 56:1,2
  57:9,12,17 58:15
  61:24 62:3,14,22
  62:25 63:2
**thank** 6:1 13:6
  49:1,4,5 56:20
  59:6,10 64:3,21

64:25 66:8 67:4
  67:11
**thing** 9:13 37:6
  38:20 39:16
  43:25 46:12
  55:22 56:7
**things** 10:5 29:3
  38:21 46:15 47:8
  48:24 50:2 54:24
  55:6 57:24 62:9
**think** 6:19 7:7,23
  7:25 8:14,20
  10:17 17:14
  28:21 29:22
  30:21 32:18
  55:13 56:23
  58:17 62:2 63:3
**thinks** 53:9
**Third** 27:11 60:17
**thought** 52:23 53:1
  53:2
**thousand** 45:19
**three** 12:2 39:15
  59:7
**throwing** 37:10,12
**Thy** 58:3
**time** 1:14 9:12
  15:21 17:11,13
  18:12,16 21:14
  28:9 30:17 33:18
  37:9,13 38:1
  39:21 41:3 42:17
  48:21,22 49:2
  51:13,17 53:7
  59:6,8,10 61:15
  63:21 64:12,17
  64:21,23 66:8
  68:7
**times** 64:6
**today** 9:23 14:4,14
  17:21,21 18:24
  49:21 56:20
**told** 4:7 5:24
  26:10 31:2,3,4
  33:8,9 34:5 35:1
  35:12,14,24 36:2
  36:8,15,25 37:1
  38:2,2,17 39:23
  39:24 40:23 42:8
  43:2,5,23,25
  44:10 49:10,10
  49:22 51:19 52:7
  53:23,24 55:22
  56:6,8,13,17,24
  58:10 59:16
**top** 36:11 46:3
  51:7
**topic** 46:5 55:19
**touch** 46:4

towers 50:2
training 29:23
  41:7 63:4
transaction 20:19
  32:5 39:25
transactions 13:18
transcript 68:8
tremendous 53:4
trial 1:4 7:16
  10:4,16 12:3
  43:16 44:25 64:9
  64:10 65:1 66:21
  66:23
tried 52:22
true 17:13 28:4,8
  40:1 61:10,14
  68:8
truly 67:9
truth 12:24,25,25
try 12:14
trying 34:16,23
  35:19,20 36:18
  41:23
turning 17:21
two 31:13 32:13
  33:23,23 47:1,11
  47:17 55:10 59:6
type 6:4 19:4
  36:17 57:11

**U**

ultimate 16:4
  17:14,19
ultimately 17:5
  18:1 20:22 51:6
underneath 37:6
  38:16 44:18
understand 64:4
understood 18:11
  34:6
undisputed 50:7
  51:22
unfortunate 52:24
  57:24
unique 15:5,15
  66:18
uniqueness 14:19
  15:16 17:6 20:21
upside 21:19
use 26:7 27:3 29:1
  31:20 35:22 41:8
  55:15 58:20
  59:13 60:9 62:7

**V**

valuable 48:21
value 9:9,12,14,14
  9:24 14:13 15:3
  15:12,13,15,16

15:24 16:4 17:11
  17:14,19,21,23
  17:24 18:2,4,5
  18:13,20,24
  20:13,17,22 28:3
  28:4,6,7,9 32:2
  32:8,12 47:15,20
  48:3,4 54:11
  61:9,10,12,13,15
verdict 3:9 8:9,21
  8:22 11:7 22:7
  22:13 25:6,10
  26:8,17 27:21
  28:14,16,21
  46:17,24,25 48:8
  49:1 56:14,18
  59:9,14,23 61:2
  61:20,22 62:2
  64:20 65:12,15
  65:16,21
verdicts 42:1
versus 65:19
Village 13:25 15:8
  15:9
violated 12:13
violation 34:18
virtue 38:22
Volume 1:4
votes 66:16
vs 1:8

**W**

waited 50:14
walk 15:19
walked 52:4,5
walkthrough 51:7
wall 5:15 37:15,23
  53:10 54:4
walls 53:10 55:6
  56:10
want 14:23 15:22
  18:11 41:4 43:14
  46:9,15,21 48:11
  48:13,15 53:20
  57:2,3,5 64:3,21
  64:25 66:8,9
wanted 15:23 52:13
  52:18,19 55:9
wants 12:17 17:7
warned 32:10
warnings 32:13
wasn't 9:10 18:21
  33:3,4 50:8 52:7
  52:18
watched 64:22
water 5:5 16:3
  32:21 34:10,11
  34:12 35:7 38:19
  43:25 44:14 45:4

45:4 50:21,23,24
  50:25 51:3 53:2
  53:10 54:17
way 5:7 6:17 7:6
  8:16 10:15 39:19
  41:12 46:20
  48:24 55:15,15
  57:10 65:25
ways 47:11
we'll 21:17 67:13
we're 31:21 49:20
  56:19 65:1
website 14:6,10
week 44:21
weeks 36:6
weigh 28:22 62:3
weighing 24:13
weight 23:16 27:1
  27:4,20 28:1
  29:7,22 31:9,10
  31:17 60:7,10
  61:1,7 62:13
  63:3
welcome 12:2
went 44:16 45:24
  50:20 52:22
  55:21
weren't 10:9 33:4
  51:22
wicks 43:25
wife 1:6,9
willing 14:24 15:4
  15:12,23 17:4,8
  20:18,20 67:10
wish 66:17
witness 10:4,15
  12:18 13:1 21:1
  21:2 29:7,8,9,10
  29:11,11,13,13
  29:14,15,24,24
  35:5 38:9 58:9
  62:13,14,15,16
  62:17,17,19,19
  62:20,21 63:5,5
witnesses 28:18
  29:6,16,21 61:24
  62:12,22 63:2
woman 66:1
wood 38:16 46:2
word 42:25 49:14
words 9:13,22
  34:20,24 36:3
  45:19,20
work 46:14 48:24
  58:10 64:25
  66:19
world 34:15,19,22
worth 15:14 16:15
  18:17 20:14

45:18 52:3,6
  56:25
wouldn't 53:5,20
  54:5
wreck 52:23
writing 50:6,10,11
wrong 16:6 35:14
  42:9 43:1

**X**

**Y**

yeah 14:15 17:3
  30:21 45:8 57:2
years 5:7 34:1
  36:5 37:18 39:15
  40:19 52:17
  58:16 66:15
yesterday 6:19
  50:19

**Z**

**0**

**1**

1/8 34:8
1:33 67:16
100 36:3
1250 2:4
13 3:2
18 3:3

**2**

20 3:3 5:7 13:20
2001 13:20
2009 37:19 39:8
2011 37:23 39:8
2011-CA-16841 4:3
  65:20
2011-CA-16841-O
  1:3
2014 1:13 9:9,24
  14:25 18:24
  65:25
2015 68:15
22 3:4
22nd 68:15
250 2:4

**3**

30 1:13 3:6
30th 65:25
32801 1:16 2:10
33324 2:4

**4**

401.1 23:7,10

**401.2** 22:17 23:12
**401.3** 23:16
**407** 2:11
**409.10** 23:7,24
**409.11** 24:4
**409.12** 22:16 24:4
**409.13** 24:2,5,10
**409.7** 23:20
**419** 2:10
**425** 1:16
**449-1400** 2:5
**45** 30:20
**454** 64:1
**48** 54:7
**49** 3:6

---
**5**

**5,600** 14:21
**50** 31:13
**51** 31:14
**57** 3:7
**59** 3:8

---
**6**

**601.1** 24:13
**601.2** 24:16
**601.5** 24:19
**65** 3:9
**68** 3:10
**69** 48:20

---
**7**

**70** 45:14,15,16
**70,000** 45:19
**700** 24:22

---
**8**

**8** 9:9,24

---
**9**

**9:00** 1:14
**90** 13:22
**954** 2:5
**982-3663** 2:11